IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF DAVID HENNIS and PATRICIA HENNIS, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 16-4216 (JBS-AMD) |
| WARDEN ROBERT BALICKI, et al. | |
| Defendants. | |
| PATRICIA K. HENNIS, o/b/o ESTATE OF DAVID HENNIS, | |
| Plaintiff, | Civil Action No. 16-3858 (JBS-KMW) |
| v. | |
| CUMBERLAND COUNTY JAIL, et al. | **OPINION** |
| Defendants. | |

APPEARANCES:

Conrad J. Benedetto, Esq.
Alyssa K. Poole, Esq.
LAW OFFICES OF CONRAD J. BENEDETTO
1233 Haddonfield-Berlin Road, Suite 1
Vorhees, NJ 08043
    -and-
John E. Kusturiss, Jr., Esq.
LAW OFFICES OF CONRAD J. BENEDETTO
1405 Chews Landing Road, Suite 21
Lauren Springs, NJ 08021
    Attorneys for Plaintiff

Adam M. Starr, Esq.
JARVE KAPLAN GRANATO LLC
401 Route 73 North, Suite 204
Marlton, NJ 08053
    Former Attorney for Plaintiff in Civil Action No. 16-3858

Daniel Edward Rybeck, Esq.
John C. Eastlack, Jr., Esq.
Georgios Farmakis, Esq.
Lilia Londar, Esq.
WEIR & PARTNERS LLP
215 Fries Mill Road, 2nd Floor
Turnersville, NJ 08012
        Attorneys for Defendants Warden Robert Balicki
        and Cumberland County

Jeffrey S. McClain, Esq.
Stephen D. Holtzman, Esq.
HOLTZMAN & MCCLAIN, PC
524 Maple Avenue, Suite 200
Linwood, NJ 08221
        Attorneys for Defendant CFG Health Systems, LLC

**SIMANDLE, District Judge:**

## I.    INTRODUCTION

These parallel cases arise out of the unfortunate suicide of David Hennis while he was detained at the Cumberland County Jail in July of 2014. Both actions were brought on behalf of Mr. Hennis's mother, Patricia Hennis ("Plaintiff"), as administrator of Mr. Hennis's estate and in her own right, and filed by different sets of attorneys within two weeks of each other. As detailed below, from the moment the first complaint was filed, the events that unfolded were unusual, to say the least.

Relevant to the motions currently pending before the Court, Plaintiff named as a defendant CFG Health Systems, LLC ("CFG Health"), a medical health provider at the Cumberland County Jail, in the first case, filed on June 28, 2016, <u>Patricia K. Hennis v. Cumberland County Jail, et al.</u>, Civil No. 16-3858

("Hennis I"), but not in the second case, filed on July 12, 2016, Estate of David Hennis, et al. v. Balicki, et al., Civil No. 16-4216 ("Hennis II"). The statute of limitations expired on July 30, 2016, two years after Mr. Hennis's suicide. On August 2, 2016, Plaintiff filed a Voluntary Stipulation of Dismissal in the first case [Hennis I, Docket Item 8], which was signed by Plaintiff's former attorney, Mr. Adam Starr, and the case was closed by the Clerk of Court.

For several months, Plaintiff and her new attorney, Mr. Conrad J. Benedetto, actively prosecuted Hennis II without any mention of CFG Health. Then in December 2016, well after the relevant two-year statute of limitations had run, Plaintiff sought leave to add CFG Health as a defendant in Hennis II for the first time, by way of motion for leave to amend the Complaint. [Hennis II, Docket Item 23.] Magistrate Judge Donio granted Plaintiff's unopposed motion [Hennis II, Docket Item 24], and the Amended Complaint was subsequently filed on the electronic docket on January 11, 2017. [Hennis II, Docket Item 25.] But Plaintiff did not serve CFG Health the Amended Complaint until June 8, 2017 [Docket Item 36-12], which is 148 days after the Amended Complaint was filed and well beyond the strict 90-day requirement set forth in Fed. R. Civ. P. 4(m).

Given the statute of limitations and service of process issues at play, CFG Health moved to dismiss all claims against

it in Hennis II with prejudice, pursuant to Fed. R. Civ. P.
12(b)(5) and 12(b)(6), or, in the alternative, for summary
judgment under Fed. R. Civ. P. 56. [Hennis II, Docket Item 36.]
One month later, CFG Health moved for sanctions against
Plaintiff under Fed. R. Civ. P. 11. [Hennis II, Docket Item 46.]
In response to CFG Health's motions to dismiss and for
sanctions, Plaintiff cross-moved in Hennis II to vacate the
Voluntary Stipulation of Dismissal filed in Hennis I, pursuant
to Fed. R. Civ. P. 60(b)(6), on the basis that the Voluntary
Stipulation of Dismissal was supposedly filed by Plaintiff's
former attorney, Mr. Starr, without Plaintiff's knowledge or
permission, and to consolidate Hennis I and Hennis II under Fed.
R. Civ. P. 42(a). [Hennis II, Docket Item 51.] Reopening Hennis
I and consolidating the two cases, Plaintiff reasoned, would
resolve the statute of limitations or service of process issues.

On February 27, 2018, the Court heard oral argument on the
motions in Hennis II. [Hennis II, Docket Item 91.] In light of
certain issues raised at oral argument, particularly those
regarding Plaintiff's cross-motion to vacate the Voluntary
Stipulation of Dismissal filed in Hennis I, and in the interest
of judicial economy, Chief Judge Linares temporarily reopened
Hennis I and reassigned the case to the undersigned. [Hennis I,
Docket Item 9.] Following oral argument and in response to the
new docket activity in the previously-closed and long-dormant

4

_Hennis I_, Plaintiff's former attorney, Mr. Starr, electronically filed two letters on the docket [_Hennis I_, Docket Items 13 & 15], calling into question certain representations Plaintiff and her current counsel, Mr. Benedetto, had made in support of Plaintiff's cross-motion to vacate, including at the February 27, 2018 oral argument, regarding past communications between Ms. Hennis, Mr. Starr, and Mr. Bendetto. This, in turn, prompted the Court to issue two Orders to Show Cause addressed to Mr. Benedetto. [_Hennis I_, Docket Items 14 & 16; _Hennis II_, Docket Items 95 & 99.]

The pending motions, including the Court's Orders to Show Cause, are now fully briefed and are ripe for consideration. For the reasons discussed below, CFG Health's motion to dismiss will be granted and Plaintiff's cross-motion to vacate and consolidate will be denied. Additionally, because Mr. Benedetto and his law firm failed to investigate its own files before filing motions or pleadings, as required by Fed. R. Civ. P. 11(b), CFG Health's motion for sanctions will be granted and fees and costs will be awarded for reasonable costs and fees expended to CFG Health from the point of oral argument until the present date.

## II. FACTUAL AND PROCEDURAL BACKGROUND

David Hennis was arrested by the Vineland Police Department on July 22, 2014. [_Hennis II_, Docket Item 1 at ¶ 14.] He was

subsequently incarcerated at the Cumberland County Jail on July
22, 2014, until his death by suicide on July 30, 2014. [Id. at
¶¶ 15, 18.] His mother, as administrator of Mr. Hennis's estate
and in her own right, is the named plaintiff in parallel actions
that were filed within two years of Mr. Hennis' death, which the
parties refer to as Hennis I and Hennis II.

## A. **Hennis I**

On June 28, 2016, Plaintiff filed the first of two federal
actions against Cumberland County Jail, the County of
Cumberland, Warden Robert Balicki, and CFG Health. [Hennis I,
Docket Item 1.] That case was captioned as Docket No. 16-3853
and assigned to District Judge Joseph Rodriguez and Magistrate
Judge Karen Williams. Defendant CFG Health filed an answer to
the Complaint on July 28, 2016. [Hennis I, Docket Item 5.]

Attorney Adam M. Starr initially represented Plaintiff in
that action, but was terminated by Patricia Hennis by telephone
in early or mid-July 2016. [Hennis II, Docket Item 51-2 at ¶¶ 3-
4; Hennis I, Docket Item 13-1 at 3.] Ms. Hennis memorialized
this in an undated letter addressed to Mr. Starr's law firm,
requesting that he, "effective immediately, cease and desist any
and all work on [Hennis I]" and instructing him to "IMMEDIATELY
withdraw that complaint, as we are now represented by Conrad J.
Benedetto, Esquire." [Id.] (emphasis in original). Conrad J.

Benedetto, Esquire was listed as CC'ed on the bottom of the letter. [Id.]

On August 2, 2016, Mr. Starr filed a Voluntary Stipulation of Dismissal "at the direction of Plaintiff, Patricia K. Hennis o/b/o Est. of David Hennis," which was signed by Mr. Starr but not counsel for Defendants [Hennis I, Docket Item 8], as is typically required for a "stipulation of dismissal" under the Federal Rules after a defendant has answered. See Fed. R. Civ. P. 41(a)(1)(A)(ii). According to the Voluntary Stipulation of Dismissal, dismissal was with prejudice and "ha[d] no bearing on any other cause of action filed on behalf of the Est. of David Hennis." [Id.] Counsel for CFG Health was notified on the electronic docket that Plaintiff had dismissed the complaint with prejudice on August 2, 2016. The following day, the Clerk's Office terminated the case with prejudice and without costs.

There was no further activity in Hennis I until the case was reopened and reassigned to the undersigned by Order of Chief Judge Linares almost two years later, on March 1, 2018. [Hennis I, Docket Item 9.]

**B.  Hennis II**

On July 12, 2016, Plaintiff, now represented by attorney Conrad J. Benedetto, filed a second action [Hennis II, Docket Item 1], even though Hennis I was still open and being litigated by Mr. Starr at that time. This second Complaint was filed

7

against Warden Robert Balicki in his individual capacity, Cumberland County, and John Doe Correction Officers 1-10 (fictitious individuals) in their individual capacities. [Id.] Notably, unlike the Complaint in Hennis I, the Complaint in Hennis II did not name CFG Health was as a defendant.

On December 9, 2016, Magistrate Judge Donio consolidated Hennis II and three other Cumberland County Jail suicide cases,[1] for discovery purposes only. [Hennis II, Docket Item 22.] Mr. Benedetto and his law firm represent the plaintiff in each of the consolidated matters. [Hennis II, Docket Item 36-3 at ¶ 16.]

On December 19, 2016, Plaintiff filed an unopposed motion for leave to file an Amended Complaint [Hennis II, Docket Item 23], which Judge Donio granted on January 5, 2017. [Hennis, Docket Item 24.] Plaintiff filed the Amended Complaint on

---

[1] The other three consolidated Cumberland County Jail suicide cases are Estate of Alissa Marie Allen v. Cumberland County, No. 15-6273-JBS-AMD (D.N.J. filed on August 18, 2015); Estate of Robert Wayne Lewis v. Cumberland County, No 16-3503-JBS-AMD (D.N.J. filed on June 16, 2016); and Estate of Jon Leon Watson v. Cumberland County, No. 16-6578-JHR-AMD (D.N.J. filed on October 5, 2016).

Additionally, there are two other Cumberland County Jail suicide cases that were filed after the above four cases were consolidated, and which are still pending, Estate of David Conroy v. Cumberland County, 17-7183-JBS-AMD (D.N.J. filed on September 18, 2017); and Estate of Megan Moore v. Cumberland County, No. 17-2839-RBK-KMW (D.N.J. filed on April 25, 2017.

Thus, in total, there are now six cases pending in this federal court involving suicides at the Cumberland County Jail.

January 11, 2017. [Docket Item 25.] As relevant here, the Amended Complaint named CFG Health as a defendant in this case for the first time, bringing claims against CFG Health for wrongful death (Count Five), survivorship (Count Six) and negligence (Count Seven). [Id.] Plaintiff neglected to serve CFG Health with the Amended Complaint until June 8, 2017, 148 days after Plaintiff filed the Amended Complaint).[2] [Docket Item 36-12.]

CFG Health timely filed a motion to dismiss under Fed. R. Civ. P. 12(b)(5) and (6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56, on the grounds of insufficient service of process and the expiration of the applicable two-year statute of limitations. [Hennis II, Docket Item 36.] One month later, CFG Health filed a motion for sanctions pursuant to Fed. R. Civ. P. 5 and 11. [Hennis II, Docket Item 46.]

---

[2] During these 148 days, more than 15 depositions were conducted in Allen and two telephonic status conferences were conducted in the consolidated matters discussed in n.1, supra. At each of these depositions and conferences, Mr. Benedetto, was present and, each time, counsel for RN Amber Garcia (an employee of CFG Health) in Allen and CFG Health in Lewis and Watson placed appearances on the record and stated that CFG Health was not a party to Hennis II (this case). "At no point from December 16, 2016 through June 6, 2017, did counsel for the Plaintiff ever mention the Motion to Amend, Order to Amend or filing of the Amended Complaint in Hennis II to counsel for the medical defendants." [Docket Item 36-16 at 6.]

In response to CFG Health's motions, Plaintiff filed a cross-motion in Hennis II to vacate the Voluntary Stipulation of Dismissal in Hennis I pursuant to Fed. R. Civ. P. 60(b), on the theory that Plaintiff had not given her previous attorney, Mr. Starr, permission to dismiss Hennis I with prejudice before he filed the Voluntary Stipulation of Dismissal, and to consolidate Hennis I and Hennis II pursuant to Fed. R. Civ. P. 42(a). [Docket Item 51.] If the Court were to vacate the Voluntary Stipulation of Dismissal in Hennis I and consolidate that case with Hennis II, Plaintiff reasoned, the statute of limitations and service of process issues would be resolved and Plaintiff could proceed with her claims against CFG Health in the consolidated Hennis matter.

In support of Plaintiff's motion, Ms. Hennis attached a certification which affirmed, in relevant part, that:

3. In early July 2017, Plaintiff decided to switch representation, from Mr. Starr to current counsel [Mr. Benedetto].

4. I informed Mr. Starr of the change in representation, thus making him aware that he no longer represented either the Estate of David Hennis or myself.

5. Mr. Starr did not consult me regarding filing a stipulation of dismissal in the action filed on June 28, 2016.

6. Nevertheless, a stipulation of dismissal with prejudice was apparently filed on August 3, 2016.

7. I did not give my permission for such a stipulation to be filed.

8. I was not aware that the action had been dismissed with prejudice.

[Docket Item 51-2.] Mr. Benedetto also attached a certification to the motion which affirmed, in relevant part, that, "I was not consulted as to the Stipulation of Dismissal that was filed by former counsel for the plaintiffs on August 3, 2016." [Docket Item 51-3 at ¶ 4.]

### C. Subsequent Events

On February 20, 2018, Defendant CFG Health deposed Ms. Hennis, with leave from Judge Donio, for the limited purposes of determining the details of any conversations Ms. Hennis had with Mr. Starr about the Voluntary Stipulation of Dismissal filed in Hennis I, but she could not recall any additional details about her past discussions with Mr. Starr beyond those described in her certification. [See generally Docket Item 90.] It will be apparent, for reasons discussed below, that this deposition was an unnecessary waste of time caused by the Benedetto Law Office's failure to take even a cursory review of their own file and their interactions with Plaintiff's prior counsel, Mr. Starr, which revealed Ms. Hennis' direction to Starr to dismiss Hennis I due to her decision to retain the Benedetto firm.

The Court heard oral argument in Hennis II the following week, on February 27, 2018. [Docket Item 91.] During oral argument, Mr. Benedetto made several representations as an

11

officer of the Court regarding his version of the events that transpired around the time the Voluntary Stipulation of Dismissal was filed in <u>Hennis I</u>. [<u>Hennis II</u>, Docket Item 96.] For example, Mr. Benedetto proffered that:

> [W]hen [Ms. Hennis] came to us, she did not explain to us that she had hired Mr. Starr, who had filed suit. . . . She never told us that he had withdrawn the case. In fact she did not know that he had done that. . . . [T]he only time she contacted Mr. Starr after she came to my firm was to tell him he was dismissed. She was very clear on that. She was very clear that was her only discussion with Mr. Starr. . . . And she also stated initially . . . that she did not have any knowledge of any discussions regarding dismissals of Hennis I with Mr. Starr and that she clearly did not give him any authority to act on her behalf following her discharging Mr. Starr.

Oral Arg. Tr. 30:3-31:21.) Mr. Benedetto then stated that his law firm "did not become aware of [any of this] until sometime after the litigation." (<u>Id.</u> at 31:21-23.) In response to further questioning by the Court, Mr. Benedetto also represented that:

- "We didn't become aware of Mr. Starr's representation till after [the statute of limitations expired on July 30, 2016]." (<u>Id.</u> at 32:7-14);

- That the existence of <u>Hennis I</u> "came to me through the former attorney [Mr. Kimmo Abbasi], I did not have any direct knowledge of <u>Hennis I</u>." (<u>Id.</u> at 32:22-33:1};

- "Your Honor, I met Mr. Abbasi, I learned through Mr. Abbasi of Hennis I sometime after we filed. **I've never had a conversation with Mr. Starr regarding these matters**." (<u>Id.</u> at 33:25-34:3) (emphasis added);

- Mr. Abbasi did not have any conversaitons with Mr. Starr "that I'm aware of, your Honor. We didn't receive any part of Mr. Starr's file. **We've had no contact with Mr. Starr to the best of my knowledge**." (<u>Id.</u> at 34:4-8) (emphasis added).

Because this Court has no authority to vacate anything in a closed case set before a different District Judge,[3] and in the interest of judicial economy, Hennis I was reopened and reassigned to the undersigned by Order of Chief Judge Linares dated March 1, 2018, to consider Plaintiff's motion to vacate the notice of dismissal. [Hennis I, Docket Item 9.] Later that day, the Court notified counsel by letter that, in order to properly consider Plaintiff's cross-motion to vacate the Voluntary Stipulation of Dismissal in Hennis I, Plaintiff's cross-motion to vacate filed in Hennis II "will now be deemed filed in [Hennis I] . . . for judicial efficiency [and] to avoid the necessity of refiling Plaintiff's motion to vacate and arguing before another judge." [Hennis I, Docket Item 10; Hennis II, Docket Item 92.] The Court also requested supplemental briefing from the parties on three issues involving Plaintiff's motion to vacate. [Id.]

Alerted by the recent sudden docket activity in Hennis I, Plaintiff's previous attorney in that case, Mr. Starr, filed an unsolicited letter on the docket dated March 5, 2018. [Hennis I, Docket Item 13.] In that letter, Mr. Starr explained that he had received by ECF notification the Court's March 1, 2018 letter

---

[3] As noted above, Hennis I was assigned to District Judge Joseph Rodriguez.

and was "unaware of the procedural posture of this matter, but as an officer of the Court I felt compelled to provide the information in my possession that may assist Your Honor in resolving whatever issues are before the Court." [Id. at 2.] Copies of Mr. Starr's documents were attached to an Order to Show Cause, described below, and provided to all counsel. [Hennis I, Docket Item 14 at 3-9; Hennis II, Docket Item 95 at 3-9.]

According to Mr. Starr's March 5, 2018 letter and the accompanying attachments, and contrary to the story that had been told by Plaintiff and Mr. Benedetto, shortly after Mr. Starr filed the Complaint in Hennis I, he received a letter dated July 15, 2016 **from Mr. Benedetto** advising him that Mr. Benedetto's law firm was taking over the matter and that Mr. Starr should "[k]indly forward the contents of the file to my office as soon as possible and forward an accounting of your advanced costs." [Hennis I, Docket Item 13-1 at 1.] Mr. Starr recounts that he subsequently followed up with his client, Ms. Hennis, by letter and via telephone, during which time Ms. Hennis informed Mr. Starr that she had, in fact, retained Mr. Benedetto's firm to handle the matter. [Hennis I, Docket Item 13 at 1; Docket Item 13-1 at 2.] By undated letter, which Mr. Starr also attached to his letter to this Court, **Ms. Hennis** personally confirmed she retained Mr. Benedetto in July 2016 and demanded

that the Complaint in <u>Hennis I</u> be "<u>IMMEDIATELY</u> withdrawn." [<u>Id.</u> at 3.] "Per Ms. Hennis' instructions," Mr. Starr then filed the Voluntary Stipulation of Dismissal in <u>Hennis I</u> on August 2, 2016. [<u>Hennis I</u>, Docket Item 13 at 2.]

Shortly after receipt of Mr. Starr's March 5, 2018 letter, the Court issued an Order to Show Cause instructing Mr. Benedetto to, in a certification, address the contents of Mr. Starr's letter, which was attached to the Order to Show Cause, and to discuss its impact upon the pending motions in <u>Hennis II</u>. [<u>Hennis I</u>, Docket Item 14; <u>Hennis II</u>, Docket Item 95.]

On March 13, 2018, Mr. Benedetto filed a letter and certification on the docket in <u>Hennis II</u>, addressing Mr. Starr's March 5, 2018 letter. [<u>Hennis II</u>, Docket Item 97.] In the letter, Mr. Benedetto proffered that "Mr. Starr's letter to the court confirms many of the assertions that were made to the Court on February 27, 2018. **Namely, that I never had any conversations with Mr. Starr about this case**." [<u>Id.</u> at 1.] (emphasis added). Mr. Benedetto then affirmed in a sworn certification:

> 2. The testimony I offered to the court in these matters on February 27, 2018 was given from my recollection without a review of the paper case file in this matter.
>
> 7. As I stated to the Court on February 27, 2018, **I never had a conversation with Mr. Starr about this matter nor was I contacted in writing by Mr. Starr at any**

**point prior to Mr. Starr filing the Voluntary
Stipulation of Dismissal with Prejudice.**

8.     Furthermore, I had no prior knowledge of the latter
that was sent to Mr. [Starr's law firm] by Patricia
Hennis, which I only assume was in the envelope with a
post mark of July 28, 2016. . . .

9.     . . . **To the best of my knowledge, no evidence has
been provided by Mr. Starr that he reached out to my
firm or me personally prior to filing the Voluntary
Stipulation of Dismissal with Prejudice**, despite
knowing my firm was representing Ms. Hennis by his own
admission.

[Hennis II, Docket Item 97-1] (emphasis added) As explained

below, Mr. Benedetto apparently undertook no research of his own

office file, his former associate, his clerical staff, or his

personal email account before making these statements to this

Court either.

On March 9, 2018, Mr. Starr filed a second letter on the

docket in Hennis I [Hennis I, Docket Item 15], which Mr.

Benedetto had apparently not seen before he filed his March 13,

2018 letter and sworn statement, described above. In this second

letter, Mr. Starr attached emails that were exchanged between

himself and cjbenedetto@benedettolaw.com, which is Mr.

Benedetto's personal account, on July 27, 2016, as well as

letter from Defendants' attorney, Mr. John Eastlack, Jr.,

addressed to Mr. Starr and Mr. Benedetto and dated August 2,

2016. [Hennis I, Docket Item 15-1.] Of note, in an email sent on

July 27, 2016 at 1:44pm, Mr. Starr wrote to Mr. Benedetto:

16

> As was explained to your staff when I requested twice to
> speak to you personally, my office has NEVER received a
> discharge letter from Ms. Hennis. . . . If you have such a
> discharge letter, please provide me with same. At such
> time, I will execute the appropriate Substitution of
> Attorney. . .

[Id. at 2.] After several emails were exchanged,

cjbenedetto@benedettolaw.com responded to Mr. Starr at 4:10pm,

"Kindly forward a [Substitution of Attorney] or withdraw your

complaint without prejudice." [Id. at 1.]

It appearing Mr. Benedetto had not reviewed Mr. Starr's

second letter dated March 9, 2018 before preparing his March 13,

2018 letter and certification, the Court issued a second Order

to Show Cause instructing Mr. Benedetto to, in a certification,

address the contents of Mr. Starr's March 9, 2018 letter, which

was attached to the Order to Show Cause, and, its impact upon

the pending motions in Hennis II. [Hennis I, Docket Item 16;

Hennis II, Docket Item 99.]

On March 15, 2018, Mr. Benedetto filed a second letter and

certification on the docket in Hennis II addressing Mr. Starr's

second letter. [Hennis II, Docket Item 100.] In this

certification, Mr. Benedetto swore:

> 2.  The emails attached to Mr. Starr's March 9, 2018
> letter were not sent by me. The email address of
> cjbenedetto@benedettolaw.com is an email address
> created for my staff to use to handle administrative
> matters and limited correspondence. I do not
> personally use a computer and communicate primarily
> with my cell phone or paper correspondence signed by
> me, not electronically.

3. The other email address listed in the emails attached to Mr. Starr's March 9th letter is rbuchanan@benedettolaw.com. This email address belonged to a secretary Rachel Buchan, that was working for my office in 2016, but is no longer employed by my office. Until receiving a copy of the emails attached to Mr. Starr's letter of March 9, 2018, I never saw the emails nor was I made aware that Ms. Buchan was sending and receiving the emails. Furthermore, I do not know what letter she referenced in her emails that apparently was sent to Mr. Starr on July 27, 2016.

4. I again reiterate that as I stated before the Court on February, 27, 2018, **I never personally had a conversation with Mr. Starr about this matter nor was I personally contacted in writing by Mr. Starr at any time prior to Mr. Starr filing the Voluntary Stipulation of Dismissal with Prejudice.**

[<u>Hennis II</u>, Docket Item 100-1] (emphasis added). Mr. Benedetto

made several more unblushing admissions by claiming he is

unaware of what comes and goes in the personalized email account

his firm uses, that electronic signatures depicting his name on

his letterhead are not his, and that he apparently did not

supervise what he says his clerical personnel were doing in his

name in communicating on legal matters. [<u>Id.</u>]

On March 15, 2018, CFG Health filed a response to the

Court's Orders to Show Cause, and to Mr. Benedetto's letters and

certifications. [<u>Hennis I</u>, Docket Item 18; <u>Hennis II</u>, Docket

Item 102.] In this response, CFG Health argued that the

developments following Mr. Starr's letters to the Court further

confirmed that sanctions against Mr. Benedetto and his firm

should be imposed under Rule 11(b) for filing motions and other papers that were without factual foundation due to Mr. Benedetto's failure to make reasonable inquiry into these facts. These errors, omissions, and misleading representations are well-catalogued in CFG Health's submissions; CFG essentially accuses Mr. Benedetto of: (1) being uninformed of the matters on which he was making material misstatements relevant to his handling of this case; (2) his blaming of everyone else (Plaintiff's prior attorney Mr. Starr, former Benedetto associate Kimmo Abbasi, his client Ms. Hennis, his former secretary Rachel Buchan, and his secretary Lisa Jones) for his own shortcomings in failing to communicate accurately and timely about this case; (3) failure to name CFG Health as a defendant in Hennis II before the statute of limitations expired; and (4) failure to serve process as required by Fed. R. Civ. P. 4(m), among other things. This alleged misconduct, together with other alleged misconduct laid out in CFG Health's original motion for sanctions [Hennis II, Docket Item 46], forms the basis for CFG's claim that Rule 11 has been violated to CFG Health's detriment for which sanctions are sought, as discussed in Part IV.C, below.

**III. STANDARD OF REVIEW**[4]

   **A.   Rule 12(b)(5)**

   Under Federal Rule of Civil Procedure 12(b)(5), a party may file a motion asserting insufficient service of process as a defense. "When a party moves to dismiss under Rule 12(b)(5), the party making the service has the burden of demonstrating its validity." Laffey v. Plousis, No. 05-2796, 2008 WL 305289, at *3 (D.N.J. Feb. 1, 2008), aff'd, 364 Fed. App'x 791 (3d Cir. 2010).

   **B.   Rule 12(b)(6)**

   Under Federal Rule of Civil Procedure 12(b)6), a party may file a motion to dismiss for failure to state a claim upon which relief can be granted. When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam). A motion to dismiss may only be granted if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678

---

[4] The Court exercises jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343(3) and pendent jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

(2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

Although the Court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–11 (3d Cir. 2009). A plaintiff should plead sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," <u>Twombly</u>, 550 U.S. at 556, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." <u>Iqbal</u>, 556 U.S. at 678.

**C.   Rule 56**

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. <u>Hunt v. Cromartie</u>,

526 U.S. 541, 552 (1999); <u>Wishkin v. Potter</u>, 476 F.3d 180, 184

(3d Cir. 2007). Credibility determinations are not appropriate

for the court to make at the summary judgment stage. <u>Davis v.</u>

<u>Portlines Transportes Maritime Internacional</u>, 16 F.3d 532, 536

n.3 (3d Cir. 1994).

     **D.   Rule 60(b)**

     Rule 60(b) provides, in pertinent part:

On motion and just terms, the court may relieve a party or
its legal representative from a final judgment, order, or
proceeding for the following reasons:

     (1) mistake, inadvertence, surprise, or excusable
neglect;

     (2) newly discovered evidence that, with reasonable
diligence, could not have been discovered in time to
move for a new trial under Rule 59(b);

     (3) fraud (whether previously called intrinsic or
extrinsic), misrepresentation, or misconduct by an
opposing party;

     (4) the judgment is void;

     (5) the judgment has been satisfied, released or
discharged; it is based on an earlier judgment that
has been reversed or vacated; or applying it
prospectively is no longer equitable; or

     (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

     "The general purpose of Rule 60(b) . . . is to strike a

proper balance between the conflicting principles that

litigation must be brought to an end and that justice must be

done." <u>Boughner v. Sec'y of Health, Educ. & Welfare</u>, 572 F.2d

976, 977 (3d Cir. 1978) (quoted in <u>Coltec Industries, Inc. v.</u>
<u>Hobgood</u>, 280 F.3d 262, 271 (3d Cir. 2002)).

Relief under Rule 60(b) is available only under such circumstances that the "overriding interest in the finality and repose of judgments may properly be overcome . . . . The remedy provided by Rule 60(b) is extraordinary, and [only] special circumstances may justify granting relief under it." <u>Tischio v.</u>
<u>Bontex, Inc.</u>, 16 F. Supp. 2d 511, 533 (D.N.J. 1998)(internal citations omitted). To the extent a moving party seeks to relitigate the court's prior conclusions, Rule 60(b) is not an appropriate vehicle. "[C]ourts must be guided by the well established principle that a motion under Rule 60(b) may not be used as a substitute for appeal. It follows therefore that it is improper to grant relief under Rule 60(b)(6) if the aggrieved party could have reasonably sought the same relief by means of appeal." <u>Martinez-McBean v. Government of Virgin Islands</u>, 562 F.2d 908, 911 (3d Cir.1977) (citations omitted).

**IV.  DISCUSSION**

CFG Health timely moved to dismiss the claims against it with prejudice due to the statute of limitations and service of process issues detailed above and below. In opposition to the motion to dismiss, Plaintiff cross-moved to vacate the Voluntary Stipulation of Dismissal in <u>Hennis I</u> on the theory that Plaintiff's former attorney filed the Voluntary Stipulation of

Dismissal without Plaintiff's knowledge or permission, and to consolidate Hennis I with Hennis II. Plaintiff argues that the statute of limitations and service of process issues raised in CFG Health's motion to dismiss would be resolved if the Court vacates the Voluntary Stipulation of Dismissal in Hennis I and consolidates the two cases. Because CFG Health's motion to dismiss hinges on resolution of Plaintiff's cross-motion to vacate and consolidate, the Court will first turn to Plaintiff's cross-motion and then CFG Health's motions to dismiss and for sanctions.

### A.    Plaintiff's Cross-Motion to Vacate and Consolidate

In response to CFG Health's motion to dismiss in Hennis II, Plaintiff cross-moved to vacate the Voluntary Stipulation of Dismissal filed in Hennis I pursuant to Fed. R. Civ. P. 60(b), and to consolidate Hennis I and Hennis II pursuant to Fed. R. Civ. P. 42(a). [Hennis II, Docket Item 51.] For the following reasons, the Court will deny Plaintiff's motion in its entirety, and order that Hennis I be reclosed upon the docket.

### 1.    Motion to vacate under Rule 60(b)

First, Plaintiff asks this Court to set aside the Voluntary Stipulation of Dismissal filed in Hennis I pursuant to Fed. R. Civ. P. 60(b)(6). The Court declines to do so for several reasons.

24

Initially, Plaintiff's cross-motion to vacate was
problematic for technical reasons. For example, Plaintiff filed
no motion to reopen in Hennis I, which had been closed since
August 2016, nor had Plaintiff filed a Rule 60(b) motion in that
case before Judge Rodriguez. Hennis I and Hennis II are distinct
cases then presided over by different District Judges and no
filing in Hennis II could serve to vacate a dismissal with
prejudice in Hennis I. In order for the Court to properly
consider Plaintiff's motion, Chief Judge Linares temporarily
reopened Hennis I and reassigned the case to the undersigned by
Order of March 1, 2018. [Hennis I, Docket Item 9.] The Court
then notified the parties by a letter filed on the docket in
Hennis I and Hennis II that the cross-motion to vacate filed in
Hennis II was "deemed filed in [Hennis I] . . . for judicial
efficiency [and] to avoid the necessity of refilling Plaintiff's
motion to vacate and arguing before another judge." [Hennis I,
Docket Item 10; Hennis II, Docket Item 92.] Now that Plaintiff's
motion to vacate and consolidate is properly before the Court,
the motion will be considered on the merits.

Relief is available under Rule 60(b)(6) "only in
extraordinary circumstances where, without such relief, an
extreme and unexpected hardship would occur." Cox v. Horn, 757
F.3d 113, 120 (3d Cir. 2014) (citing Sawka v. Healtheast, Inc.,
989 F.2d 138, 140 (3d Cir. 1993)). "But extraordinary

circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." Budget Blinds, Inc. v. White, 536 F.3d 244, 255 (3d Cir. 2008).

Plaintiff's motion essentially boils down to an argument that the Voluntary Stipulation of Dismissal filed by Plaintiff's former attorney in Hennis I was not authorized by Ms. Hennis at the time it was filed and is, therefore, invalid. The contemporaneous emails and letters recently provided to the Court, however, tell a different story.

The July 2016 emails and letters exchanged by Ms. Hennis, Mr. Starr, and Mr. Benedetto, which were attached to Mr. Starr's letters, make clear it was Plaintiff's "deliberate choice" to dismiss Hennis I. It is also clear that Mr. Benedetto's law firm was well aware of the existence of Hennis I well before Mr. Starr filed the Voluntary Stipulation of Dismissal in Hennis I on August 2, 2016. Further, Mr. Starr attempted on several occasions before August 2, 2016 to speak by telephone to Mr. Benedetto, and neither Mr. Starr nor any staff member returned the calls. Also, contrary to Mr. Benedetto's statements and arguments to this Court, **both Ms. Hennis and the Benedetto Law Firm directed Mr. Starr to dismiss Hennis I**. And Mr. Benedetto took no action to challenge the Voluntary Stipulation of Dismissal after it was filed in Hennis I on August 2, 2016,

until he cross-moved in Hennis II to vacate the Voluntary Stipulation of Dismissal in Hennis I on August 2, 2017, exactly one year after the Voluntary Stipulation of Dismissal was filed.

These are far from "extraordinary circumstance" warranting relief under Rule 60(b)(6). Accordingly, Plaintiff's motion to vacate the Voluntary Stipulation of Dismissal in Hennis I will be denied.

### 2. Motion to consolidate under Rule 42(a)

Plaintiff next asks this Court to consolidate Hennis I and Hennis II. [Docket Item 51-3 at 8-9.] Under Fed. R. Civ. P. 42(a), "if actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Here, Hennis I and Hennis II are virtually identical cases. Indeed, the main differences between the two cases is that CFG Health was initially named as a defendant in Hennis I, but not in Hennis II, and that Hennis I was voluntarily dismissed in 2016. Thus, if Hennis I were an active case that had not been properly dismissed, the Court might be inclined to grant Plaintiff's motion to consolidate the two cases. But Hennis I was properly dismissed, as explained above and below. Accordingly, the Court will not consolidate the cases and will order that Hennis I be reclosed.

The motion to consolidate will be denied because Hennis I was properly dismissed under Federal Rule of Civil Procedure 41.

The Court recognizes that the Voluntary Stipulation of Dismissal filed by Mr. Starr on August 2, 2016 does not technically comport with the language of Fed. R. Civ. P. 41(a)(1)(A)(ii), since the document was not "signed by all parties who have appeared," since CFG Health had already answered but there is no signature line for CFG Health's explicit consent. Nevertheless, the Voluntary Stipulation of Dismissal was effective upon filing because it clearly defined and accomplished Plaintiff's intention to dismiss Hennis I, while preserving her ability to pursue her claims in Hennis II. CFG Health received the Voluntary Stipulation of Dismissal via the electronic docket, and naturally it did not object to the dismissal with prejudice of Plaintiff's claims against it. It would elevate form over function to disregard the Voluntary Stipulation of Dismissal in these circumstances where it is inconceivable that the defending party did not agree with the dismissal on these terms.

Such treatment of the Voluntary Stipulation of Dismissal filed in Hennis I is consistent with the spirit of Rule 41, well-established Supreme Court precedent, and the well-documented conversations between Ms. Hennis, Mr. Benedetto, and Mr. Starr in and around July of 2016.

The U.S. Supreme Court has made clear that "the policy and purpose of Rule 41(a)(1) . . . was designed to limit a plaintiff's ability to dismiss an action." Cooter & Gell v.

Hartmarx Corp., 496 U.S. 384, 397 (1990) (emphasis added). "Rule 41(a)(1) was not designed to give a plaintiff any benefit other than the right to take [a voluntary] dismissal without prejudice." Id. Within this context, courts have found that the main purpose behind the requirement for court approval in Rule 41(a)(2) is "to prevent voluntary dismissals which will prejudice the opposing party, and to permit the Court to impose curative conditions by the Court to avoid such prejudice." John Evans Sons, Inc. v. Majik-Ironers, Inc., 95 F.R.D. 186, 190 (E.D. Pa. 1982) (emphasis added). In fact, "[n]umerous courts, including courts within the Third Circuit, have held that a court lacks the discretion to deny a motion under Fed. R. Civ. P. 41(a)(2) when the plaintiff requests that the dismissal be made with prejudice." Sypniewski v. Warren Hills Reg'l Bd. Of Educ., 2006 WL 208562, at *3 (D.N.J. Jan. 26, 2006).

The Complaint in Hennis I was filed on June 28, 2016. [Hennis I, Docket Item 1.] CFG Health filed an answer to the Complaint on July 28, 2016. [Hennis I, Docket Item 5.] On July 15, 2016, Mr. Benedetto (or his staff using his name) mailed Mr. Starr a letter advising him that Mr. Benedetto's law firm was taking over the matter and that Mr. Starr should "[k]indly forward the contents of the file to my office as soon as possible and forward an accounting of your advanced costs." [Hennis I, Docket Item 13-1 at 1.] Mr. Starr then followed up

with Ms. Hennis by letter and via telephone, during which time she informed Mr. Starr that he was being terminated and that she had, in fact, retained Mr. Benedetto's firm to handle the matter. [Hennis I, Docket Item 13 at 1; Docket Item 13-1 at 2.] By undated letter, Ms. Hennis confirmed she was terminating Mr. Starr as her attorney and had retained Mr. Benedetto as her attorney, and demanded that the Complaint in Hennis I be "IMMEDIATELY withdraw[n]." [Id. at 3.] Mr. Starr then called Mr. Benedetto, who was CC'ed on Ms. Hennis's undated letter, at least twice and emailed him on July 27, 2016, thereby, at a minimum, indisputably putting Mr. Benedetto (or his legal staff) on notice about the existence of Hennis I. [Hennis I, Docket Item 15-1 at 1-2.] On August 2, 2016, Defendant's attorney, Mr. Eastlack, wrote to Mr. Benedetto and Mr. Starr, informing them that "**there are two Complaints** filed in this matter purporting to represent identical plaintiffs against nearly identical defendants," and asking them to "[p]lease decide which cat will have this fish before an application to dismiss both Complaints is made." [Hennis I, Docket Item 15-1 at 4] (emphasis added). That same day, Mr. Starr filed the Voluntary Stipulation of Dismissal in Hennis I, with prejudice and "at the direction of Plaintiff, Patricia K. Hennis o/b/ Est. of David Hennis". [Hennis I, Docket Item 13 at 2.]

It bears repeating that neither Mr. Benedetto nor anyone at his law firm took _any_ action to prevent Mr. Starr from filing the Voluntary Stipulation of Dismissal in _Hennis I_ before August 2, 2016, nor did Mr. Benedetto challenge the validity of the Voluntary Stipulation of Dismissal after it was filed on August 2, 2016. In fact, the first time Mr. Benedetto raised any issue about the validity of the Voluntary Stipulation of Dismissal was in Plaintiff's cross-motion to vacate filed in August 2017, one year after the Voluntary Stipulation of Dismissal was filed by Mr. Starr in _Hennis I_.

It is clear to the Court that Mr. Starr possessed actual authority from his former client, Ms. Hennis, to dismiss _Hennis I_. Mr. Starr reasonably exercised that authority by filing a Voluntary Stipulation of Dismissal with prejudice, which expressly preserved Plaintiff's rights to pursue her claims in _Hennis II_. Again, the purpose behind Rule 41(a)(2) is "to prevent voluntary dismissals which will prejudice _the opposing party_, and to permit the Court to impose curative conditions by the Court to avoid such prejudice." _John Evans Sons, Inc._, 95 F.R.D. at 190 (emphasis added). Mr. Starr's dismissal of _Hennis I_ certainly caused no prejudice to CFG Health, while vacating it would prejudice CFG Health. Accordingly, the Court finds that Plaintiff's motion to vacate the Voluntary Stipulation of Dismissal in _Hennis I_ shall be denied, _Hennis I_ shall be

reclosed, and that Plaintiff's request to consolidate <u>Hennis I</u> and <u>Hennis II</u> will be denied.

**B.   CFG Health's Motion to Dismiss or for Summary Judgment**

With Plaintiff's cross-motion to vacate being denied, the analysis of CFG Health's motion to dismiss or, in the alternative, for summary judgment is fairly straightforward. Defendant CFG Health timely filed a motion to dismiss under Fed. R. Civ. P. 12(b)(5) and 12(b)(6) or, in the alternative, for summary judgment, on the grounds of insufficient service of process and/or the applicable two-year statute of limitations. [Docket Item 36.] Apart from the arguments advanced in the cross-motion to vacate discussed above, Plaintiff made no real effort to explain why the case should not be dismissed under Fed. R. Civ. P. 12(b)(5) or 12(b)(6). Indeed, at oral argument, Plaintiff's counsel, Ms. Alyssa Poole, all but conceded that Plaintiff's sole basis for opposing CFG Health's motion to dismiss lay within the cross-motion to vacate. (<u>See</u>, <u>e.g.</u>, Oral Arg. Tr. at 26:8-21.) The same silence is reflected in Plaintiff's opposition to Defendant's motion to dismiss. [<u>Hennis II</u>, Docket Item 51.] Regardless, even giving Plaintiff the benefit of all doubts, the Court cannot find a way around either the statute of limitations or service of process issues presented in <u>Hennis II</u>. The motion to be dismiss will be granted with prejudice, as now explained.

32

1.  Untimely service of process

CFG Health first argues that, because Plaintiff failed to timely-serve the Amended Complaint, as required by Rule 4(m), all claims against it should be dismissed under Fed. R. Civ. P. 12(b)(5). [Hennis II, Docket Item 36-16 at 4-6.]

The Amended Complaint was filed on January 11, 2017 [Hennis I, Docket Item 25], but Plaintiff did not serve CFG Health until 148 days later, on June 8, 2017. [Docket Item 36-12.] Fed. R. Civ. P. 4(m) requires that any Amended Complaint be served within 90 days after it is filed. This time limit for service is not discretionary, and shall only be excused for good cause. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice [unless] plaintiff shows good cause for the failure. . . .") To this day, Plaintiff has not provided any explanation, let alone good cause, for failing to timely serve CFG Health.

Even absent good cause, the Court recognizes it has discretion to relieve Plaintiff of the consequences for failure to make timely service of process, such as by enlarging the Rule 4(m) period. See 1993 Notes of the Advisory Committee to Rule 4 Amendment. While dismissal for insufficient service of process is normally without prejudice, in this instance relieving Plaintiff from the Rule 4(m) violation would be futile because

the statute of limitations bars Plaintiff from adding CFG Health

as a defendant in Hennis II, even if service of process were

deemed to date back to the filing of the Amended Complaint on

January 11, 2017, as next discussed.

### 2. Statute of limitations

In New Jersey, the statute of limitations for personal

injury claims is two years. N.J.S.A. § 2A:14-2. The same statute

applies to claims under 42 U.S.C. 1983. See Wilson v. Garcia,

471 U.S. 261, 276 (1985); Dique v. N.J. State Police, 603 F.3d

181, 185 (3d Cir. 2010). Here, since David Hennis committed

suicide on July 30, 2014, the statute of limitations expired on

July 30, 2016. Hennis I was filed on June 28, 2016 and Hennis

II, which did not name CFG Health, was filed on July 12, 2016

(both within the statute of limitations). But the Amended

Complaint in Hennis II, which named CFG Health as a defendant in

Hennis II for the first time, was filed on January 11, 2017,

which falls several months outside the statute of limitations.

The statute of limitations may be tolled if a plaintiff

properly invokes New Jersey's fictitious party rule before

expiration of the limitations period. R. 4:25-4. In Hennis II,

Plaintiff did, in fact, name "John Doe Corrections Officers 1-

10" as defendants. But by specifically identifying "Correction

Officers," rather than, say, "Medical Providers," Plaintiff

clearly failed to cover CFG Health, a medical service provider.

If Plaintiff wanted to cover an entity such as CFG Health in their fictitious pleadings, Plaintiff could have easily done so. This is especially so when Plaintiff's previous attorney, Mr. Starr, specifically named CFG Health as a defendant in Hennis I several weeks before the Complaint was filed in Hennis II.

By pleading fictitious parties in Hennis II, Plaintiff cannot rely upon the New Jersey Court's relation back rule. See R. 4:9-3; see also Viviano v. CBS, Inc. 101 N.J. 538, 552 (1986) (holding that New Jersey's Court Rule 4:9-3 "permits the addition of a new claim or a new party when the initial complaint did not contemplate the need for such an amendment"). As just noted, Plaintiff filed suit against "John Doe Corrections Officers 1-10" in Hennis II, thereby indicating that Plaintiff presupposed a need for later amendment. The relation back rule is, therefore, not applicable.

Hennis I was dismissed nearly two years ago when the Voluntary Stipulation of Dismissal was filed by Plaintiff's own attorney with Plaintiff's authorization, as described above. From that point on, CFG Health relied on the Voluntary Stipulation of Dismissal and the fact that Plaintiff had not named CFG Health as defendants in Hennis II as the basis to reasonably assume Plaintiff had made a choice to drop her claims against CFG Health. This is especially so where the Voluntary Stipulation of Dismissal specifically stated it "ha[d] no

bearing on any other cause of action filed on behalf of the Est.
of David Hennis" [Hennis I, Docket Item 8], a direct reference
to Hennis II.

More importantly, Mr. Benedetto's law firm actually knew
about the existence of Hennis I well before the statute of
limitations expired, as evidenced by the letters and emails
exchanged between Ms. Hennis, Mr. Starr, and Mr. Benedetto in
July 2016, attached to Mr. Starr's March 2018 letters to this
Court. Mr. Benedetto's law firm made no known effort to review
the Hennis I docket, obtain Mr. Starr's file, discuss Hennis I
with Mr. Starr, or amend the Complaint in Hennis II before or
shortly after the statute of limitations expired. [Hennis II,
Docket Item 23.] When Mr. Benedetto's law firm did finally seek
leave to amend the Complaint to add CFG Health as a defendant,
Mr. Benedetto's law firm did so several months after the statute
of limitations had expired but made no mention of the obvious
statute of limitations issue, or even the existence of Hennis I,
in his unopposed motion for leave to amend before Judge Donio.
[Hennis II, Docket Item 23.] As will be explained below, Mr.
Benedetto's lack of candor to this Court and Judge Donio has
been, and continues to be, unacceptable.

In sum, Plaintiff failed to name CFG Health as a defendant
within the statute of limitations and none of the equitable
tolling doctrines apply. Accordingly, CFG Health's motion to

dismiss will be granted pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6), and all claims against CFG Health will be dismissed with prejudice.

## C. Defendant CFG Health's Motion for Sanctions

One month after filing the motion to dismiss, Defendant CFG Health filed a motion for sanctions pursuant to Fed. R. Civ. P. 11. [Hennis II, Docket Item 46.] The thrust of CFG's motion is that Plaintiff and Plaintiff's attorney, Mr. Benedetto, knew about the existence of CFG Health, the filing of Hennis I, and the Voluntary Stipulation of Dismissal filed in Hennis I, but failed to notify Judge Donio of this knowledge and the expiration of the applicable statute of limitations in its December 2016 motion for leave to amend, nor was a courtesy copy of the motion for leave to amend provided to CFG Health's attorneys at that time. [Hennis II, Docket Item 46-1.] Defendant CFG Health also moves for sanctions for Plaintiff's failure to take any steps to effect service of process for the five months after filing the Amended Complaint, and for filing a frivolous cross-motion to vacate in opposition to CFG Health's motion to dismiss. [Hennis II, Docket Item 56 at 5-10.] CFG Health further demonstrates, in its supplemental submission of March 15, 2018 [Hennis II, Docket Item 102], how Plaintiff's counsel's violations of Rule 11 have continued to cause it to waste time and resources to refute Plaintiff's uninformed and incorrect

representations to the Court bearing upon timeliness of this action.

Federal Rule of Civil Procedure 11 is intended to discourage the filing of frivolous, unsupported, or unreasonable claims by "impos[ing] on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus. Inc., 788 F.2d 151, 157 (3d Cir. 1986). Rule 11 sanctions are "aimed at curbing abuses of the judicial system," Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 397 (1990), and "intended to discourage the filing of frivolous, unsupported, or unreasonable claims." Leuallen v. Borough of Paulsboro, 180 F. Supp. 2d 615, 618 (D.N.J. 2002). To that end, Rule 11(b) requires, in relevant part, that an attorney certify that the factual contentions in any pleading, written motion, or other paper have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(3).

If Rule 11(b) is violated, then Rule 11(c) permits the Court to impose sanctions, including "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Any sanction imposed "must be limited to

what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Id.

CFG Health argues that Mr. Benedetto and his law firm failed to exercise due diligence at nearly every step of the process. The Court briefly recounts and summarizes some of the alleged errors, omissions, and misleading statements CFG Health has identified:

- Failing to name CFG Health as a defendant in Hennis II before the statute of limitations expired, despite the fact that Plaintiff previously named CFG Health as a defendant in Hennis I;

- Not adequately responding to Mr. Starr's calls, emails, and/or letters in late July 2016, and failing to obtain Mr. Starr's files after he offered to provide them;

- Failing to respond at all to Mr. Eastlack's letter addressed to Mr. Benedetto and Mr. Starr and dated August 2, 2016;

- Lack of candor before Judge Donio, by filing a motion for leave to amend without notifying the Court about a clear statute of limitations issue, or even the existence of Hennis I, and not serving a courtesy copy of the unopposed motion for leave to amend upon CFG Health;

- Inexplicably failing to timely serve CFG Health the Amended Complaint within 90 days;

- Filing a cross-motion in Hennis II to vacate the Voluntary Stipulation of Dismissal filed in Hennis I, before investigating the firm's own files or reaching out to Mr. Starr or Mr. Abbasi;

- Requiring that a deposition of his client, Ms. Hennis, be taken by CFG Health on February 20, 2018, to address issues raised in Plaintiff's cross-motion to

vacate, when documents and emails existed in Mr.
Benedetto's own files that contradicted (or, at a
minimum, directly addressed) the positions Plaintiff
had taken in the cross-motion to vacate and which the
deposition sought to address;

- Making material misrepresentations or omissions, as an
  officer of the Court, at oral argument on February 27,
  2018, as described above;

- Making material misrepresentations or omissions, under
  certification, on March 13, 2018, as described above;

- Shifting blame onto his staff, rather than accepting
  responsibility for his own mishandling of the case, in
  a certification filed on March 15, 2018;

Rule 11 sanctions are only intended to be used in

"exceptional circumstances." <u>Gaiardo v. Ethyl Corp.</u>, 835 F.2d

479, 483 (3d Cir. 1983). It is indeed tempting to impose

monetary sanctions dating back to everything that occurred after

the filing of Plaintiff's motion to amend to add CFG Health in

<u>Hennis II</u>, in which the Benedetto firm omitted the material fact

that the statute of limitations had already expired due to

dismissal of <u>Hennis I</u>, in violation of the duty to sign

pleadings only when backed by reasonable investigation, which

the Benedetto firm either did not do or totally ignored and

swept under the rug. But since sanctions under Rule 11 should be

used sparingly and only to the extent necessary to deter such

misconduct in the respondent and others, the Court will impose

monetary sanctions that begin at a later time when counsel's

Rule 11 failings truly reached an intolerable point.[5] To that
end, the Court will exercise its discretion by ordering Mr.
Benedetto and his law firm to reimburse CFG Health for those
attorneys' fees and costs proximately caused by Mr. Benedetto's
failure to investigate his own files in preparation for the
February 20, 2018 deposition of Ms. Hennis and February 27, 2018
oral argument, as well as Mr. Benedetto's material misstatements
and omissions that followed thereafter.

The Court finds as follows:

1.    Mr. Benedetto acted carelessly when he launched <u>Hennis
II</u> without properly investigating the case, by proceeding
without obtaining Mr. Starr's materials from <u>Hennis I</u>, and by
inadequately communicating with his client, Ms. Hennis before
the Complaint was filed in <u>Hennis II</u> on July 12, 2016;

2.    Mr. Benedetto continued to ignore prior counsel and
<u>Hennis I</u> by not adequately responding to Mr. Starr's telephone
calls and/or emails on or around July 27, 2016, and by failing
to add CFG Health as a defendant in <u>Hennis II</u> before the statute
of limitations expired on July 30, 2016, even after his law firm

---

[5] The Court is also mindful to not overly sanction counsel for
neglect in handling the file, since that is not the purpose of
Rule 11 sanctions, but to focus on those statements to the Court
that frivolously defended the neglect based on counterfactual
statements. That moment clearly arrived in the recent history of
the case in preparations for oral argument, the argument itself,
and the post-argument submissions.

had clearly been put on notice about the existence of Hennis I and, therefore, CFG Health's potential involvement in the claims brought by Ms. Hennis;

3.    Mr. Benedetto lacked candor or, at a minimum, acted carelessly when he filed a motion for leave to amend before Judge Donio without notifying the Court about clear statute of limitations issues, or even the existence of Hennis I;

4.    Mr. Benedetto was, again, careless when he filed a frivolous cross-motion to vacate in Hennis II the Voluntary Stipulation of Dismissal in Hennis I based upon misstatements of facts that counsel knew or should have known after reasonable investigation;

5.    Notwithstanding Mr. Benedetto's carelessness and lack of candor up to, and including, the filing of the cross-motion to vacate in Hennis II, the Court is reluctant to impose incremental sanctions on Mr. Benedetto these actions when the consequences for his own shortcomings is already so severe, in this case, missing the statute of limitations leading to dismissal of CFG Health from Hennis II with prejudice, pursuant to Fed. R. Civ. P. 12(b)(5) and (6), and there may be other consequences to the firm if its actions and omissions have fallen below the standard of professional conduct for an attorney's representation of a client;

6.     On the other hand, Mr. Benedetto violated Rule 11(b) when he failed to properly investigate his own files and/or emails in preparation for the February 20, 2018 deposition of Ms. Hennis and oral argument in this Court on February 27, 2018, and by making material misstatements and omissions in the submissions to the Court that followed thereafter;

7.     CFG's fees for participation in the February 20, 2018 single-purpose deposition of Ms. Hennis will be recoverable herein; if Plaintiff's firm had searched its own files and the knowledge of its personnel, it would easily have learned that its positions – that it was unaware of <u>Hennis I</u> and that Ms. Hennis never authorized its dismissal - were untenable;

8.     The following week, Mr. Benedetto, still having not reviewed his own files and/or emails, represented as an officer of the Court, in relevant part, "I've never had a conversation with Mr. Starr regarding these matters" (Oral Arg. Tran. at 33:25-34:3), and "We've had no contact with Mr. Starr to the best of my knowledge." (<u>Id.</u> at 34:4-8.). This was materially misleading due to the high degree of contact between Mr. Benedetto's firm, in his name, and Mr. Starr regarding <u>Hennis I</u>.

9.     Mr. Starr's March 5, 2018 letter and contemporaneous documents attached thereto revealed that Mr. Benedetto (or, as he now claims, someone authorized to act in his behalf) had, in fact, sent Mr. Starr a letter dated July 15, 2016, that Ms.

Hennis had sent Mr. Starr an undated letter sometime in July 2016 (on which Mr. Benedetto was CC'ed), and that Mr. Starr had sent a letter to Ms. Hennis (on which Mr. Benedetto was not CC'ed) [Hennis I, Docket Item 13-1];

10.  Rather than concede his past mistakes and inattentiveness, and acknowledge that Ms. Hennis and Mr. Benedetto (or his legal staff) had communications with Mr. Starr prior to the dismissal of Hennis I, Mr. Benedetto unfortunately reiterated on March 13, 2018, in a sworn certification:

> 7.  As I stated to the Court on February 27, 2018, I never had a conversation with Mr. Starr about this matter nor was I contacted in writing by Mr. Starr at any time prior to Mr. Starr filing the Voluntary Stipulation of Dismissal with Prejudice.

[Hennis II, Docket Item 97-1 at ¶ 7];

11.  As Mr. Starr's March 9, 2018 letter and contemporaneously documents attached thereto revealed, Mr. Starr had, in fact, contacted Mr. Benedetto in writing through emails exchanged on July 26, 2016 prior to the filing of the voluntary dismissal;

12.  Mr. Benedetto's backtracking in his March 15th submission to the effect that "I never personally had a conversation with Mr. Starr about this matter nor was I personally contacted in writing by Mr. Starr at any time prior to Mr. Starr filing the Voluntary Stipulation of Dismissal with Prejudice," seeks merely to cast blame on others in his office

44

entrusted with these duties who clearly had these oral and written communications on his behalf. It is not acceptable to claim, as he does, that every single action performed by others in his immediate office under his supervision and attaching his name was unknown to him. A "remote control" defense does not work.

The Court exercises its discretion, pursuant to Fed. R. Civ. P. 11(c), and will order that Mr. Benedetto and his law firm reimburse CFG Health for its reasonable fees and expenditures proximately caused by the Benedetto firm's Rule 11 violations including Mr. Benedetto's failure to investigate his own files in preparation for the February 20, 2018 deposition of Ms. Hennis and February 27, 2018 oral argument and Mr. Benedetto's material misstatements and omissions that followed thereafter, all requiring CFG Health's response. Thus, Mr. Benedetto's law firm must reimburse CFG Health reasonable attorney's fees and costs spent: (1) preparing for and taking the February 20, 2018 deposition; (2) preparing for and participating in the February 27, 2018 oral argument; (3) responding to the Court's letter dated March 1, 2018; and (4) responding to two Orders to Show Cause dated March 6, 2018 and March 13, 2018. The exact amount of these sanctions will be determined by the Court based on the submission of an itemized affidavit of costs and fees by counsel for CFG Health, complying

with L. Civ. R. 54.2, to be filed with the Court within fourteen days of the entry of this Order. Thereafter Mr. Benedetto shall have fourteen days to file any objection to the amounts claimed, particularized as to each item objected to.

**V.    CONCLUSION**

, Plaintiff asks this Court to excuse Mr. Benedetto's (and his firm's) extreme carelessness and unexplained errors. For the reasons explained above, the Court must decline this invitation. CFG Health's motion to dismiss will be granted with prejudice and Plaintiff's cross-motion to vacate will be denied. CFG Health's motion for sanctions will be granted and reasonable fees and costs will be awarded to CFG Health from the point of Plaintiff Hennis' special deposition on February 20, 2018 until the present date. The accompanying Order will be entered.


**March 29, 2018**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      U.S. District Judge