# IN THE UNITED STATES DISTRICT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF DAVID HENNIS AND PATRICIA HENNIS, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 16-4216 (JBS-AMD) |
| v. | |
| WARDEN ROBERT BALICKI, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE, District Judge:**

This Court, in its Opinion and Order of March 29, 2018, granted the motion of Defendant CFG Health Systems, LLC, to impose Rule 11 sanctions upon Plaintiff's counsel, the Law Offices of Conrad J. Benedetto [Docket Items 105 and 106, hereafter "Opinion"], in an amount of reasonable attorney's fees and costs to be determined. The Court found that Plaintiff's counsel violated the Rule 11(b) duty to exercise reasonable diligence sufficient to certify that factual contentions in pleadings, motions, and other papers submitted to the court have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation. Opinion at 37-40. Without repeating that analysis here, the Court made detailed findings of the many ways in which the Law Offices of Conrad J. Benedetto prolonged needless litigation and

caused unnecessary expense to CFG Health Systems due to misstatements and omissions based on extraordinarily deficient investigation of its own files, even after serious questions were raised at and after oral argument.  Opinion at 41-45.

The key factual and legal inquiry in this case centered upon the circumstances under which Plaintiff Patricia Hennis launched a prior suit (Hennis I) involving this tragic jail suicide against the jail's medical provider, CFG Health Systems, discharged her previous lawyer who dismissed the suit in favor of the present action, which was launched by the Benedetto firm and did not originally name CFG Health Systems as a defendant. Both Ms. Hennis and Mr. Benedetto professed to have no knowledge of why the prior attorney (Adam Starr, Esq.) would dismiss the first case without authorization from Ms. Hennis or the Benedetto firm.  In fact, through laborious motion practice and the input of documents from prior counsel, it turns out that both Ms. Hennis and the Benedetto firm directed Mr. Starr, in writing, to dismiss the complaint in Hennis I, which facts were known to the firm and the client, leading to both the dismissal of this case against CFG Health Systems as barred by the statute of limitations and the denial of Plaintiff's motion to reopen Hennis I, all as found in the Opinion.

The Court considered imposing a monetary sanction beginning with the first instance of factual misrepresentation -- when the

Benedetto firm filed a motion for leave to amend to add CFG Health as a new defendant without disclosing the prior litigation in Hennis I, the dismissal of that case against CFG, and the expiration of the statute of limitations. Instead, the measure of relief for CFG Health would start at a later point in the Rule 11 landscape, namely, when it became necessary for CFG Health Systems to seek a second deposition of Ms. Hennis, which would be devoted to clarifying the circumstances of her dismissal of Hennis I, convened on February 20, 2018 (at which time she proffered to have no recollection of crucial details of her communications with prior counsel, which could have been answered by the evidence known to the Benedetto firm itself if it had simply investigated and disclosed its own files). Because the Benedetto firm failed to prepare the client to address the circumstances surrounding the earlier voluntary dismissal of her claim against CFG Health Systems, which could have been readily ascertained from correspondence and e-mails in the Benedetto firm's knowledge or possession, the deposition became an empty exercise, causing further expenditure of defense fees. Since the issue of the timeliness of Plaintiff's claim against CFG Health Systems was central to each motion at oral argument on February 27th, the preparation and time of defense counsel at oral argument were likewise unnecessary and those fees and expenses would be rewarded if reasonable.

The situation was compounded at oral argument by Mr. Benedetto's professed denial of knowledge of communications between his office and former counsel, when in fact, in a rather dramatic series of events, prior counsel Adam Starr, Esq. soon thereafter disclosed, contrary to Mr. Benedetto's statements to the Court, that the Benedetto firm was well aware of prior counsel's representation before the statute of limitations expired, as discussed in the Opinion at 11-18 & 36-46. After a cascade of uninformed statements and denials by Mr. Benedetto in his two post-argument submissions to the Court [id.], Defendant CFG Health necessarily researched and prepared a comprehensive response on March 15, 2018 [Docket Item 102] addressing Plaintiff's counsel's numerous serial misrepresentations and omissions to the Court, as discussed in the Opinion at 18-19, 37-46.

Against this background, the Court has reviewed the certification of fees and costs on behalf of CFG Health Systems in the Certification of Jeffrey S. McClain, Esq. [Docket Item 107.] The McClain certification complies with L. Civ. R. 54.2. The certification lists the detailed specification of legal services rendered beginning on February 2-7, 2018, in preparation for oral argument on the pending motions (McClain Cert. ¶ 8), continuing on February 7-20, 2018, with respect to preparation and attendance at Plaintiff's deposition (McClain

Cert. ¶ 6), with interspersed entries for preparation and research for oral argument on various dates from February 11-26, 2018, as well as attendance at oral argument on February 27, 2018. (McClain Cert. ¶ 8.) Defense counsel also listed the services rendered in response to Mr. Benedetto's oral statements at the argument, and in reply to the Court's inquiries on March 1, 2018, concerning Plaintiff's motion to set aside the voluntary dismissal of Hennis I, and to respond to Mr. Benedetto's two post-argument letters which were filed March 13, 2018 and March 15, 2018 in response to the Court's Orders to Show Cause.[1]  (McClain Cert. ¶¶ 10-11.)

Mr. Benedetto objects to the amounts sought as Rule 11 sanctions. [Benedetto Letter dated Apr. 23, 2018, Docket Item 111.]  First, he acknowledges that, while "Rule 11 does contain an element of compensation in the 'amount of the reasonable expenses incurred because of the filing' [paraphrasing Rule 11(c)(4)], the Court should also consider any mitigating factors with regard to deterrence, independent of monetary sanctions. See Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d

---

[1] The Court entered Orders to Show Cause on March 6th [Docket Item 95] and March 13th [Docket Item 99] directing Mr. Benedetto to respond to Mr. Starr's disclosures of two sets of documents that seemed to contradict Mr. Benedetto's professed lack of involvement and knowledge about the dismissal of Hennis I, and to show cause why sanctions should not be imposed under the pending Rule 11 motion.

5

191 (3d Cir. 1988)." [Id. at 1-2.] Thus, he argues that adverse publicity and closer scrutiny by counsel in other cases, together with unspecified steps he has taken to correct what he refers to as "mismanagement by my office," should suffice to deter similar conduct without necessity for monetary award. He further asserts that as sole owner of the law firm, "any amount ordered in Sanctions will negatively affect my personal finances." [Id. at 3.] He does not claim that it would be a financial hardship to pay the fees and costs sought herein.

The Court recognizes that Rule 11's cornerstone is its requirement that counsel's representations to the court as to law and fact be "formed after an inquiry reasonable under the circumstances," Rule 11(b), Fed. R. Civ. P., and that the Court, after giving a reasonable opportunity to respond, "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for its violation." Rule 11(c)(1), Fed. R. Civ. P. Such a sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," and may include "if imposed on motion and warranted for effective deterrence, an order directing payment to the movant for part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Rule 11(c)(4), Fed. R. Civ. P. The Supreme Court has directed that the trial court in interpreting

6

Rule 11 "must give effect to the rule's central goal of deterrence." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 392 (1990); see also In re Taylor, 655 F.3d 274, 288 (3d Cir. 2011) (noting that the "prime goal" of Rule 11 sanctions "should be the deterrence of repetition of improper conduct"). In short, sanctions for violating Rule 11 may be non-monetary, monetary, or both, and (as in the present case) may, upon motion of the adverse party, include all or part of the movant's fees and expenses directly resulting from the Rule 11 violation, to the extent warranted for effective deterrence.

Courts have noted that deterrence of litigation abuse, and not necessarily fee-shifting, is the principal purpose of a Rule 11 sanction. See, e.g., Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987); Slater v. Skyhawk Transp., Inc., 187 F.R.D. 185, 211, 220 (D.N.J. 1999); Evans v. Gloucester Twp., 2016 WL 3556604, at *7 (D.N.J. June 29, 2016). Imposition of a fee-shifting sanction, upon motion, is appropriate for more egregious types of conduct, where non-monetary sanctions (such as warnings, reprimands, or compulsory continuing education) are not sufficient to deter future misconduct. Also, if a monetary sanction is appropriate, the amount should reflect consideration of the sanctioned party's ability to pay. See Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 195-96 (3d Cir. 1987) (recognizing that the deterrent effect of an award depends

7

on the extent of the sanctioned party's resources).  The offending party's persistence in causing the violation is another factor, Shine v. Bayonne Bd. of Educ., 633 Fed. App'x 820, 824 (3d Cir. 2015) (arising from repeated refusal to withdraw admittedly deficient document), as well as the victim's duty to mitigate damages arising from the opponent's Rule 11 violation, such as by preventing the victim's costs in response to a frivolous suit to become excessive, Napier v. Thirty or More Unidentified Fed. Agents, 855 F.2d 1080, 1092, 1094 (3d Cir. 1988).  Thus, Rule 11 invests the court with "significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending persons or comparable conduct by similarly situated persons."  Notes of the Advisory Committee on Civil Rules, Rule 11 (1993 Amendment).

Applying these principles, the Court finds that non-monetary sanctions do not suffice to deter the repeated and prolonged conduct addressed herein.  In numerous pleadings and statements to the Court, the Benedetto firm's Rule 11 violations were manifest:  from the Benedetto firm's filing of the motion to amend in December 2016 joining CFG Health Systems as a new party without disclosing that the statute of limitations had run months previously [Docket Item 23]; in its opposition to CFG

Health System's motions for summary judgment, cross-moving to vacate the prior stipulation of dismissal in Hennis I on the erroneous basis that such dismissal was without Plaintiff's knowledge or consent [Docket Item 51]; in its preparation and submission of Plaintiff's opposition to Rule 11 sanctions still claiming that "Plaintiffs did not give authorization for a dismissal" and that "Mr. Starr did not consult current counsel," accompanied by Mr. Benedetto's certification of these erroneous facts [Docket Item 55]; in its defense of Plaintiff Patricia Hennis' second deposition on February 20th and participation at oral argument on February 27th asserting that there had been no permission to prior counsel Adam Starr to withdraw Hennis I and no contact with prior counsel's office before the statute of limitations ran; in Mr. Benedetto's assertion in his March 13th letter [Docket Item 97], in response to this Court's Order to Show Cause [Docket Item 95], containing the misstatements enumerated in the Court's Opinion at 15-16 & 44-45; and finally in Mr. Benedetto's letter of March 15th [Docket Item 100], continuing to make excuses for mismanagement of the file and overlooking all the communications that the Benedetto firm had about the Hennis I litigation at the time of the Hennis I dismissal and the fact its dismissal was authorized by both Mrs. Hennis and the Benedetto firm.

This situation would have been avoided if at any point from December 2016 to March 2018 the Benedetto firm had examined its own files of correspondence, e-mails, telephone records, and recollections of attorneys and firm personnel, or exercised its ability to speak with Plaintiff's prior counsel, Adam Starr, Esq., to determine the facts. Even as late as his April 23rd letter opposing these fees and costs, Mr. Benedetto, disappointingly, expresses little or no remorse or apology, merely wishing to "assure the Court that theses [sic] have not been events that I have passed off lightly and I am committed to having them not be repeated." [Docket Item 111 at 3.]

The Court finds that a verbal admonition or warning would not suffice to deter such serious and prolonged misconduct and deflection of responsibility. I need not find willful bad faith in order to determine, as I do, that this pattern of failing to perform basic office research requires the strong deterrent of a monetary sanction. The reimbursement of Defendant's reasonable costs and fees will be partial rather than plenary, as noted in this Court's Opinion at 45-46, because a partial sanction (beginning with fees and costs accruing in February and March of 2018, rather than accruing from the date of the first Rule 11 violation in December of 2016) represents the extent warranted for effective deterrence. This sum, though significant, is not beyond the Benedetto firm's ability to absorb and does not pose

a financial hardship. The partial award[2] recognizes duly that other negative consequences have been indirectly visited upon Mr. Benedetto and his firm, including negative publicity and dismissal of his client's claim against Defendant CFG Health Systems due to missing the statute of limitations. We next examine objections to specific services and amounts claimed for reimbursement.

Mr. Benedetto takes issue with several line items of the McClain Certification, namely:

- Mr. Benedetto objects that defense counsel bills on three separate occasions for "Review of Documents, Preparation for Deposition" when the second deposition was limited to questions regarding

---

[2] The monetary award is "partial" in the sense that it is only a fraction of the fees expended by CFG Health Systems to defend and ultimately dismiss a claim that was time-barred when the Benedetto firm sought to file it in December 2016. The uncompensated fees caused by the initial Rule 11 breach could reasonably include CFG Health Systems' efforts in researching and filing its motion to dismiss [Docket Item 36], its motion for sanctions [Docket Item 46], its reply brief with respect to these two motions and in opposition to Plaintiff's motion to vacate the Hennis I dismissal [Docket Item 50], its response to Plaintiff's opposition to the motions for sanctions and for dismissal/summary judgment [Docket Item 52], its further reply brief in support of sanctions [Docket Item 56], and its efforts as a party belatedly added to catchup on discovery, including efforts to depose Ms. Hennis. [E.g., Docket Items 61, 65, 67, 69, 71, 72, 74, 77, 82, and 83.] The amount of Rule 11(c)(4) monetary sanction actually imposed herein includes none of the above services necessitated by counsel's Rule 11 violations; the award probably represents a small fraction of the total, but it is hopefully sufficient to deter a repeat of such violations by counsel or others. Moreover, defense counsel did not request fees for time preparing the McClain Certification, which can also be included in a Rule 11 fee award. See Rule 11(c)(2) (permitting an award of "reasonable expenses, including attorney's fees, incurred for the motion").

- Plaintiff's two page certification. [Benedetto Letter, Docket Item 111 at 2.] The Court finds these three entries, consisting of 0.5, 0.7, and 1.4 hours, totaling 2.6 hours, represent services reasonable and proportionate to the scope of the deposition regarding the circumstances of dismissal of Hennis I, and the objection is overruled.

- Mr. Benedetto objects that both defense counsel -- Mr. Holtzman and Mr. McClain -- billed for deposition preparation time, when only Mr. Holtzman attended and participated in the deposition of February 20th. [Docket Item 111 at 2.] The Court overrules this objection, as Mr. McClain and Mr. Holtzman worked together and were entitled to reasonably prepare together, with the total time for deposition preparation being quite reasonable in light of the important stakes, wherein the reasons and timing of the dismissal of Hennis I were central to no fewer than three pending dispositive motions and to the application for Rule 11 sanctions. That only one attorney actually covered the deposition itself further demonstrates moderation.

- Mr. Benedetto objects that Mr. McClain bills for seven separate occasions preparing for oral argument, in addition to time he billed for reviewing documents and preparing certifications. [Docket Item 111 at 2.] The Court finds these seven entries are reasonable services to prepare for argument on all the pending motions, and they are reasonable in length (consisting of a total of 9.2 hours) to prepare for a lengthy and important argument on multiple dispositive motions. The objection is overruled.

- Mr. Benedetto asserts that Mr. McClain bills for six separate occasions of services in response to the Court's March 1, 2018 inquiries for legal research and preparing a letter brief. [Docket Item 111 at 2.] The Court finds that this research and writing was necessary to address Plaintiff's faulty Rule 60(b) motion, which again turned upon Plaintiff's counsel's assertions that the dismissal of Hennis I was unauthorized by the client and unknown to his office at all material times. The Court sees seven entries devoted to preparation of the defense

12

letter-brief beginning March 1 and concluding on
March 16, involving 10.4 hours.  The result of
defense counsel's efforts was a letter-brief of
almost five pages single-spaced with ample legal
reasoning and case citation in a less-familiar area
of law involving Rules 41(a)(2) and 60(b)(6), Fed.
R. Civ. P., which was helpful to the Court in
deciding the matter.  This amount of time for these
legal services is on the low side of what could be
considered reasonable, and the objection is
overruled.

- Finally, Mr. Benedetto questions whether the claimed
mileage reimbursement, parking fees, and tolls were
billed to the client "or if this is being included
merely to increase the sanction amount."  [Docket
Item 111 at 2.]  The Court finds that the answer is
in the McClain Certification itself, in which Mr.
McClain certifies that these expenses were
associated with the February 20th deposition
(McClain Cert. ¶ 7) and with the oral argument on
February 27th (id. ¶ 9), and that these are "actual
expenses incurred in February 2018 [which] have been
billed. . . ." (id. ¶ 13).  Mr. Benedetto suggests
no reason to probe behind the certification of Mr.
McClain that these expenses for mileage and tolls to
deposition and argument were billed to the client
for reimbursement, which would be customary.  Before
accusing his adversary of improperly running up the
tab for these (miniscule) travel expenses, Mr.
Benedetto would do well to suggest some basis for
his allegation.  He has none, and his objection is
overruled.

The deposition-related tasks consumed the reasonable total of 6.70 hours (McClain Cert. ¶ 6), while the oral-argument-related preparation, research, and attendance amounted to the reasonable expenditure of 23.70 hours. (McClain Cert. ¶ 8.) Defendant's response to the Court's inquiries of March 1, 2018 following oral argument consumed 11.40 hours (McClain Cert. ¶ 10), which the Court also finds to be reasonable.  Defendant's

13

response to the March 6 and 13, 2018 Orders to Show Cause, requiring legal services between March 6-16, 2018, and resulting in submission of an excellent letter-brief, consumed the reasonable time of 6.20 hours. (McClain Cert. ¶ 11.)

The claimed hourly rate for attorneys Jeffrey S. McClain and Stephen D. Holtzman at $150.00 per hour was eminently reasonable, as their work and advocacy were efficient, professional, and persuasive. This comparatively-modest hourly rate produces a more moderate lodestar.

The total time reasonably expended is 41.30 hours at $150.00 per hour for a total lodestar of $6,195.00.[3] Costs and fees total $468.50,[4] which were also reasonably and necessarily incurred as a result of the sanctionable conduct, are also approved. The total amount approved is $6,195.00[5] plus $468.50, equaling $6,663.50.

Accordingly, the Court will enter an appropriate Order awarding Rule 11 sanctions in favor of Defendant CFG Health Systems and against the Law Offices of Conrad J. Benedetto in the amount of $6,663.50, to be paid within 30 days, with no

---

[3] There was a typo in the McClain Cert. ¶ 12, wherein the total for services rendered was stated as $7,195.00, while the accurate amount is $6,195.00.

[4] These costs consist of mileage and tolls on 2/20/18 of $47.16, deposition of 2/20/18 transcript of $364.30, and mileage and parking on 2/27/18 of $57.04. (McClain Cert. ¶¶ 7 & 9.)

reimbursement[6] being sought or obtained from the firm's clients, Estate of David Hennis and Patricia Hennis.

**May 16, 2018**                    **s/ Jerome B. Simandle**
DATE                                JEROME B. SIMANDLE
                                    U.S. District Judge

---

[6] To assure proper deterrent impact, the sanction is to be paid by counsel, not the clients. Farino v. Walshe, 938 F.2d 6, 7-8 (2d Cir. 1991) (citing "the court's unquestioned authority to impose a Rule 11 sanction and to determine that the sanction should be borne by the lawyer and not the clients").