UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE ESTATE OF DAVID HENNIS, et. al., : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> WARDEN ROBERT BALICKI, et al., : <br> : <br> Defendants. : <br> : | Civ. No. 16-4216 (RBK) (AMD) <br><br> **OPINION** |

**ROBERT B. KUGLER, U.S.D.J.**

This matter comes before the Court by way of Plaintiffs, the Estate of David Hennis by and through its administrator, Patricia Hennis, and Ms. Hennis in her own right's (collectively "Plaintiff") Complaint, asserting violations of the Eighth and Fourteenth Amendments, under 42 U.S.C. § 1983, and related state law claims. Presently before the Court are Defendants' motion for summary judgment (ECF No. 168), Third Party Defendant CFG Health Systems, LLC's ("CFG") motion for summary judgment (ECF No. 183), and their respective motions to seal various exhibits (ECF Nos. 170, 187). The respective parties filed oppositions (ECF Nos. 174, 186), as well as replies (ECF Nos. 179, 190). For the reasons set forth below, the Court will grant Defendants' motion for summary judgment, deny as moot CFG's motion for summary judgment, and grant the motions to seal as unopposed.

I. **BACKGROUND**

As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the background of this matter in an earlier Opinion (ECF No. 105), the Court will only state those facts necessary to address the instant motions.

This case arises from the suicide of David Hennis, during his pretrial detention at the Cumberland County Jail. On or about July 22, 2014, Mr. Hennis received aggravated assault and related charges, and underwent an intake screening at the jail. Mr. Hennis did not appear despondent or exhibit any bizarre behavior during that screening.

He then underwent a mental health screening with CFG staff where he denied having any thoughts or plans to commit suicide, depression, mental health treatment, psychiatric hospitalization, or any bizarre behavior. Additionally, Mr. Hennis did not appear to be under the influence of alcohol or drugs, and was neat, alert, clean, oriented, and had appropriate speech and mood. After intake, Officials placed Mr. Hennis in general population with a referral for substance abuse issues.

On July 25, 2014, Mr. Hennis reported a shoulder injury from a fall, but his medical reports were normal. At some point, staff had placed Mr. Hennis into the medical segregation unit. On July 30, 2014, staff cleared Mr. Hennis to return to general population but he remained in the medical segregation unit either waiting for an x-ray or for the completion of lunch service.

During the morning of July 30, 2014, Officer Rena Miller was responsible for watching the medical unit and conducted cell checks every twenty to thirty minutes. In particular, she conducted checks at 11:30 a.m. and 11:52 a.m., but Plaintiff alleges that "there were no inmates to check that morning," as all inmates had moved to a different area for construction work. (ECF No. 174-1, at ¶ 79).

At around noon that day, Officer Miller began serving lunch and then either she or a nurse, discovered Mr. Hennis hanging with a sheet around his neck. Officer Miller rapidly called an emergency code and staff responded immediately for assistance. Staff quickly cut down Mr.

Hennis, used a defibrillator, and performed CPR until the paramedics arrived minutes later. Officials took Mr. Hennis to the Inspira Health Center and was pronounced dead at 1:16 p.m.

The Cumberland County Prosecutor's Office ("CCPO") investigated the incident and found that Mr. Hennis had hung himself from a metal conduit located in the medical segregation unit. The jail had installed the conduit earlier that same day.

Among the interviews, CCPO interviewed inmate David Ledbetter, who said that Mr. Hennis appeared stressed, feared returning to general population, and sought to stay in the medical unit or a transfer to a psychiatric hospital. Inmate Ledbetter overheard Mr. Hennis having a conversation with another inmate, where the other inmate discussed a prior transfer to a psychiatric hospital following a suicide attempt. Consequently, the parties dispute whether an intentional or accidental suicide occurred, *i.e.*, whether Mr. Hennis sought to stage a suicide attempt in order to receive a transfer to a psychiatric hospital.

After a tortured procedural history set forth in the Court's earlier Opinion, (ECF No. 105, 5–19), the Court dismissed with prejudice CFG as a direct defendant on statute of limitations grounds. The Court also issued monetary sanctions against Plaintiff's counsel for his extreme carelessness and material misstatements with regard to CFG. (ECF No. 106).

Defendants then filed a third-party complaint against CFG. (ECF No. 128). At the conclusion of discovery, Defendants and CFG filed their respective motions for summary judgment.

## II. STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014). In deciding a motion for

summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton,* 572 U.S. at 657. The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist). The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson,* 477 U.S. at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990).

## III. DISCUSSION

Before discussing the merits, the Court must address the deficiencies within Plaintiff's opposition, which complicate the task before the Court and act to Plaintiff's great detriment. Under Rule 56(c)(1)(A), any party asserting that a fact is or is not in dispute must support that assertion by "*citing* to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." (emphasis added).

When parties fail to follow Rule 56, a court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

Local Civil Rule 56.1(a) supplements the federal rule and provides in relevant part:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and *citing to the affidavits and other documents submitted in connection with the motion*; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

(emphasis added).

Additionally, an "opponent may . . . furnish a supplemental statement of disputed material facts, in separately numbered paragraphs *citing to the affidavits and other documents submitted in connection with the motion,* if necessary to substantiate the factual basis for opposition." *Id*. (emphasis added).

Stated differently, expressing a general disagreement "without identifying the facts disputed *and* without [citing] to evidence in the record that raises an issue of fact regarding that point, is insufficient to survive summary judgment." *Malik v. Hannah*, 799 F. Supp. 2d 355, 358 (D.N.J. 2011) (emphasis added); *see, e.g.*, *Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.,* No. 12–3427, 2014 WL 268652, at *5 n. 4 (D.N.J. Jan. 23, 2014) (admonishing the defendant for falsely claiming that facts were in dispute, and noting that "any statement that is not explicitly denied with a proper citation to the record in a responsive Rule 56.1 statement is deemed

admitted."); *Walters v. Carson*, No. 11–6545, 2013 WL 6734257, at *9 n.11 (D.N.J. Dec.19, 2013).

With those principles in mind, Plaintiff's responsive statement of material facts only denies or partially denies 23 of the 106[1] paragraphs with *any* citations to the record. (ECF No. 174-1). The rest of Plaintiff's denials, "attempt[] to dispute a fact asserted and supported from the record by Defendants, without supporting [her] position with a citation to the record." *See Soto-Muniz v. Corizon, Inc.*, No. 10-3617, 2015 WL 1034477, at *3 n.3 (D.N.J. Mar. 10, 2015), *aff'd sub nom. Soto-Muniz v. Martin*, 665 F. App'x 226 (3d Cir. 2016).

Moreover, in 16 of the 23 remaining paragraphs in "dispute," Plaintiff is "attempting to deny a fact not actually asserted by Defendants." *Id.*; (*See* ECF No. 174-1, at ¶¶ 13, 15, 27, 31, 33, 40, 53, 66, 68, 79, 84, 92, 93, 94, 97, 100). In these instances, Plaintiff submits a general denial, and then cites to, at best, supplemental related information. Although the Court will consider this supplemental information, such evidence is insufficient to dispute their respective facts in question. *See, e.g.*, *Soto-Muniz*, 2015 WL 1034477, at *3, *Juster*, 2014 WL 268652, at *5 n. 4. Accordingly, the Court will regard the entirety of Defendants' statement of facts, with the exception of Paragraphs 34, 62, 65, 80, and 82, as undisputed for the purpose of Defendants' motion for summary judgment.

Additionally, as Plaintiff did not file a supplemental statement of facts under Local Rule 56.1(a), the Court will only consider the alleged facts in Plaintiff's brief that have proper citations to the record. *See* Fed. R. Civ. P. 56(c)(1)(A), 56(e); *Malik*, 799 F. Supp. 2d at 358. That said,

---

[1] According to Defendants, although their statement of facts concludes with Paragraph 101, the statement contains 106 paragraphs, due to mis-numbering. (ECF No. 179, at 4 n.2). For ease of reference, the Court will use the erroneous numbering, as Plaintiff has, and will clarify if the paragraph at issue is mis-numbered.

Plaintiff's brief sets forth a nine-page litany of allegations, nearly all of which, have no citations to the record. (ECF No. 174, at 4–12). Astonishingly, Defendants emphasized these failures in their reply, and yet Plaintiff appears to have made no effort to remedy these deficiencies.

With that in mind, the most substantive remaining allegations within Plaintiff's brief are at best, wild misrepresentations of the cited material, and are at worst, deliberate attempts to deceive the Court. (ECF No. 174, at 6–7, 12–13). For example, on pages six and seven of her opposition, Plaintiff appears to have combined bits of deposition testimony and then added her own conclusions, to manufacture damning *quotations* from Defendants' expert, Tracy Reed. (*Id*. at 6-7). The Court takes this opportunity to remind Plaintiff's counsel, Conrad J. Benedetto, of his duty of candor towards this tribunal. Under New Jersey Rule of Professional Conduct 3.3(a), a "lawyer shall not knowingly . . . make a false statement of material fact . . . to a tribunal . . . [or] offer evidence that the lawyer knows to be false."

**A. Municipal Liability Under § 1983**

Turning then to the merits, the Cumberland County argues that summary judgment is appropriate because Plaintiff has failed to support her claim against a local government entity under § 1983.

To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Com. of Pa.,* 36 F.3d 1250, 1255–56 (3d. Cir. 1994). The Supreme Court has established that § 1983's definition of "person" includes municipalities and other local government entities. *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 690 (1978).

A plaintiff may not, however, hold a local government unit "liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). To hold such an entity liable under § 1983, plaintiffs must demonstrate that a local government unit adopted a policy or custom and that such policy or custom had been "the moving force" behind the deprivation of their constitutional rights. *See Monell*, 436 U.S. at 694.

Municipal policy generally requires that a local governing body's officers officially adopt and promulgate a "statement, ordinance, regulation, or decision." *Id.* at 690. A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691.

Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

The "first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385. In the present case, Plaintiff alleges that Cumberland

County developed policies or customs, such as a failure to train, that caused a deprivation of Mr. Hennis' constitutional rights under the Fourteenth Amendment. (ECF No. 26, at 6).

To state a Fourteenth Amendment[2] claim for deliberate indifference resulting in suicide, a plaintiff must show: "(1) that the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility," that the individual would attempt suicide; "(2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." *Palakovic v. Wetzel*, 854 F.3d 209, 223 (3d Cir. 2017). Cumberland County may satisfy its burden for summary judgment by showing "that there is an absence of evidence to support the nonmoving party's case," and does so here, with proper citations to the record. *See Celotex*, 477 U.S. at 325; (ECF No. 168-1).

With those principles in mind, Plaintiff's most apparent failure is that she has failed to provide evidence to show that any official committed an underlying Fourteenth Amendment violation. In her brief, Plaintiff alleges that the intake officer who evaluated Mr. Hennis did not receive proper training, was incapable of conducting a proper screening, and should have known of Mr. Hennis' particular suicide risk. (ECF No. 174, at 6). Similarly, Plaintiff contends that the nurse who performed Mr. Hennis' medical evaluation, failed to properly review his medical history, failed to conduct a comprehensive mental health evaluation, and should have known of his particular suicide risk. (*Id*. at 7). Plaintiff also vaguely implies that other officers and nurses

---

[2] From the papers, it appears that Mr. Hennis was a pretrial detainee at the time of the events in question. To the extent Plaintiff seeks to raise corresponding Eighth Amendment deliberate indifference claims (ECF No. 26, at 6–7), the Court will dismiss those claims as they only apply to inmates who have received their conviction and sentence.

failed to receive proper suicide prevention training, failed to harm proof the medical segregation unit, failed to have the required "cut down tool," and should have known of his particular suicide risk. (*Id.* at 8; ECF No. 174-1, at ¶ 85).

Consequently, while these allegations provide interesting speculation, counsel's unsubstantiated assertions of "fact" do not constitute evidence for the purpose of summary judgment. *E.g.*, *Versarge v. Twp. of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993). Indeed, in the entirety of Plaintiff's brief and responsive statement of facts, there are no citations to the record regarding the alleged underlying constitutional violations. If Plaintiff deposed the officers and nurses at issue, there are no citations to their depositions or other competent evidence. (ECF No. 174, at 6–13). Nor does the Court have any obligation "to scour the entire record to find a factual dispute." *E.g.*, *Dawley v. Erie Indemnity Co.*, 100 F. App'x 877, 881 (3d Cir. 2004).

As a result, assuming *arguendo* that Plaintiff has evidence to support the existence of a municipal policy or custom, she fails to raise evidence of an underlying constitutional deprivation. Stated differently, Plaintiff fails to demonstrate a "direct causal link" between the policy or custom and Mr. Hennis' death. *See Canton*, 489 U.S. at 385.

That said, Plaintiff also fails to offer any competent evidence regarding Cumberland County's customs and policies. In her brief, Plaintiff suggests that the County failed to learn from prior jail suicides and failed to properly train its employees, but again fails to cite to anything relevant in the record.

In fact, Plaintiff offers no evidence of prior similar constitutional violations, referring only to *Estate of Watson by & through Lloyd v. Cumberland Cty.*, No. 16-6578, 2018 WL 1064208, at *1 (D.N.J. Feb. 27, 2018), which involved a suicide at the jail nearly *two years after* Mr. Hennis'

death. (ECF No. 174-1 ¶ 60; ECF No. 174, at 10 (citing to deposition testimony about the failure to prevent Mr. Watson's suicide)).

As to the various alleged training failures, Plaintiff only offers evidence regarding a failure to provide CPR training. (ECF No. 174-1 ¶¶ 31, 34). Plaintiff, however, fails to explain or offer evidence as to how CPR training impacts this case, *i.e.*, whether poor CPR training contributed to Mr. Hennis' death.

If Plaintiff possesses evidence to rebut any of these conclusions, such evidence is well concealed from this Court. Accordingly, the Court will grant summary judgment on Plaintiff's *Monell* claim against the County.

Moreover, because the New Jersey Legislature modeled the New Jersey Civil Rights Act ("NJCRA") after 42 U.S.C. § 1983 and created a private cause of action for violations of civil rights under either the United States or New Jersey Constitutions, courts interpret NJCRA claims "analogously to § 1983." *Fisher v. Pratt*, No. 19-273, 2019 WL 519569, at *5 (D.N.J. Feb. 11, 2019). Consequently, the Court will grant summary judgment on Plaintiff's corresponding NJCRA claims.

**B. Claims Against Warden Balicki**

Next, Defendant Balicki argues that Plaintiff fails to raise evidence in support of a Fourteenth Amendment deliberate indifference claim against him. The Court has reviewed the submissions and finds that Defendant Balicki has met his threshold burden to show "that there is an absence of evidence to support the [Plaintiff]'s case," with proper citations to the record. *See Celotex*, 477 U.S. at 325.

As a general rule, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. See Ashcroft v. Iqbal*, 556 U.S. 662, 676

11

(2009); *Monell,* 436 U.S. at 691 (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

Instead, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, Plaintiff alleges that Defendant Balicki maintained a policy, practice, or custom, which involved failing to properly train his officers "on Suicide Prevention, CPR, and basic functions such as filling out intake forms" and failing to ensure that they understood existing policies and procedures. (ECF No. 174, at 13).

As discussed above, however, Plaintiff fails to cite to any competent evidence regarding the actions of Defendant Balicki's subordinates. Without evidence of an underlying constitutional violation, Plaintiff cannot establish the requisite causal link to maintain an action for supervisory liability. *See, e.g.*, *Luzerne*, 372 F.3d at 586.

Once again, if Plaintiff possesses evidence to rebut any of these conclusions, she has failed to provide such evidence in accordance with Rule 56(c)(1)(A) and Local Rule 56.1(a). Accordingly, the Court will grant summary judgment as to Plaintiff's § 1983 claims and corresponding NJCRA claims, against Defendant Balicki.

Additionally, because Plaintiff concedes that it is appropriate to do so, the Court will dismiss her claims against the John Doe officers at this time. (ECF No. 174, at 18).

**C. Remaining State Law Claims**

Next, Defendants contend that Plaintiff has failed to raise evidence in support of her negligence claims. The Court has reviewed the submissions and finds that Defendants have met their threshold burden to show "that there is an absence of evidence to support" Plaintiff's negligence claims. *See Celotex*, 477 U.S. at 325.

To sustain a negligence claim, Plaintiff must raise evidence to establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate causation, and (4) actual damages. *Townsend v. Pierre*, 221 N.J. 36, 51 (2015).

Assuming *arguendo* that Defendants had a duty to keep Mr. Hennis "safe and secure at the jail" and then breached that duty through various failures to train, Plaintiff fails to raise evidence to show that these breaches caused their subordinates' alleged conduct. (ECF No. 174, at 17). As discussed above, although Plaintiff accuses various officers and nurses of tortious conduct, her counsel did not provide any citations to support these allegations. Once again, counsel's unsubstantiated assertions of "fact" do not constitute evidence for the purpose of summary judgment. *E.g.*, *Versarge*, 984 F.2d at 1370.

Accordingly, the Court will grant summary judgment on Plaintiff's negligence claims. Finally, as Plaintiff has no remaining standalone claims, the Court will dismiss her survivorship

13

and wrongful death claims, which are derivative claims. *See, e.g.*, *White v. City of Vineland*, No. 16-8308, 2018 WL 4583509, at *8 (D.N.J. Sept. 24, 2018) ("Claims of 'survivorship' or 'wrongful death' are 'derivative' and therefore must be dismissed when the underlying claims have been dismissed."); *Abramson v. Ritz-Carlton Hotel Co., LLC*, No. 09-3264, 2011 WL 2149454, at *5 (D.N.J. May 31, 2011), *aff'd*, 480 F. App'x 158 (3d Cir. 2012).

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment, deny as moot CFG's motion for summary judgment, and grant the motions to seal as unopposed. If Plaintiff possesses evidence to substantiate her allegations, it is unfortunate that she must once again bear a heavy price for her counsel's shortcomings. An appropriate Order follows.

Dated:  December  18,  2019

s/Robert B. Kugler  
ROBERT B. KUGLER  
United States District Judge