IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| THE ESTATE OF ALISSA MARIE ALLEN, by and through its Administrator Ad Prosequendum, CHRISTINE ALLEN, and CHRISTINE ALLEN in her own right,<br><br>     Plaintiffs,<br><br>  v.<br><br>CUMBERLAND COUNTY, et al.,<br><br>     Defendants. | Civil No. 15-6273 (ESK/AMD) |
| THE ESTATE OF DAVID HENNIS, by and through its Administrator Ad Prosequendum, PATRICIA HENNIS, and PATRICIA HENNIS in her own right,<br><br>     Plaintiffs,<br><br>  v.<br><br>WARDEN ROBERT BALICKI, et al.,<br><br>     Defendants. | Civil No. 16-4216 (ESK/AMD) |
| THE ESTATE OF JON LEON WATSON, by and through its Administrator Ad Prosequendum, HELEN RAY LLOYD, and HELEN RAY LLOYD in her own right,<br><br>     Plaintiffs,<br><br>  v.<br><br>CUMBERLAND COUNTY, et al.,<br><br>     Defendants. | Civil No. 16-6578 (AMD) |

```
THE ESTATE OF ROBERT WAYNE
LEWIS, by and through its              Civil No. 16-3503 (AMD)
Administrator Ad Prosequendum,
TAMMY WILSON, and TAMMY WILSON
in her own right,

        Plaintiffs,

   v.

CUMBERLAND COUNTY, et al.,

             Defendants.
```

```
THE ESTATE OF DAVID B. CONROY,
by and through its                     Civil No. 17-7183 (AMD)
Administrator Ad Prosequendum,
JENNEY FERGUSON, and JENNEY
FERGUSON in her own right,

        Plaintiffs,

   v.

CUMBERLAND COUNTY, et al.,

             Defendants.
```

```
THE ESTATE OF MEGAN MOORE, by
and through its Administrator          Civil No. 17-2839 (AMD)
ad Prosequendum, CHRISTINE B.
MOORE, and BENJAMIN MOORE and
HOLLI MOORE, Parents of MEGAN
MOORE, in their own rights,

        Plaintiffs,

   v.

CUMBERLAND COUNTY, et al.,

             Defendants.
```

|  |  |
|---|---|
| THE ESTATE OF MEGAN MOORE, by and through its Administrator ad Prosequendum, CHRISTINE B. MOORE, and BENJAMIN MOORE and HOLLI MOORE, Parents of MEGAN MOORE, in their own rights,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>CORRECTIONS OFFICER TABITHA ROMAN, et al.,<br><br>　　　　　Defendants. | Civil No. 18-16345 (AMD) |

## ORDER

This matter comes before the Court concerning the final disbursement of settlement proceeds in each of the above-captioned cases. The extensive background of these cases was set forth in an Order dated May 24, 2023,[1] which discussion is incorporated by reference herein. The Court has approved settlement allocations in four of these matters – *Watson, Lewis, Conroy,* and *Moore* – and has directed partial disbursement of settlement proceeds in those cases. This Order addresses the remaining funds to be distributed.

---

[1] *See* D.I. 261 in Civil No. 15-6273; D.I. 251 in Civil No. 16-4216; D.I. 215 in Civil No. 16-6578; D.I. 204 in Civil No. 16-3503; D.I. 210 in Civil No. 17-7183; D.I. 171 in Civil No. 17-2839; D.I. 103 in Civil No. 18-16345.

These cases have a lengthy history, and the Court shall only include herein facts relevant to the remaining issues. By way of brief background, each of the above-captioned matters involves the suicide of pretrial detainees incarcerated at the Cumberland County Jail between 2015 and 2017. Each of these cases resolved by way of settlement, at which time Plaintiffs' then-counsel, Conrad J. Benedetto, Esquire, provided a distribution schedule of the costs, expenses, and attorneys' fees to be paid pursuant to the settlement in each case. The Court identified several issues in connection with the expenses and attorneys' fees claimed in the distribution schedules, as well as the appropriate allocation of settlement proceeds between wrongful death and survival claims, and therefore issued an Order dated May 24, 2023 notifying the parties of its intent to appoint a special master to address these issues. (*See generally, e.g.,* Order [D.I. 204 in Civil No. 16-3503], May 24, 2023.) The Court thereafter appointed William M. Tambussi, Esquire as a special master pursuant to Federal Rule of Civil Procedure 53. (*See* Order Appointing Special Master [D.I. 265 in Civil No. 15-6273; D.I. 255 in Civil No. 16-4216; D.I. 219 in Civil No. 16-6578; D.I. 208 in Civil No. 16-3503; D.I. 214 in Civil No. 17-7183; D.I. 175 in Civil No. 17-2839; D.I. 105 in Civil No. 18-16345], July 13, 2023.)

The special master issued a 56-page report that was filed on the docket in each of the above-captioned matters on February

4

27, 2024. (*See generally* William M. Tambussi's Special Master Report and Recommendations Pursuant to Fed. R. Civ. P. 53 (hereinafter, "Special Master Report") [D.I. 267 in Civil No. 15-6273; D.I. 257 in Civil No. 16-4216; D.I. 221 in Civil No. 16-6578; D.I. 210 in Civil No. 16-3503; D.I. 216 in Civil No. 17-7183; D.I. 177 in Civil No. 17-2839; D.I. 107 in Civil No. 18-16345], Feb. 27, 2024.) The special master made recommendations in each case concerning the allocation of settlement proceeds between wrongful death and survival claims and also provided recommendations concerning the attorneys' fees and expenses claimed in each case. The special master subsequently filed an invoice for his services totaling $127,379.93. (*See* Letter from William M. Tambussi, Esq. [D.I. 215 in Civil No. 16-3503], Apr. 1, 2024.)[2] Plaintiffs' counsel objected both to the amount of the special master's fee and some of the findings of the special master. (*See* Letter from John E. Kusturiss, Jr., Esq. [D.I. 218 in Civil No. 16-3503], Apr. 12, 2024.)

        In May 2024, the Court conducted hearings in *Watson*, *Lewis, Conroy* and *Moore* and subsequently entered orders approving

---

[2] For ease of reference, for the remainder of this Order the Court shall refer to filings by the ECF number in the 16-3503 docket only, even though identical filings are contained in the dockets of the remaining matters captioned above. Where a specific filing is contained only in a different docket, it shall be noted by reference to the appropriate docket number.

partial disbursements of the settlement proceeds to Plaintiffs in each of those cases. In each Order, the Court accepted the recommendations of the special master concerning the allocation of settlement proceeds between wrongful death and survival claims and reserved decision on the amount of the expenses, expert fees and special master fees, having set aside the maximum costs requested by Plaintiffs' counsel and directing disbursement of only those portions of the settlement proceeds that were not sought as costs, expenses, and attorneys' fees by Plaintiffs' counsel.[3] The Court did not conduct hearings or enter similar orders in *Allen* and *Hennis* because, despite a December 8, 2021 text order which provided that "[n]o disbursement shall be made of the settlement proceeds until further order of the Court" (*see* Text Order [D.I. 173 in Civil No. 16-3503]), the Court was advised on April 12, 2023 by Mr. Benedetto's co-counsel, John E. Kusturiss, Jr., Esq., that Mr. Benedetto "made distributions [in *Allen* and *Hennis*] as it was his understanding the distributions presented to Your Honor

---

[3] Although Plaintiffs' prior counsel, Mr. Benedetto, already deducted from the settlement proceeds in each case all of the expenses he claimed on the distribution schedule for each case, co-counsel, John E. Kusturiss, Jr., Esq., subsequently agreed that certain expenses should not have been charged to the clients. The Court has accounted for these waived expenses when it authorized the initial disbursements in *Watson*, *Lewis*, *Conroy* and *Moore* and continues to account for such waived expenses herein.

were approved back in January 2022."[4] (Letter from John E. Kusturiss, Jr., Esq. [D.I. 199 in Civil No. 16-3503], Apr. 12, 2023, p. 2.) The Court was further advised that the administrator of the Estate of Allen had passed away and the administrator of the Estate of Hennis had "suffered a decline in her health[,]" and thus there was "nobody to be present and testify on behalf of those two estates." (*See* Letter from John E. Kusturiss, Jr., Esq. [D.I. 199 in Civil No. 16-3503], Apr. 12, 2023, p. 2.)

The Court now addresses the remaining issues concerning the expenses charged to each plaintiff, the special master's fee, and the attorneys' fees. At this time, most of the expenses, if not all expenses, should have been paid by Plaintiffs' counsel, and documentation of such payments should be readily available. Specifically, counsel should have documentation to demonstrate payment of each expense in *Allen* and *Hennis* given that Plaintiffs' counsel already distributed all of the settlement proceeds in those two cases on December 2, 2021.[5] Moreover, with respect to *Lewis*,

---

[4] The special master's report indicates that the disbursements in *Allen* and *Hennis* were made on December 2, 2021. (*See* Special Master Report at pp. 33, 41.)

[5] As stated in the July 11, 2024 Order in *Moore*, "New Jersey Court Rule 1:21-6, applicable in this matter pursuant to New Jersey Rule of Professional Conduct 1.16 and Local Civil Rule 103.1, requires attorneys to maintain financial records for seven years, including receipts and disbursement journals, an appropriate ledger book, and originals of all checkbooks with running balances and check stubs, bank statements, prenumbered cancelled checks and duplicate deposit slips or digital images thereof. *See* N.J. Cᴛ. R. 1:21-

*Watson*, *Conroy*, and *Moore*, Mr. Benedetto transferred settlement proceeds to Mr. Kusturiss on November 27, 2023 for deposit in Mr. Kusturiss' attorney trust account, but the transferred funds did not include any funds that Mr. Benedetto held for expenses or his purported portion of the attorneys' fee.[6] The total expenses deducted for all of the above-captioned cases is $356,982.03. On December 4, 2024, Mr. Kusturiss filed in each case a screenshot of a checking account with a balance of $105,009.22, along with a letter stating that "Mr. Benedetto is holding a little over one hundred thousand dollars for the cost in these cases." (Letter from John E. Kusturiss, Jr., Esq. [D.I. 238 in Civil No. 16-3503], Dec. 4, 2024.)[7] Therefore, it appears that at least $251,972.81

---

6(c); New Jersey Rule of Professional Conduct 1.15 ('A lawyer shall comply with the provisions of R. 1:21-6 ('Recordkeeping') of the Court Rules.'); L. Civ. R. 103.1(a)(the conduct of attorneys appearing in this District is governed by '[t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court')." (*See* Order [D.I. 199 in Civil No. 17-2839], July 11, 2024, p. 21.)

[6] Specifically, as noted in prior Orders, the amount of money transferred from Mr. Benedetto to Mr. Kusturiss in each case represents the gross settlement amount in each case minus all claimed costs and expenses, as well as Mr. Benedetto's portion of the attorney's fee, as set forth in the distribution schedules filed by Mr. Benedetto in each case. (*See, e.g.*, Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 229 in Civil No. 16-3503], Aug. 1, 2024, pp. 12 n.8, p. 14 n.11.)

[7] With respect to the remaining $105,009.22, Mr. Kusturiss confirmed during hearings in December 2024 and April 2025 that he does not have any further information about the bank account in which the funds are being held, that he does not have access to

has already been disbursed for expenses, yet documentation for these expenses is substantially lacking.

As set forth in the Court's prior orders, Plaintiffs' counsel failed to provide the requisite documentation for the claimed expenses, thus warranting appointment of a special master. (*See* Order [D.I. 204 in Civil No. 16-3503], July 13, 2023, pp. 5-7.) The special master sought the requisite documentation from Plaintiffs' counsel but concluded that "a majority of the costs claimed by Mr. Benedetto and Mr. Kusturiss were never substantiated by receipt or proof of payment." (*See* Special Master Report at pp. 2, 28.) Thus, where Plaintiffs' counsel charged a particular expense to the client but there was "a lack of documentation or other substantiation[,]" the special master determined that Plaintiffs' counsel should receive no payment. (*Id.* at p. 28 n.8.) At a hearing on December 9, 2024, Mr. Kusturiss advised that he has no further documentation to produce.[8]

---

the money in the account, and that he has no ability to require Mr. Benedetto to turn over the funds in the account. By letter dated September 16, 2025, Mr. Kusturiss stated that he does not "know how much if any of the $105,000 is left." (Letter from John E. Kusturiss, Jr., Esq. [D.I. 253 in Civil No. 16-3503], Sept. 16, 2025, p. 1.)

[8] Mr. Kusturiss also stated, by letter dated November 22, 2024, that Mr. Benedetto was available to attend a scheduled conference on December 9, 2024 and that it "would be beneficial to have him there to answer any questions [the Court] may have regarding his documentation" because "he is the source of the information" sought by the Court. (Letter from John E. Kusturiss, Jr., Esq. [D.I. 235

As discussed in greater detail below, the Court agrees with the special master's recommendations concerning payment of expenses from the settlement proceeds. The Court has reviewed copies of the retainer agreements between Mr. Benedetto and the purported administrators of the Estates of Allen, Hennis, Watson, Lewis, Conroy, and Moore, and each retainer agreement provides that Plaintiffs shall "reimburse" counsel for the costs and expenses incurred in the litigation.[9] However, without substantiation for a particular expense, there is no way to determine the nature and amount of the expenses to be reimbursed. The following discussion addresses each category of expenses generally. The specific expenses credited to each individual case are set forth in the Appendices annexed to this Order.

---

in Civil No. 16-3503], Nov. 22, 2024.) However, Mr. Benedetto did not appear at the conference on December 9, 2024.

[9] The fee agreements in *Conroy*, *Hennis*, and *Watson* provided as follows: "In addition to legal fees, you will be required to reimburse the Law Firm for all costs and expenses in connection with the investigation, institution and prosecution of your claim, including interest actually paid by the firm (at the prevailing rate) on those costs and expenses." (Special Master Report, Exs. 10, 11, and 14, pp. 89, 92, 101.) The fee agreements in *Allen, Moore* and *Lewis* similarly stated: "In addition to legal fees, if the law firm succeeds in obtaining a recovery for you, you will be required to reimburse the Law Firm for all costs and expenses in connection with the investigation, institution and prosecution of your claim, including interest actually paid by the firm (at the prevailing rate) on those costs and expenses." (Special Master Report, Exs. 9, 12, 13, at pp. 86, 95, 98.)

## A. General Expenses

The Court first adopts the special master's recommendation to credit Plaintiffs for those general expenses for which the special master received documentary substantiation. (*See* Special Master Report at pp. 28, 32, 36, 40, 44, 48, 53.) As such expenses were demonstrated expenses of the litigation, Plaintiffs' counsel is entitled to reimbursement for such expenses, except for those expenses that were waived by Mr. Kusturiss during the hearings in May 2024. In addition, the Court finds that Plaintiffs' counsel is entitled to reimbursement in each case for the fees associated with filing the complaints and appeals in federal court in these matters. Plaintiffs' counsel raised this issue during the May 2024 hearings, and the Court agrees that where the Court's docket reflects payment of a filing fee, Plaintiffs' counsel is entitled to reimbursement of such expenses.[10]

---

[10] The Court, however, notes that Plaintiffs' counsel seeks reimbursement of $51.50 in filing fees purportedly incurred in the Superior Court of New Jersey in both *Conroy* and *Watson*, and reimbursement of a $600.00 filing fee in the Superior Court of New Jersey in *Lewis*. (*See* Special Master Report, Appendices B, D, F.) Because these payments are not reflected on this Court's docket, and because Plaintiffs' counsel has not otherwise demonstrated payment of the claimed state court filing fees, the Court does not credit Plaintiffs' counsel for such state court filing fees.

**B. Deposition Costs**

The Court next adopts the special master's recommendation concerning the expenses associated with the depositions in these cases. As the Court noted in its May 24, 2023 Order, "Plaintiffs assigned the costs of specific depositions to individual cases and generally did not split the costs of any depositions used in multiple cases on a pro rata basis." (Order [D.I. 204 in Civil No. 16-3503], May 24, 2023, p. 35.) The special master stated that "[r]egardless of the date and order of these depositions, the ultimate outcome was that information was gathered in these depositions covering similar issues applicable to all cases. Therefore, those depositions identified as concerning defendants' personnel were reduced by dividing the total by six, representing a pro rata share across all cases." (Special Master Report at p. 27.) The special master, by contrast, did not prorate the costs of those depositions "attributed directly to the individual cases, as they consisted of depositions of family members." (*Id.*)

Plaintiffs' counsel objected to the special master's recommendation on the basis that the special master "neglects to specify exactly which depositions he is attributing to each of the six cases and which to each case individually." (Letter from John E. Kusturiss, Jr., Esq. [D.I. 221 in Civil No. 16-3503], May 15, 2024, p. 2.) The Court overrules this objection. Plaintiffs'

counsel still has not provided an explanation for the seemingly disproportionate allocation of deposition expenses, nor has counsel proposed a new allocation that addresses the concerns set forth extensively by the Court in the May 24, 2023 Order. One of Plaintiffs' experts – Dr. Lawrence Guzzardi – testified at his deposition that he reviewed for *Hennis*, *Lewis*, and *Watson* the deposition transcripts of all the correctional officers, because the depositions provided background knowledge for all of the cases. (Cert. of Jeffrey S. McClain, Esq., Ex. O [D.I. 183-22 in Civil No. 16-4216], pp. 386:16-387:1.) Moreover, upon review of the dockets in these matters, it is clear that although a deposition was billed to one particular case, the deposition was taken for use, and/or was used, in several other cases.[11] The Court also

---

[11] For example, the deposition of Captain Michael Palau was captioned in the *Lewis* matter but was utilized by Plaintiffs in *Hennis*, *Allen,* and *Watson*. (*See, e.g.*, Cert. of Conrad J. Benedetto, Esq., Mar. 1, 2019, Ex. I [D.I. 125-10 in Civil No. 16-6578]; Pls.' Br. in Opp. to Def., Cumberland County's and Def., Warden Balicki's Mot. for Summ. J., Ex. C [D.I. 174-5 in Civil No. 16-4216]; Mot. for Summ. J., Ex. F [D.I. 180-6 in Civil No. 15-6273].) Captain Palau's deposition, reflected on Invoice #72518 from DiPiero Court Reporting, was billed to *Hennis* only despite being captioned in *Lewis* and utilized in *Allen* and *Watson*. (*See* Letter from Conrad J. Benedetto, Esq., Ex. 1 [D.I. 232-1 in Civil No. 16-4216]; Cert. in Support of Attorney's Costs [D.I. 229 in Civil No. 16-4216], Mar. 31, 2022, p. 6, ¶ 7A.) The deposition of Denise Rahaman was captioned in the *Allen* matter but was filed by Plaintiffs in *Lewis*, *Hennis*, and *Watson* in opposition to summary judgment motions. (*See* Pls.' Br. in Opp. to Def., Cumberland County's and Def., Warden Balicki's Mot. for Summ. J., Ex. B [D.I. 130-4 in Civil No. 16-3503]; Pls.' Br. in Opp. to Def., Cumberland County's and Def., Warden Balicki's Mot. for Summ. J., Ex. B [D.I. 174-4 in Civil No. 16-4216]; Pls.' Br. in Opp. to Def., Cumberland

notes that some of the deposition costs are charged, in full, to two cases, and Plaintiffs' counsel is therefore seeking a double recovery of these expenses.[12] As Plaintiffs have not provided an alternative schedule of properly prorated deposition costs, the Court accepts the special master's recommendations concerning deposition expenses.[13]

---

County's and Def., Warden Balicki's Mot. for Summ. J., Ex. B [D.I. 136-4 in Civil No. 16-6578].) The Rahaman deposition, however, was billed to *Watson* only (DiPiero invoice #74178 in the amount of $396.00). (*See* Letter from Conrad J. Benedetto, Esq., Ex. 1 [D.I. 193-1 in Civil No. 16-6578]; Cert. in Support of Attorney's Costs [D.I. 189 in Civil No. 16-6578], Mar. 31, 2022, p. 6, ¶ 7A.) These examples are provided for illustrative purposes only.

[12] The Court notes specifically that DiPiero invoices #73601, #73866, and #74178 were charged in their full amounts to both *Conroy* and *Watson*. (*Compare* Cert. in Support of Attorney's Costs [D.I. 196 in Civil No. 17-7183], p. 5, ¶ 6 *with* Cert. in Support of Attorney's Costs [D.I. 189 in Civil No. 16-6578], p. 6, ¶ 7.) DiPiero invoices #73757 and #74098 were charged in full to both *Conroy* and *Allen*. (*Compare* Cert. in Support of Attorney's Costs [D.I. 196 in Civil No. 17-7183], p. 5, ¶ 6 *with* Cert. in Support of Attorney's Costs [D.I. 238 in Civil No. 15-6273], p. 6, ¶ 7.)

[13] The special master noted that some of the deposition invoices included interest for unpaid balances. The special master subtracted the interest from the invoices, finding "that such interest is not the clients' responsibilities." (Special Master Report at p. 27.) As noted in Footnote 9 above, the retainer agreements in each case provide that Plaintiffs shall be responsible for interest "actually paid" by the law firm. (Special Master Report, Exhs. 9, 10, 11, 12, 13, 14 at pp. 86, 89, 92, 95, 98, 101.) Here, it is not apparent that Plaintiffs' counsel "actually paid" or will "actually pay" the interest identified in the invoices. Furthermore, it is unclear why Plaintiffs' counsel failed to pay invoices for significant periods of time, resulting in substantial interest charges. In *Hennis*, for example, deposition invoices dated February 25, 2022 indicate they are 1,480 and 1,578 days old. (*See* Letter from Conrad J. Benedetto, Esq. [D.I. 232-1 in Civil No. 16-4216], Ex. 1 at pp. 9-10.) The Court

## C. Expert Fees

### 1. Dr. Schwartz

The next expense issue is the expert fees charged to Plaintiffs. The Court begins its analysis with the charges by Dr. Jeffrey A. Schwartz. Dr. Schwartz charged a total of $122,431.70 in expert fees across the six suicide cases. As detailed in the May 24, 2023 Order, Dr. Schwartz's invoices raised a number of concerns, including that he appeared to bill duplicatively for some work and did not prorate other work across cases, and the payment arrangement between Dr. Schwartz and Mr. Benedetto was unclear, particularly in light of Dr. Schwartz's statement in a letter that he had not sent a bill for his work in *Conroy* because there was already a large bill in the other suicide cases. (*See* Order [D.I. 204 in Civil No. 16-3503], May 24, 2023, pp. 31-34.)

The special master found that Dr. Schwartz's hourly rate, ranging between $250 and $325 per hour, was reasonable and utilized an average hourly rate of $262.50 in calculating an appropriate fee for Dr. Schwartz. (*See* Special Master Report at p. 25.) The special master concluded that the number of hours billed

---

also questions why these invoices had not already been paid in full by February 25, 2022 given the apparent disbursement of all settlement proceeds in *Hennis* on December 2, 2021. In any event, Plaintiffs' counsel did not object to the special master's recommendation that Plaintiffs' counsel should not be permitted to recover interest on unpaid invoices, and the Court adopts the special master's recommendation.

by Dr. Schwartz across the six cases, a total of 423.25 hours, was excessive and reduced the number of hours by fifty percent to 211.63 hours. (*Id.*) In this regard, the Special Master noted that "the general theme of the reports was the use of the same methodology . . . and application of that methodology to the facts of the case" and that "[t]here was significant overlap" between each case. (*Id.*) Finally, the special master calculated a reasonable fee to Dr. Schwartz by multiplying the average hourly rate by the reasonable number of hours and dividing the total amount across the six cases. This calculation resulted in a recommended fee of $9,258.81 to Dr. Schwartz in each of the six suicide cases. (*Id.*)

Plaintiffs' counsel objected to the reduction of Dr. Schwartz's fee. (*See* Letter from John E. Kusturiss, Jr., Esq. [D.I. 221 in Civil No. 16-3503], May 15, 2024, p. 2.) However, Plaintiffs' counsel has not provided bank statements, copies of canceled checks, evidence of wire transfers, or any other documentation to demonstrate payment of any money to Dr. Schwartz. At a minimum, Plaintiffs' counsel should have evidence of payment of Dr. Schwartz's invoices in *Allen* and *Hennis*, which collectively total $41,612.65 ($18,006.25 in *Allen* and $23,606.40 in *Hennis*), given that all money for these two cases was disbursed on December 2, 2021, according to the special master. The only information the Court has concerning payment to Dr. Schwartz is his deposition

16

testimony, in which he testified on October 23, 2018 that he had billed for *Watson, Lewis* and *Hennis* a total of $37,581.17 and, as of June 26, 2019, was paid approximately $12,000 for his work collectively in five of the six cases, excepting *Moore*. (*See* Cert. of Counsel, Ex. I [D.I. 118-12 in Civil No. 16-3503], p. 83:1-7; Not. of Mot. for Summ. J. by Def. Melanie Loatman, Ex. 18 [D.I. 179-24 in Civil No. 15-6273], pp. 163:17-164:3.)

By letter dated November 22, 2024, Mr. Kusturiss provided documentation to demonstrate that Dr. Schwartz died in August 2022. (*See* Letter from John E. Kusturiss, Jr., Esq. [D.I. 238-3 in Civil No. 16-3503], Nov. 22, 2024.) Plaintiffs' counsel is thus unable to obtain an explanation for Dr. Schwartz's invoices, the apparently duplicative billing across cases, and Dr. Schwartz's expectation of payment for his services. Furthermore, Mr. Kusturiss represented during a hearing on December 9, 2024 that he is not aware of any efforts by Dr. Schwartz's estate to collect payment for the invoices in these cases in the two years since Dr. Schwartz's passing. Mr. Kusturiss stated during the hearing that Dr. Schwartz received "some" payment for services rendered, but Mr. Kusturiss was unable to set forth the amount that Dr. Schwartz was paid or the amount still owed.[14]

---

[14] As noted above, during his deposition in October 2018, Dr. Schwartz represented that he billed $37,581.17 for the *Hennis, Watson* and *Lewis* cases. During his deposition in *Allen* on June 26, 2019, Dr. Schwartz testified that he had been paid on five active

The Court has reviewed Dr. Schwartz's invoices and adopts the special master's recommendation regarding Dr. Schwartz's hourly rate and number of hours billed. While Dr. Schwartz submitted invoices for his work, the work described therein is largely duplicative, as explained in the May 24, 2023 Order. (*See* Order [D.I. 204 in 16-3503], May 24, 2023, pp. 31-34.) Dr. Schwartz did not provide contemporaneous time records to support his invoices, there is no testimony concerning the accuracy of his time calculations, and there is no evidence that these invoices were paid in the amounts set forth therein. The Court also notes that the invoices are dated in 2022, and therefore they were not provided contemporaneously with Dr. Schwartz's services in these cases.[15] The Court finds it appropriate to reduce the

---

Cumberland County suicide cases approximately $12,000, although he was unsure of the specific amount.

[15] By way of example, in *Watson* Dr. Schwartz's report is dated June 13, 2018 and a supplemental report is dated January 1, 2019, but the invoice in *Watson* is dated March 22, 2022. (Cert. of Conrad J. Benedetto, Esq. [D.I. in 189 in Civil No. 16-6578], Apr. 1, 2022, p. 3, ¶ 3(I); Letter from Conrad J. Benedetto, Esq. [D.I. 193-2 in Civil No. 16-6578], Aug. 5, 2022, p. 29 of 51.] Similarly, in *Hennis*, Dr. Schwartz's report is dated June 13, 2018 but the invoice is dated March 22, 2022. (Cert. of Conrad J. Benedetto, Esq. [D.I. 226 in Civil No. 16-4216], Mar. 3, 2022, p. 1, ¶ 3; Letter from Conrad J. Benedetto, Esq. [D.I. 232-2 in Civil No. 16-4216], Aug. 5, 2022, p. 35 of 51.) While the invoice in *Conroy* dated February 27, 2022 references a "large outstanding bill for the other Cumberland County suicide cases," no bill(s) or invoices dated prior to February 2022 have been produced. (Letter from Conrad J. Benedetto, Esq. [D.I. 232-2 in Civil No. 16-4216], Aug. 5, 2022, p. 27 of 51.)

number of hours claimed by Dr. Schwartz by fifty percent as set forth in the special master's report. In addition, as set forth in the special master's report the Court finds it appropriate to divide Dr. Schwartz's expert fees on a pro rata basis between all six cases given the overlapping nature of the work performed in each case.[16] The Court shall therefore credit a total amount of $55,552.88 (a reduction of 50%) for Dr. Schwartz's fees, to be paid in the amount of $9,258.81 in each case, as determined by the special master. To the extent these fees have not been paid by Mr. Benedetto to Dr. Schwartz's estate from the funds Mr. Benedetto transferred to himself as expenses in his prior disbursements, the funds shall be returned to Mr. Kusturiss to disburse to Plaintiffs on a *pro rata* basis consistent with the distributions provided herein.

### 2. Dr. Guzzardi

The Court next considers the invoices from Dr. Lawrence Guzzardi, which total $80,755.00 for the six above-captioned

---

[16] The Court recognizes that Dr. Schwartz's invoice for *Moore* is $4,375.00, which is less than the $9,258.81 allocated to the *Moore* case by the special master. (*See* Letter from Conrad J. Benedetto, Esq. [D.I. 148-2 in Civil No. 17-2839], Aug. 5, 2022, p. 28 of 51.) However, Dr. Schwartz would have formulated his opinion in *Moore* based on his prior work in the other suicide cases, including the jail tour, review of depositions, and his preparation of the reports for the other suicide cases. Therefore, as set forth in the special master's report, although Dr. Schwartz did not bill the *Moore* case for such time, the Court finds it appropriate to allocate a pro rata share of Dr. Schwartz's fee to *Moore*.

cases. The submissions concerning these invoices have raised several questions because the only consistent figure throughout the submissions is the total amount of Dr. Guzzardi's bills. The submissions have varied with respect to the number of hours and hourly rate billed in each case. For example, the invoices submitted in *Conroy* and *Moore*, dated May 1, 2022, indicate that Dr. Guzzardi charged a rate of $550 per hour, but the invoices in *Allen*, *Hennis*, *Watson*, and *Lewis*, dated March 19, 2022 and March 25, 2022, do not specify an hourly rate. (*See* Letter from Conrad J. Benedetto, Esq., Aug. 5, 2022, Ex. 2 [D.I. 185-2 in Civil No. 16-3503], pp. 1, 4, 8-23.) Rather, the invoices in *Allen, Hennis, Watson* and *Lewis* generally identify some of the hours spent on each case and a total charge for each case. (*Id.* at pp. 8-23.) With respect to the number of hours billed, Dr. Guzzardi's invoices are inconsistent with certifications filed by Mr. Benedetto.[17] The

---

[17] By way of example, in *Lewis*, Dr. Guzzardi's invoice delineates 77 hours of work. (*See* Letter from Conrad J. Benedetto, Esq., Aug. 5, 2022, Ex. 2 [D.I. 185-2 in Civil No. 16-3503], pp. 13-16.) Mr. Benedetto's certification states that Dr. Guzzardi spent a total of 42 hours on the *Lewis* matter. (*See* Cert. in Support of Attorney's Costs [D.I. 179 in Civil No. 16-3503], Mar. 31, 2022, p. 6, ¶ 6F.) In *Watson*, Dr. Guzzardi's invoice delineates 82 hours of work. (*See* Letter from Conrad J. Benedetto, Esq., Aug. 5, 2022, Ex. 2 [D.I. 193-2 in Civil No. 16-6578], pp. 8-12.) Mr. Benedetto's certification states that Dr. Guzzardi spent a total of 40 hours in *Watson*. (Cert. in Support of Attorney's Costs [D.I. 189 in Civil No. 16-6578], Mar. 31, 2022, p. 6, ¶ 6F.) In *Hennis*, Dr. Guzzardi's invoice delineates 74 hours of work. (*See* Letter from Conrad J. Benedetto, Esq., Aug. 5, 2022, Ex. 2 [D.I. 232-2 in Civil No. 16-4216], pp. 20-23.) Mr. Benedetto's certification provides that Dr. Guzzardi spent a total of 36.5 hours in *Hennis*. (Cert. in Support

hourly rate calculated in accordance with Dr. Guzzardi's invoices is also inconsistent with deposition testimony he provided in 2018 and 2019 in the *Allen*, *Hennis*, *Lewis* and *Watson* matters. In this regard, Dr. Guzzardi testified that he billed *Hennis, Lewis* and *Watson* by the hour at $450 per hour. (Cert. of Counsel, Ex. K [D.I. 118-14 in Civil No. 16-3503], pp. 131:17-133:1.) However, Dr. Guzzardi's invoice in *Lewis* is $16,895 and reflects 77 hours of work, which would result in an hourly rate of only $219.42. (*See* Letter from Conrad J. Benedetto, Esq., Aug. 5, 2022, Ex. 2 [D.I. 185-2 in Civil No. 16-3503], pp. 15-16.)[18] In *Allen*, Dr. Guzzardi testified that his hourly rate was $500. (Not. of Mot. for Summ. J. by Def. Melanie Loatman, Ex. 17 [D.I. 179-23 in Civil No. 15-6273], p. 279:6-21.) His invoice in *Allen*, however, is in the amount of $14,795 and reflects 59.5 hours of work, which corresponds to an hourly rate of $248.66. (*See* Letter from Conrad J. Benedetto, Esq., Aug. 5, 2022, Ex. 2 [D.I. 185-2 in Civil No. 16-3503], pp. 17-19.)

Dr. Guzzardi appeared before the Court on April 17, 2025 and provided sworn testimony concerning the services he performed on behalf of Plaintiffs in these matters. Dr. Guzzardi testified

---

of Attorney's Fees [D.I. 229 in Civil No. 16-4216], Mar. 31, 2022, p. 5, ¶ 6F.)

[18] Dr. Guzzardi's invoices for *Hennis* and *Watson* likewise do not correspond to a $450 hourly rate. (*See id.* at pp. 8-12, 20-23.)

that he did not have a written agreement with Plaintiffs' counsel to provide expert services in any of the above-captioned matters and that his arrangement with Mr. Benedetto was informal. Dr. Guzzardi testified that he agreed to be paid on an hourly basis that was not contingent on the outcome of these cases and that his hourly rate increased over the years. Dr. Guzzardi, however, did not recall the hourly rate charged and agreed that his prior deposition testimony concerning his hourly rate would be more accurate than his present recollection of his hourly rate. Dr. Guzzardi also testified that he did not communicate a rate increase to Plaintiffs' counsel. Further, Dr. Guzzardi testified that he did not maintain contemporaneous notes of time spent on these matters. He testified that he kept a rough outline of his work rather than meticulous records and did not recall if he submitted bills upon completion of his expert reports, so he was required to reconstruct the bills in 2022 at the request of Plaintiffs' counsel.[19] Dr. Guzzardi testified that although he was not retained on a contingency fee basis, he recalled that he did not submit bills upon completion of his expert reports because Mr. Benedetto had lost the cases and Dr. Guzzardi had no expectation of payment. He further represented that once the Department of Justice issued

---

[19] Plaintiffs' counsel only provided invoices dated in 2022 and did not produce bills, if any, generated in 2018 and 2019, when Dr. Guzzardi issued reports and was deposed in *Allen*, *Hennis*, *Watson*, and *Lewis*.

its report on the Cumberland County Jail, the cases became more valuable and at that time he sought payment for his services.

The Court first addresses Dr. Guzzardi's hourly rate. The special master concluded that a $550 hourly rate for Dr. Guzzardi was unreasonable. (Special Master Report at p. 25.) Specifically, the special master noted that there was no evidence that Dr. Guzzardi was in a "highly specialized practice" and thus recommended $350 per hour as a reasonable hourly rate. (*Id.*) Plaintiffs objected to the special master's recommendation that the expert fees be reduced, stating that "[i]t is unconstitutional for this Judge to invade the contractual relationship between a plaintiff's attorney and their experts." (*See* Letter from John E. Kusturiss, Jr., Esq. [D.I. 221 in Civil No. 16-3503], May 15, 2024, p. 2.) The Court overrules this objection. Plaintiffs provided no evidence of any agreement between Plaintiffs' counsel and the experts concerning the terms upon which each expert was retained. Indeed, Dr. Guzzardi testified at his deposition in 2018 that he agreed to provide services at a rate of $450 per hour and he testified in April 2025 that he never communicated an increased rate of $550 to Plaintiffs' counsel.[20] The Court will not allow Dr. Guzzardi to recover a higher hourly rate than Plaintiffs' counsel

---

[20] Dr. Guzzardi supplied his curriculum vitae to the Court after the hearing on April 17, 2025 to support his requested fee.

agreed to pay. Accordingly, the Court shall permit Dr. Guzzardi to collect a fee of $450 per hour for his work in these six cases.

Dr. Guzzardi's failure to keep time records, however, increases the difficulty in determining whether the expert costs billed to Plaintiffs were appropriate. As one court has commented, "delays in recordkeeping diminish accuracy." *Taylor v. Cnty. of Los Angeles*, 263 Cal. Rptr. 3d 768, 773 (Cal. Ct. App. 2020). "At hundreds of dollars an hour, minutes here and minutes there add up." *Id.* at 774. "[P]eople paying those bills are entitled to care about accuracy." *Id.* at 773-74. "The public is entitled to confidence the justice system is just as careful about getting legal bills right as it is about getting everything else right." *Id.* at 774.[21]

For the reasons that follow, the Court shall reduce the number of hours that Plaintiffs must pay for Dr. Guzzardi's services in these cases.[22] First, Dr. Guzzardi testified that he agreed to bill on an hourly basis, yet he did not maintain contemporaneous time records and produced no information, such as

---

[21] In *Taylor*, the court addressed an attorney's failure to keep contemporaneous records of his time, but the Court finds the analysis applicable to an expert's failure to keep time records when billing clients on an hourly basis.

[22] The special master recommended that Dr. Guzzardi's hours be reduced by half, from 146.85 to 73.43 hours. (Special Master Report at p. 26.)

contemporaneous notations, to corroborate the accuracy of his reconstructed bills.[23] Second, the invoice amounts in *Hennis*, *Watson*, *Allen* and *Lewis* are not calculated by reference to a total number of hours multiplied by an hourly rate, nor do the number of hours purportedly worked and billed correspond to a $450 hourly rate, as discussed above. Third, the number of hours in Dr. Guzzardi's invoices for *Hennis*, *Lewis*, and *Watson* are inconsistent with – and significantly higher than – the number of hours described in the certifications filed by Plaintiffs' counsel, as discussed above. The Court also notes that Dr. Guzzardi did not bill for his work in these cases because he thought Plaintiffs lost their cases, even though his work was not performed on a contingent basis. Dr. Guzzardi only sought payment years later, after the cases settled and there was money to be distributed.

In summary, having performed services for which he seeks compensation on an hourly basis, it was incumbent upon Dr. Guzzardi

---

[23] The Court further notes Dr. Guzzardi's testimony that his present recollection with regard to these matters is less accurate than contemporaneous records of services rendered. Moreover, Dr. Guzzardi sent a letter to the Court arguing in favor of a $550 hourly rate but failed to recall that his hourly rate for these cases was $450. Dr. Guzzardi also wrote a letter to the Court stating that he had not been paid "any fees" in these matters (*see* Letter from Lawrence Guzzardi [D.I. 234 in Civil No. 16-3503], Oct. 25, 2024), but acknowledged during a hearing on April 17, 2025 that he failed to recall that he received $22,500 for his work in these cases. These statements provide additional bases to question the accuracy of Dr. Guzzardi's reconstructed time records.

to keep accurate time records. Dr. Guzzardi has not adequately explained how his billed time, reconstructed years after services were performed, is accurate without the benefit of contemporaneous billing records. Plaintiffs shall not be required to bear the expense of Dr. Guzzardi's lack of proper accounting procedures. Accordingly, the Court will permit Dr. Guzzardi to collect payment for twenty-five hours of work each in *Allen*, *Hennis*, *Watson* and *Lewis*, for a total of one hundred hours, in the amount of $11,250.00 per case. In addition, the Court will permit Dr. Guzzardi to collect payment for ten hours each in *Conroy* and *Moore*. The Court makes no finding as to whether Dr. Guzzardi may obtain the balance of his invoices from Plaintiffs' counsel but finds only that Plaintiffs will not be required to pay Dr. Guzzardi for work that he cannot credibly establish was actually performed in each case.[24]

### 3. Dr. Siebert

The Court next considers the invoices of Charles Siebert, a forensic scientist. Dr. Siebert charged a total of $10,600 for *Allen*, *Hennis*, *Watson*, and *Lewis*, at a rate of $400 per hour. His invoices demonstrate that he charged, for all four

---

[24] As noted above and during the hearing in April 2025, Mr. Benedetto already disbursed to himself all of the money purportedly due to Dr. Guzzardi. This Order addresses the calculation of remaining settlement proceeds owed to Plaintiffs. Dr. Guzzardi must attempt to collect payment for any outstanding fees from Mr. Benedetto directly.

cases, a total of 26.5 hours, consisting of 3 hours for an in-person conference and travel, 10 hours for a review of files and to prepare the reports, an additional 3 hours for reviewing files and participating in a telephone conference, 3.5 hours for case review and a phone conference, and 7 hours for a deposition. (*See* Letter from Conrad J. Benedetto, Esq., Aug. 5, 2022, Ex. 2 [D.I. 185-2 in Civil No. 16-3503], pp. 24-26.) The special master found the rate and the number of hours to be reasonable and recommended a fee of $2,650 per case. (Special Master Report at p. 26.) The Court has reviewed Dr. Siebert's reports and notes that the reports are each only three pages in length and are substantially duplicative of each other. Nonetheless, Dr. Siebert spent time reviewing the individual records of each case, and the Court finds that 6.6 hours per case is not unreasonable. The Court consequently adopts the special master's recommendation that Dr. Siebert's invoice is reasonable and should be split on a pro rata basis between *Allen*, *Hennis*, *Lewis*, and *Watson* in the amount of $2,650 per case.

### 4. Dr. Smith

Plaintiffs' counsel has also claimed as an expense in each case the invoices of Dr. Stan Smith of Smith Economics Group, Ltd. The special master noted that Dr. Smith's invoices "lacked a consistent range (ranging from $125.00/hr. to $470.00/hr.) and an itemization of number of hours spent." (Special Master Report at

p. 26.) The special master further noted that the invoices contained a quantity of "1" with a large flat-rate number. (*Id.*) The special master concluded that an hourly rate of $350 was appropriate and allocated ten hours per case, and he thus recommended a total of $3,500 per case to Dr. Smith for five of the six cases, as Dr. Smith did not prepare a report in *Moore.* (*Id.*)

As with some of the other experts in these cases, Dr. Smith's invoices raise more questions than answers. In *Conroy*, Mr. Benedetto previously filed Dr. Smith's invoices, which Mr. Benedetto represented total $8,540.00. (*See* Cert. in Supp. of Attorney's Costs [D.I. 196 in Civil No. 17-7183], Nov. 30, 2022, p. 3, ¶ 4D; Cert. of Conrad Benedetto, Esq. [D.I. 188-2 in 17-7183], pp. 37-38.) Mr. Kusturiss, however, filed updated billing records from Dr. Smith dated November 25, 2024 which indicate that the invoices in *Conroy* total only $7,290.00. (*See* Letter from John E. Kusturiss, Jr., Esq., Ex. 1 [D.I. 238-1 in Civil No. 16-3503], p. 2.) Thus, the amount sought to be recovered for Dr. Smith's bills in *Conroy* is inconsistent with Mr. Benedetto's prior submission to the Court. The Court shall only credit Dr. Smith for the amount set forth in the updated records filed by Mr. Kusturiss on December 4, 2024.[25]

---

[25] Mr. Benedetto filed two invoices from Dr. Smith for the *Conroy* matter in August 2022. One invoice, dated December 8, 2021, seeks

Dr. Smith's recently filed billing statement is also inconsistent in the *Watson* matter with invoices previously filed in such case. In the more recent submission, Dr. Smith indicates that the total bill in *Watson* is $4,645.00. (*Id.* at p. 2.) To support this charge, Mr. Kusturiss submitted an invoice dated July 1, 2016 for services rendered by Dr. Smith on March 16, 2016. (*See id.* at p. 13.) Dr. Smith's billing records also indicate a credit in *Watson* in the amount of $1,250.00 on October 16, 2015.[26] (*Id.* at p. 2.) Notwithstanding these records, Plaintiffs' counsel charged $6,578.00 to *Watson* for Dr. Smith's work. (*See* Cert. in Supp. of Attorney's Costs [D.I. 189 in Civil No. 16-6578], Mar. 31, 2022, p. 4, ¶ 5E.) Mr. Benedetto previously filed invoices from Dr. Smith for *Watson* that support this larger charge,

---

$1,250 as a "retainer due upon engagement." (Cert. of Conrad Benedetto, Esq. [D.I. 188-2 in 17-7183], p. 38.) The second invoice, dated March 25, 2022 in the amount of $7,290.00, is for "Discussions, Data Gathering, Review of File Materials, Analysis and Preparation of Loss Evaluation Report, Preparation and In-House Review[.]" (*Id.* at p. 37.) It appears that Mr. Benedetto combined these two invoices when claiming that Dr. Smith is owed $8,540.00 for his work in *Conroy*. However, in light of the more recently filed billing records from Dr. Smith in which Dr. Smith indicates that the total billed in *Conroy* is $7,290.00, it appears that the $1,250.00 invoice sought a deposit towards the overall bill of $7,290.00 rather than an additional $1,250.00.

[26] The complaint alleges that Mr. Watson died on June 3, 2016. (Compl. [D.I. 1 in Civil No. 16-6578], pp. 1-2, ¶ 2.) Thus, no cause of action had accrued on March 16, 2016 when Dr. Smith purportedly performed work for the *Watson* case or on October 16, 2015 when Dr. Smith credited a $1,250.00 payment to the *Watson* matter. No explanation has been provided for this seemingly erroneous invoice date.

including an invoice dated July 19, 2018 for work performed on June 8, 2018 (approximately two years after the July 1, 2016 invoice more recently filed by Mr. Kusturiss) for $4,985.00, an invoice dated November 13, 2018 for $888.00 in costs incurred in November 2018 related to Dr. Smith's deposition, and an invoice from May 26, 2021 in the amount of $705.00 for services rendered on March 24, 2021 for "review and analysis of defense economic report by Staller & Dripps; discussion with C. Benedetto; preparation of comment letter." (*See* Letter from Conrad J. Benedetto, Esq., Aug. 5, 2022, Ex. 2 [D.I. 193-2 in Civil No. 16-6578], pp. 39-41.) The July 19, 2018 invoice also reflects a credit in the amount of $1,125.00 (*id.* at p. 41), while the recently submitted invoice reflects a credit for a $1,250. (*See* Letter from John E. Kusturiss, Jr., Esq., Nov. 22, 2024, Ex. 2 [D.I. 238-1 in Civil No. 16-3503], p. 2.) Thus, the more recently submitted invoices demonstrate lower costs and a higher credit than the submissions previously filed by Mr. Benedetto. Again, the Court shall only credit Dr. Smith for the updated invoices filed in December 2024.

The Court notes that Dr. Smith billed for work in *Hennis*, *Allen*, and *Lewis* in May 2021 for review of a defense expert report, and also charged for "additional research" in *Hennis* in April 2021, when all three cases were dismissed on summary judgment by June 2020. (*Id.* at pp. 5-6, 9, 12.) No explanation has been provided

for the additional work performed on cases that were at that time already dismissed on their merits. In addition, although all settlement proceeds in the *Allen* and *Hennis* matters were disbursed in December 2021, Dr. Smith's billing records demonstrate that as of November 25, 2024, there were still outstanding balances in *Allen* and *Hennis* in the amounts of $2,278.50 and $1,078.00 respectively. (*Id.* at p. 2.) It is unclear why these invoices were not paid in 2021, nor is it clear whether Dr. Smith has sought to collect the outstanding balance on the invoices in these cases for work performed nearly seven years ago.

The Court has no basis to conclude that the flat fee charged by Dr. Smith in each case is unwarranted given the length of each report and the detail included in the reports. Nor does the Court have reason to question the charges for Dr. Smith's preparation and attendance at a deposition. The Court therefore approves Dr. Smith's invoices for these charges. However, the Court questions the additional 1.5 hours charged in each *Allen*, *Hennis*, and *Lewis* in May 2021. In *Watson*, Mr. Benedetto explained that Dr. Smith's work was performed to prepare a "comment letter" and "formulate questions for rebuttal." (Cert. in Support of Attorney's Costs [D.I. 189 in Civil No. 16-6578], Mar. 31, 2022, p. 4, ¶ 5(C).) In *Allen,* Mr. Benedetto's certification states that Dr. Smith reviewed the defense expert report to "prepare[] potential deposition questions and a rebuttal comment letter."

31

(Cert. in Support of Attorney's Costs [D.I. 238 in Civil No. 15-6273], Mar. 31, 2022, p. 4, ¶ 5(C).) In *Lewis*, Mr. Benedetto filed a certification stating that Dr. Smith "reviewed and analyzed the Defense Economic report." (Cert. in Support of Attorney's Costs [D.I. 179 in Civil No. 16-3503], Mar. 31, 2022, p. 5, ¶ 5(C).) There is no explanation for the need to prepare for depositions or rebuttal in cases that were closed following summary judgment. As such, the record at this time fails to support the charges by Dr. Smith after each case was closed, and the Court will not account for the work performed in closed cases. The Court consequently approves in part the expenses charged to Plaintiffs for Dr. Smith's work but disallows the expenses in the full amounts charged by Plaintiffs' counsel.[27]

---

[27] Thus, Dr. Smith's bill in *Allen*, for which the *Allen* Plaintiffs were billed $7,903.50, is reduced to $7,198.50, of which it appears $5,625.00 has already been paid as reflected in Dr. Smith's records. (*See* Letter from John E. Kusturiss, Jr., Esq. [D.I. 238-1 in Civil No. 16-3503], Nov. 22, 2024.) Dr. Smith's bill in *Conroy*, for which the *Conroy* Plaintiffs were billed by Plaintiffs' counsel $8,540.00, is reduced to $7,290.00, the amount actually billed by Dr. Smith, none of which appears to have been paid as of November 25, 2024. (*Id.*) Dr. Smith's bill in *Hennis*, for which the *Hennis* Plaintiffs were billed $6,703.00, is reduced to $5,873.00, of which $5,625.00 appears to have already been paid as reflected in Dr. Smith's records. (*Id.*) Dr. Smith's bill in *Lewis*, for which the *Lewis* Plaintiffs were billed $6,578.00, is reduced to $5,873.00, of which it appears $1,125.00 has been paid according to Dr. Smith's records. (*Id.*) Lastly, Dr. Smith's bill in *Watson*, for which the *Watson* Plaintiffs were billed $6,578.00 by Plaintiffs' counsel, is reduced to $4,645.00, the amount actually billed by Dr. Smith, of which $1,250.00 appears to have been paid as reflected in Dr. Smith's records. (*Id.*)

### 5. Other Experts

Finally, the Court addresses those experts for which the Court has been provided no invoices, no evidence of payment, and/or no description of the services rendered.[28] The special master recommended only a $400 total fee for one expert, Kathryn Burns, and recommended no payment for the other experts for which payment is sought by Plaintiffs' counsel, as set forth below.

Specifically, in *Hennis* and *Watson*, Plaintiffs were charged a total of $1,200 ($400 in *Hennis* and $800 in *Watson*) for an expert fee for Kathryn Burns. (*See* Special Master Report, Appendices C, F.) Mr. Benedetto filed a certification in *Hennis* explaining that Dr. Burns "was retained to review the suicide deaths of inmates at the Cumberland County Jail" and "[n]o report was obtained." (Cert. in Support of Attorney's Costs [D.I. 225 in Civil No. 16-4216], Mar. 3, 2022, p. 2, ¶ 7.) The special master noted that Dr. Burns charged a flat rate of $400.00 total for all six cases and therefore apportioned her fee in the amount of $66.67 per case. (Special Master Report at p. 26.) At a hearing on December 9, 2024, however, Mr. Kusturiss stated that Dr. Burns was contacted about performing work in these cases but declined to

---

[28] The Court notes that by letter dated August 5, 2022, Mr. Benedetto produced "the invoices from each retained expert in each of the above referenced cases." (Letter from Conrad J. Benedetto, Esq. [D.I. 185 in Civil No. 16-3503], Aug. 5, 2022.) Invoices were only submitted for Dr. Schwartz, Dr. Guzzardi, Dr. Siebert, and Dr. Smith.

participate, and Mr. Kusturiss did not think Dr. Burns did any work in these matters to warrant payment. In light of Mr. Kusturiss' representations to the Court during the December 9, 2024 hearing, the Court finds that the expenses for Dr. Burns are not appropriate charges.

Similarly, the Court has no information concerning a charge in *Watson* for $1,500 to Dr. Gerald Oergin. (*See* Special Master Report, Appendix F.) Mr. Benedetto did not identify Dr. Oergin in his certification concerning the services rendered by the experts in these matters, nor has any invoice or report been provided to support the $1,500 charge. The special master recommended no fee to be paid to Dr. Oergin. (*Id.*) At the hearing on December 9, 2024, Mr. Kusturiss stated that he never interacted with Dr. Oergin and does not know what role Dr. Oergin played in these cases. In light of the lack of any documentation or explanation as to Dr. Oergin's services, the Court will not require the *Watson* Plaintiffs to pay a fee to Dr. Oergin.

Plaintiffs seek a fee for David Rudovsky, Esquire in the *Allen* and *Hennis* matters in the amounts of $2,000 and $1,500, respectively. The special master recommended that no proceeds be paid to Mr. Rudovsky, noting that there was no written fee agreement between Mr. Rudovsky and counsel as required by Rule 1.5 of the Rules of Professional Conduct and that the special master was unable to "tell what work he performed." (*See* Special Master

34

Report at pp. 26-27.) Mr. Kusturiss indicated in a November 22, 2024 letter that he was awaiting payment information from Mr. Rudovsky, but to date no further information has been provided. Consistent with the foregoing discussion, in the absence of documentation to demonstrate that Mr. Rudovsky did any work or was paid any money in these cases, the Court disallows this expense.

### D. Special Master's Fee

Under Federal Rule of Civil Procedure 53, a court may appoint a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed" by the Court or if "some exceptional condition" warrants appointment. FED. R. CIV. P. 53(a)(1)(A)-(B). "Before or after judgment, the court must fix the master's compensation on the basis and terms stated in the appointing order, but the court may set a new basis and terms after giving notice and an opportunity to be heard." FED. R. CIV. P. 53(g)(1). In deciding the manner of allocation of the special master's fee, the Court considers "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." FED. R. CIV. P. 53(g)(3).

Here, the Order appointing a special master provided that "the special master will be compensated at an hourly rate of $350 for his services as special master in these cases, and will be reimbursed for any out-of-pocket expenses" and that "for the

35

special master to fulfill his responsibilities hereunder most efficiently, he may employ such other lawyers and staff selected by the special master, and under the supervision and control of the special master, as in his discretion he feels is necessary[.]" (Order Appointing Special Master [D.I. 208 in Civil No. 16-3503], July 13, 2023, p. 13.)

Subsequent to the filing of his report, the special master submitted a 15-page invoice for his services (which included time incurred by the special master and time incurred by specific attorneys as set forth therein) in the amount of $127,379.93, representing $126,944.50 in fees and $435.43 in costs. (*See* Letter from William M. Tambussi, Esq. [D.I. 215 in Civil No. 16-3503], Apr. 1, 2024.) Mr. Kusturiss filed line-by-line written objections to some of the time billed by the special master. (*See* Letter from John E. Kusturiss, Jr., Esq. [D.I. 218 in Civil No. 16-3503], Apr. 12, 2024.) The general nature of these objections relates to the number of hours billed by the special master given that multiple attorneys prepared the special master's report and much of their work was purportedly duplicative and unnecessary. At a hearing on December 9, 2024, the Court provided the special master an opportunity to respond to Mr. Kusturiss' request to reduce the special master's fee, but the special master did not thereafter file a response.

"The allocation and rate of compensation of the fees and expenses of a Special Master is a matter within the discretion of the district court." *Halderman v. Pennhurst State School and Hosp.*, 855 F. Supp. 747, 748 (E.D. Pa. 1994)(quoting *Newton v. Consolidated Gas Co. of New York*, 259 U.S. 101, 105 (1922)). A special master "should be adequately remunerated for actual work done, time employed, and the responsibility assumed." *Newton*, 259 U.S. at 105. A special master's compensation, however, should be reasonable, as "[t]he rights of those who ultimately pay must be carefully protected[.]" *Id.*

The Court has reviewed the special master's invoice and the objections filed by Plaintiffs' counsel. The special master's report was 56-pages long and set forth the special master's detailed findings and recommendations regarding several complicated legal and factual issues that had been identified by the Court in its May 24, 2023 Order. The recommendations of the special master were, in large part, adopted by the Court both with respect to the allocation of settlement proceeds between wrongful death and survival damages, and with respect to the expenses claimed by Plaintiffs' counsel in each case. The process of preparing such a report was necessarily complicated and time-consuming, and required parsing through the various reports, invoices, and claims in order to make recommendations concerning the appropriate allocations and amount of expenses. The Court finds

that while some deduction is warranted where there was overlap in the preparation, analysis, and drafting of the report and subsequent revisions to the report, on balance the deductions set forth below are limited. The Court addresses herein each of the objections by Plaintiffs' counsel and finds, as detailed below, that the special master is entitled to $92,537.43 for the services rendered as a special master.

Plaintiffs' counsel first objects to a $350 hourly rate for work performed by an associate and suggests that "[a] more appropriate hourly rate would be hundred $150 [sic] an hour." (*Id.* at p. 1.) Plaintiffs' counsel has not provided any measure for the Court to determine that $150 is a reasonable hourly rate for associates performing similar work such as, by way of example, affidavits of other practitioners suggesting the prevailing market rate. Accordingly, Plaintiffs' counsel fails to establish that $350 is not a reasonable hourly rate for the services performed by an associate in this action. Moreover, the Order appointing the special master provided that the special master would be paid an hourly rate of $350 and that the special master may employ other lawyers and staff selected by the special master to assist him in this matter. The Order did not limit the $350 hourly rate to the special master individually. The Court thus rejects this objection to the special master's invoice.

Plaintiffs' counsel next objects to duplicative time spent by other attorneys on June 29, 2023 and July 26, 2023, respectively, when the special master also billed for similar work on these dates. The Court accepts Plaintiffs' counsel's objection, and accordingly the invoice will be reduced by 0.50 hours. Plaintiffs' counsel also objects to a total of 4.3 hours billed by three attorneys to prepare thirteen document requests. The Court finds two hours to be a reasonable amount of time to prepare the document requests. The special master's invoice will be reduced by 2.3 hours in this regard. The Court next addresses Plaintiffs' counsel's request for a reduction of fees for the time incurred by one attorney on July 26, 2023 reviewing this Court's Orders regarding the appointment of a special master, when another attorney also billed 2.8 hours reviewing the Court's Orders. Plaintiffs' counsel suggests that "it should not have taken more than one hour to review [the Court's] order." (*Id.* at p. 2.) The May 24, 2023 Order was 43 pages long, and the July 13, 2023 Order was 14 pages long. The Court will reduce the time billed to review the Court's orders to two hours, which results in a reduction of 2.1 hours from the special master's invoice.

Plaintiffs' counsel further objects to the purportedly duplicative billing by an attorney in the preparation of spreadsheets for each case file, stating that the attorney billed a total of 6.7 hours when he should have only billed one hour. The

Court does not find that the time spent preparing spreadsheets in six separate cases to be unreasonable and therefore rejects this objection.

Plaintiffs' counsel next sets forth three objections to the number of hours spent reviewing and analyzing documents produced by counsel, including a total of 15.9 hours by an associate between September 15, 2023 and September 18, 2023, a total of 4.4 hours by the special master reviewing documents on October 20, 2023 and October 22, 2023, and an additional 5.6 hours spent by the special master on October 27, 2023 and October 30, 2023. Plaintiffs' counsel fails to address the volume of counsel's document production and thus there is no showing that the time spent by counsel for document review was excessive. However, in light of two attorneys reviewing documents, the Court will reduce 7.95 hours (one-half of one attorney's time) from the special master's invoice.

As to other objections, the Court will deduct (1) 7.0 hours for the time spent on November 2, 2023 and November 3, 2023 addressing issues raised in the Court's orders when there are prior additional time entries for reviewing the same orders; (2) 3.0 hours spent on November 8, 2023 for preparation of legal analysis in light of time previously billed for legal analysis; (3) 10.5 hours spent by one attorney on November 9, 2023 preparing the special master's report when another attorney also spent 5.4 hours

preparing the report on the same date; and (4) 0.4 hours on November 16, 2023 for revisions to the special master's report in light of the 3.3 hours billed the day prior for review and revisions.

The Court accepts in part Plaintiffs' counsel's objection to "all time spent on November 15 and beyond revising the second draft report when 1/3 draft report was already in existence." (Letter from John E. Kusturiss, Jr., Esq. [D.I. 218 in Civil No. 16-3503], Apr. 12, 2024, p. 2.) This objection appears to contain a typographical error and was presumably intended to note that a third draft report existed at the time the attorney billed for review of a second draft report. The Court shall reduce the invoice by 3.4 hours for the time on November 15, 2023 revising a third draft report.

The Court accepts in part Plaintiffs' counsel's objection to two attorneys billing a total of 0.9 hours on December 5, 2023 for a phone call with Plaintiffs' counsel because "both attorneys did not need to be on that phone call." (*Id.* at p. 3.) The Court will reduce the invoice by 0.5 hours to remove the time billed by one of the attorneys for the call.

The Court also notes Plaintiffs' counsel's general objection to the numerous billings for revisions to the special master's report on a number of enumerated dates, including December 5, 6, 8, and 19, 2023, January 12, 16, 17, 18, 19, 21, 22, 23, 24,

41

25, 28, and 29, 2024, and February 4, 6, 7, and 12, 2024, which counsel contends totals 77.1 hours and is excessive given the "numerous times the report was drafted prior to December 5." (Letter from John E. Kusturiss, Jr., Esq. [D.I. 218 in Civil No. 16-3503], Apr. 12, 2024, p. 3.) Having reviewed the submissions and taking into account Plaintiffs' counsel's objections to the time incurred for revisions after November 15, 2023, the Court finds that reduction of the time is warranted as set forth below in connection with the preparation, analysis, and drafting of the report and subsequent revisions to the report.[29]

The Court rejects Plaintiffs' counsel's objection to the special master's decision not to depose Mr. Benedetto. Mr. Kusturiss notes that "[h]ad Mr. Benedetto's deposition been taken

---

[29] The following hours, totaling 61.9 hours, specifically are deducted: 1.7 and 0.7 hours by JDC on November 15, 2023; 0.4 hours by SCH on November 16, 2023; 1.8 hours and 0.3 hours by JDC and 0.9 hours by SCH on November 17, 2023; 1.3 and 2.3 hours billed by JDC on November 27, 2023; 1.1 hours by JLE on November 28, 2023; 1.2 hours by JDC on November 28, 2023; 0.8 hours by JDC on November 29, 2023; 1.3 hours by JDC on November 29, 2023; 0.4 hours by JDC on December 4, 2023; 7.0 hours by SCH on December 5, 2023; 3.2, 2.2, 1.7, 1.3, and 1.8 hours by JDC on December 5, 2023; 1.9 hours by JDC on December 6, 2023; 1.1 hours by SCH on December 8, 2023; 2.3 hours by JDC on December 8, 2023; 3.2 hours by JDC on December 18, 2023; 1.5 and 1.2 hours by JDC on December 28, 2023; 0.5 hours by JDC on January 24, 2024; 0.3 hours by SCH on January 25, 2024; 0.3 hours by JDC on January 25, 2024; 3.2 hours and 2.3 hours by JDC on January 28, 2024; 1.2 hours by JDC on February 5, 2024; 1.6 hours on JDC by February 6, 2024; 0.4 hours by SCH on February 7, 2024; 0.3 hours by SCH and 2.7 hours by JDC on February 12, 2024; 1.9, 0.5, and 0.8 hours by JDC on February 12, 2024; 2.6 hours by JDC on February 27, 2024; 0.3 hours by SCH on March 22, 2024; and 0.4 hours by JDC on March 22, 2024.

many if not all of the questions that were asked about would have
been answered, saving countless hours of time[.]" (*Id.*) Mr.
Kusturiss' opinion as to the results of a deposition and the effect
on the time billed by the special master is purely speculative and
is rejected.

Finally, the Court addresses the allocation of the
special master's fee. As noted above, the Court considers the
"nature and amount of the controversy, the parties' means, and the
extent to which any party is more responsible than other parties
for the reference to a master" when allocating payment of the
special master's fee. FED. R. CIV. P. 53(g)(3). The Court previously
noted in the Order appointing a special master that "the need for
appointment of a special master arises from the failure of
Plaintiffs' counsel to provide the information requested by the
Court in connection with the settlement of these cases despite
numerous requests for documentation" and that "Plaintiffs' counsel
bears sole responsibility for the failure to provide information
requested by the Court[.]" (Order [D.I. 208 in Civil No. 16-3503],
July 13, 2023, p. 8.) The Court thus concluded that "no cost of
the special master shall be allocated to Defendants." (*Id.*) The
Court further stated that it would "address whether the special
master's fees and expenses will be paid from the settlement
proceeds or from any Plaintiffs' attorneys' fees included in the

allocation" after the special master issued his report. (*Id.* at p. 9 n.3.)

In the special master's report, the special master recommended that the "Special Master costs incurred should be deducted from the attorneys' fees to the extent available, not as an expense charged to the clients." (*See* Special Master Report at p. 55.) Mr. Kusturiss did not challenge the special master's recommendation that the special master's fee be paid by Plaintiffs' counsel. The Court also previously concluded that "the cost of the special master shall be borne by Plaintiffs' counsel, as it was counsel's failure to provide documentation requested by the Court that warranted appointment of a special master." (*See, e.g.*, Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 241 in Civil No. 17-7183], Nov. 18, 2024, p. 14; Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 249 in Civil No. 16-6578], Nov. 26, 2024, p. 14.) Plaintiffs' counsel has not sought reconsideration of such orders. As set forth in the Court's prior orders, Mr. Benedetto failed to confirm that the expenses charged to the clients in each case were accurate, thereby warranting appointment of a special master. Moreover, the special master concluded that Mr. Benedetto failed to comply with the recordkeeping requirements of New Jersey Court Rule 1:21-6 and charged clients for expenses he was unable to substantiate, leaving the special master "to attempt to

determine the appropriate charges." (*See* Special Master Report at pp. 4, 28.) Thus, the Court shall require the fees of the special master to be paid by Plaintiffs' counsel rather than Plaintiffs in each of the above-captioned matters.

Taking into account the deductions in time set forth above, the Court concludes that the special master shall be paid $92,537.43, which includes expenses in the amount of $435.43.[30] This amount shall be paid by Plaintiffs' counsel.

### E. Miscellaneous Issues

With respect to any outstanding invoices for monies owed to experts, court reporters, and any other vendors that have not yet been paid, as noted above all monies for all expenses claimed by Mr. Benedetto in these matters was already disbursed to Benedetto Legal Associates prior to November 2023. Therefore, the Court finds that none of the funds remaining in Mr. Kusturiss' attorney trust account are available for payment of such expenses. The Court has reviewed the appropriate expenses for the purpose of calculating the net settlement proceeds to be paid to each plaintiff. To the extent any expert, court reporter, or other vendor seeks payment for services rendered in these matters, they

---

[30] Mr. Kusturiss did not object to the amount of expenses for which the special master seeks reimbursement.

must attempt to obtain their payment from Plaintiffs' counsel directly.[31]

The Court recognizes that Mr. Kusturiss represents that he has not yet been paid for his services in *Watson*, *Lewis*, *Conroy* and *Moore*.[32] While distribution memoranda included in the special master's report indicate that a portion of the settlement proceeds that were transferred to Mr. Kusturiss' attorney trust account are for his legal fees, no money remains for Mr. Kusturiss' portion of the attorney's fee, except for *Moore* and *Conroy*, in light of Mr. Benedetto's previous disbursement of funds for expenses that exceed the amount the Court has determined are appropriate in these cases. (*See* Special Master Report, Exs. 21-24.) As detailed below, however, the Court has addressed a total attorneys' fee in each

---

[31] The Court's finding herein concerning litigation expenses only addresses whether such expenses should be deducted from the settlement proceeds when Plaintiffs' counsel failed to provide substantiation for the expenses pursuant to the New Jersey Court Rules. The Court makes no finding as to whether a vendor may seek reimbursement directly from Plaintiffs' counsel for the total amount of each invoice.

[32] The Order appointing the special master directed the special master to investigate the reasonableness of the attorneys' fees sought in these cases, including whether fees should be awarded on a lodestar or percentage of recovery basis. (Order [D.I. 208 in Civil No. 16-3503], July 13, 2023, p. 11.) The special master recommended that attorneys' fees be awarded on a contingent basis in accordance with New Jersey Court Rule 1:21-7(c). (Special Master Report at pp. 12-14.) Plaintiffs did not object to this recommendation, and the Court accepts the recommendation of the special master that attorneys' fees should be calculated on a contingent basis consistent with New Jersey Court Rule 1:21-7(c).

case, including Mr. Kusturiss' portion of the fee.[33] To the extent Mr. Kusturiss seeks to recover his portion of such attorneys' fees, he must seek to obtain such money from Mr. Benedetto directly in light of Mr. Benedetto's excessive prior disbursements.

### F. Final Calculations

#### 1. *Allen*, 15-6273:

According to the distribution schedule filed by Mr. Benedetto in *Allen*, the total expenses and attorneys' fees are $99,223.94, which consists of $61,335.91 for expenses and $37,888.03 for attorneys' fees. (*See* Special Master Report, Ex. 19, p. 128.) Of the $37,888.03 in attorneys' fees, $25,258.69 represented Mr. Benedetto's portion of the attorneys' fee and $12,629.34 represented Mr. Kusturiss' portion of the attorneys' fee. (*Id.*) The special master concluded that these fees and expenses were disbursed on December 2, 2021. (*See* Special Master Report at pp. 4, 33.)

However, as set forth in Appendix A, the Court only approves expenses in the amount of $38,582.45. As a result of this

---

[33] The special master recommended a reduction in the percentage of Mr. Kusturiss' fee, to which Mr. Kusturiss has objected. (*See* Special Master Report at pp. 33, 37, 45, 50, 54; Letter from John E. Kusturiss, Jr., Esq. [D.I. 221 in Civil No. 16-3503], May 15, 2024, p. 2.) The Court has calculated a total attorneys' fee in each matter as set forth below and will not determine the respective percentage of this fee to which Mr. Benedetto and Mr. Kusturiss are each entitled.

reduction of expenses, the net settlement proceeds in *Allen* increase from $113,664.09 to $136,417.55. In addition, because Plaintiffs' attorneys' fees are calculated as one-third of the net settlement proceeds, the increased net settlement amount also results in an increase in attorneys' fee to Plaintiffs' counsel from $37,888.03 to $45,472.52. The final calculation of the total attorneys' fees and expenses due to Plaintiffs' counsel in the *Allen* matter is $84,054.97 ($38,582.45 in expenses and $45,472.52 in attorneys' fees). The amount of settlement proceeds that should have been due to the *Allen* plaintiffs is $90,945.03. These calculations are detailed below:

| INITIAL DISTRIBUTION CLAIMED IN BENEDETTO'S DISTRIBUTION STATEMENT | | FINAL DISTRIBUTION APPROVED BY COURT | |
|---|---|---|---|
| Gross Settlement | $175,000.00 | Gross Settlement | $175,000.00 |
| Less Maximum Costs | -$61,335.91 | Less Approved Expenses[34] | -$38,582.45 |
| Subtotal | $113,664.09 | Subtotal | $136,417.55 |
| Less Attorneys' Fees (1/3 of $113,664.09) | -$37,888.03 | Less Attorneys' Fees (1/3 of $136,417.55) | -$45,472.52 |
| **Amount Due to Plaintiffs** | **$75,776.06** | **Amount Due to Plaintiffs** | **$90,945.03** |
| Amount Already Disbursed | $75,776.06 | Amount Already Disbursed | -$75,776.06 |
| Pre-Settlement | $12,500.00 | Pre-Settlement | $12,500.00 |
| December 2, 2021 | $63,276.06 | December 2, 2021 | $63,276.06 |
| | | **Remaining Amount Owed** | |
| **Amount Remaining for Disbursement** | **$0.00** | **to Plaintiffs** | **$15,168.97** |

As set forth above, there was no allocation of settlement proceeds between wrongful death and survival proceeds in *Allen*

---

[34] See Appendix A for a breakdown of costs allowed.

because all of the settlement proceeds were already disbursed and the Court was advised that the administrator in *Allen* passed away. (*See* Letter from John E. Kusturiss, Jr., Esq. [D.I. 256 in Civil No. 15-6273], Apr. 12, 2023, p. 2.) Because Plaintiffs' counsel previously disbursed $99,223.94 for attorneys' fees and expenses, but the Court's final calculation of attorneys' fees and expenses is only $84,054.97, Plaintiffs' counsel has withdrawn $15,168.97 more in settlement proceeds than the Court has allowed, leaving a shortfall to the *Allen* Plaintiffs in the amount of $15,168.97.[35] While there are no funds in an attorney trust account for the Court to direct be paid to the *Allen* Plaintiffs at this time, Mr. Kusturiss is directed to send a copy of this Order to the siblings of the decedent, identified in the Distribution Statement filed in *Allen* (*see* Special Master Report, Ex. 19, pp. 128-129), to place them on notice that the Estate of Alissa Marie Allen is entitled to an additional disbursement from Plaintiffs' counsel in the amount of $15,168.97.

### 2. *Conroy,* 17-7183:

According to Mr. Benedetto's disbursement memo in *Conroy,* Mr. Benedetto previously withdrew a total of $211,846.07

---

[35] As noted above, the special master concluded that Plaintiffs' counsel disbursed the settlement proceeds before the Court entered its text order on December 8, 2021 directing that there shall be no disbursement of settlement funds.

from the settlement proceeds, which represents $58,089.09 for expenses and $153,757.98 in attorneys' fees, less $1.[36] (*See* Special Master Report, Ex. 21, pp. 134-35.) The $153,757.98 in withdrawn attorneys' fees accounted only for Mr. Benedetto's portion of the fee and did not account for the portion of the attorneys' fee purportedly due to Mr. Kusturiss, which was $76,878.99 pursuant to the distribution statement initially filed by Mr. Benedetto.[37] (*See id.* at p. 146.) When Mr. Benedetto transferred the remaining settlement proceeds in *Conroy* to Mr. Kusturiss on November 17, 2023, the transferred funds purported to include Mr. Kusturiss' portion of the attorneys' fee.

As set forth in Appendix B, the Court's final calculations provide for expenses only in the amount of $31,451.00.

---

[36] It appears that Mr. Benedetto deducted $1 less than the total amount of expenses and his attorneys' fee, which should have totaled $211,847.07. In this regard, the $750,000 gross settlement amount, minus a $114 lien, minus $211,847.07 in expenses, would have resulted in a total remaining amount of $538,038.93. However, when Mr. Benedetto transferred the remaining settlement proceeds to Mr. Kusturiss for *Conroy*, he transferred funds in the amount of $538,039.93. (*See* Special Master Report, Ex. 21, pp. 134-35.) This discrepancy of $1 appears to arise from an erroneous notation on the disbursement memo, which provided that Mr. Kusturiss' portion of the fee was $76,879.99 when his fee pursuant to the distribution schedule was $1 less, in the amount of $76,878.99. (*See id.* at Exs. 21, 25, pp. 134-35, 146-47.)

[37] According to the distribution statement filed in *Conroy*, the total attorneys' fee claimed by Plaintiffs' counsel was $230,636.97, which consisted of $153,757.98 purportedly owed to Mr. Benedetto and $76,878.99 purportedly owed to Mr. Kusturiss. (*See* Special Master Report, Ex. 25, pp. 146-147.)

In addition, in the November 18, 2024 Order in *Conroy*, the Court reserved decision on whether to apply a one-third attorneys' fee or a 25% attorneys' fee for the wrongful death proceeds, but credited Plaintiffs' counsel for a one-third fee on an interim basis at that time. (*See* Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 241 in Civil No. 17-7183], p. 15 n.15.) The Court now concludes that a 25% fee award on the wrongful death component of the settlement is appropriate. In so finding, the Court notes that although a wrongful death suit is brought by the estate of a decedent, the Court must consider the age of the beneficiaries of the estate in determining whether the limitation in New Jersey Court Rule 1:21-7(c)(6), which limits fees to not more than 25% on amounts recovered by way of settlement for the benefit of minors, applies. *See Est. of Mendonca v. Da Silva*, No. A-3515-11T2, 2013 WL 645806, at *3 (N.J. Super. Ct. App. Div. Feb. 22, 2013). When all beneficiaries of the estate are minors, then "for all intents and purposes, the wrongful death action was settled on behalf of, and the amount was recovered for, that class of persons within the intendment of the contingent fee reduction provision of Rule 1:21-7(c)(6)." *Id.*[38] Here, although one of the decedent's three children is presently an adult, all three

---

[38] By contrast, the limitation of Rule 1:21-7(c)(6) does not apply to a wrongful death recovery when the claim of beneficiaries includes one or more adults. *Id.* at *3.

children were minors at the time the retainer agreement was entered. Plaintiffs' counsel states that the "relevant date for determination of minority under Rule 1:21-7(c)(6) is the date of execution of the contingent fee agreement on behalf of those for whose benefit the agreement was made." (Br. in Supp. of Cert. of John E. Kusturiss [D.I. 205-3 in Civil No. 17-7183] (hereinafter, "Kusturiss Br."), pp. 2-3.) The Court consequently finds that the 25% fee limitation of New Jersey Court Rule 1:21-7(c)(6) applies in *Conroy*.

Plaintiffs' counsel, however, contends that this case warrants an enhanced fee under New Jersey Court Rule 1:21-7(f) because the *Conroy* case presented an "unsympathetic situation" and many attorneys purportedly would not have undertaken the challenge of the case given the burden of proof necessary to establish deliberate indifference and the burden of pursuing an "expensive and long uphill battle." (Kusturiss Br. at pp. 2-3.) The Court finds that an enhanced fee is not warranted under the circumstances. "The Third Circuit has recognized: '[t]he New Jersey caselaw instructs that the attorney seeking an increased fee must demonstrate that (1) the fee allowed under [Rule 1:21-7(c)] is not reasonable compensation for the services actually rendered, and (2) the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming.'" *Norman v. Haddon Twp.*,

No. 14-6034, 2018 WL 3536752, at *3 (D.N.J. July 23, 2018)(quoting *Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 418 (3d Cir. 1995)). "Applications for a fee in excess of the amount permitted by the schedule are reserved for exceptional cases." *In re Est. of F.W.*, 942 A.2d 48, 56 (N.J. Super. Ct. App. Div. 2008).

Here, the Court first notes that Plaintiffs' counsel has not requested a fee beyond the schedule provided in Rule 1:21-7(c) for *Allen*, *Hennis*, *Moore*, or *Lewis*, when each of these cases would have presented the same purported challenges as *Conroy* in terms of an "unsympathetic situation" and the possibility of an "expensive and long uphill battle." (Kusturiss Br. at pp. 2-3.) Thus, the Court is not persuaded that the *Conroy* case was so unusual or time-consuming that it warrants a departure from the fee provided in Rule 1:21-7(c). Moreover, at the time the *Conroy* case was filed, Plaintiffs' counsel had already filed complaints in the five other Cumberland County Jail suicide cases, and much of the work for *Conroy* therefore would have duplicated or been performed contemporaneous with work performed in the other five suicide cases. Plaintiffs' counsel's fee in *Conroy* is $180,806.15, and there has been no showing that this fee is not adequate for the work performed or that the work performed in *Conroy* was more difficult or time-consuming than that encountered in other civil

rights cases.[39] The Court also notes the special master's finding that "[t]he Court has already set forth the numerous issues in this and all of these cases sufficient for [the special master] to recommend the denial of any such request[.]" (Special Master Report at p. 35.) Under these circumstances, the Court concludes that a 25% fee is appropriate with respect to the wrongful death proceeds and will not award an enhanced attorneys' fee of 33 1/3% in *Conroy*.

Consequently, the Court's final calculation of the total attorneys' fees and expenses in the *Conroy* matter is $212,257.15 ($31,451.00 in expenses and $180,806.15 in attorneys' fees).[40] The total settlement proceeds due to the *Conroy* plaintiffs is $537,628.85. These calculations are set forth below:

---

[39] The Court notes that Plaintiffs' counsel has not provided a lodestar analysis to support an argument that the fees provided for herein do not adequately compensate counsel for their work.

[40] The attorneys' fees are calculated as follows: The net settlement amount, after deduction of a $114.00 lien and $31,451.00 in approved expenses, is $718,435.00. As set forth in the November 18, 2024 Order, the Court allocated 98% of the settlement proceeds in *Conroy* to wrongful death, so the net wrongful death damages are $704,066.30. Applying a 25% contingent fee to the wrongful death damages results in $176,016.58 in attorneys' fees. The Court allocated 2% of the settlement proceeds to survival damages, and therefore the net survival damages total $14,368.70. The Court applies a 1/3 contingency fee to this component, resulting in attorneys' fees in the amount of $4,789.57. The sum of these attorneys' fees ($176,016.58 for the wrongful death component and $4,789.57 on the survival component) is $180,806.15.

| INITIAL DISTRIBUTION CLAIMED IN BENEDETTO'S DISTRIBUTION STATEMENT | |
|---|---|
| Gross Settlement | $750,000.00 |
| Less Maximum Costs | -$58,089.09 |
| Subtotal | $691,910.91 |
| Less Attorneys' Fee (1/3 of $691,910.91) | -$230,636.97 |
| **Amount Due to Plaintiffs** | **$461,273.94** |
| Less Cum. Cty. CWA Lien | -$114.00 |
| **Amount Due to Client** | **$461,159.94** |

| INTERIM DISTRIBUTION PER COURT ORDER DATED NOVEMBER 18, 2024 | |
|---|---|
| Gross Settlement | $750,000.00 |
| Less Cum. Cty. CWA Lien | -$114.00 |
| Less Potential Maximum Costs | -$53,776.57 |
| Subtotal | $696,109.43 |
| Wrongful Death Damages (98% Allocation) | $682,187.24 |
| Survival Damages (2% Allocation) | $13,922.19 |
| Less Potential Attorneys' Fee and Special Master Fee | -$232,036.48 |
| Wrongful Death (33 1/3% of $682,187.24) | $227,395.75 |
| Survival (33 1/3% of $13,922.19) | $4,640.73 |
| **Net to Plaintiffs** | **$464,072.95** |
| Wrongful Death Damages | $454,791.49 |
| Survival Damages | $9,281.46 |
| Initial Amount in Kusturiss' Atty. Trust Account | $538,039.93 |
| **Amount Remaining in Kusturiss' Atty. Trust Account following Court-Ordered disbursement** | **$73,966.98** |

| FINAL DISTRIBUTION APPROVED BY COURT | |
|---|---|
| Gross Settlement | $750,000.00 |
| Less Cum. Cty. CWA Lien[41] | -$114.00 |
| Less Approved Expenses[42] | -$31,451.00 |
| Subtotal | $718,435.00 |
| Wrongful Death Damages (98% Allocation) | $704,066.30 |
| Survival Damages (2% Allocation) | $14,368.70 |
| Less Attorneys' Fees | -$180,806.15 |
| Wrongful Death (25% of $704,066.30) | $176,016.58 |
| Survival (33 1/3% of $14,368.70) | $4,789.57 |
| **Amount Due to Plaintiffs** | **$537,628.85** |
| Wrongful Death Damages ($704,066.30-$176,016.58) | $528,049.72 |
| Survival Damages ($14,368.70-$4,789.57) | $9,579.13 |
| Amount Already Disbursed Pursuant to 11/18/24 Order | **-$464,072.95** |
| Wrongful Death Damages | $454,791.49 |
| Survival Damages | $9,281.46 |
| **Remaining Amount Owed to Plaintiffs** | **$73,555.90** |
| Wrongful Death Damages ($528,049.72-$454,791.49) | $73,258.23 |
| Survival Damages ($9,579.13-$9,281.46) | $297.67 |

In the November 18, 2024 Order approving the settlement allocation, the Court already directed disbursement of $464,072.95. This amount included $454,791.49 for wrongful death damages, in the amounts of $151,597.17 to Kayla Conroy, $151,597.16 to the Surrogate of Cumberland County Intermingled Account in the name of C.C., minor, and $151,597.16 to the Surrogate of Cumberland County Intermingled Account in the name of K.C., minor. (Order [D.I. 241 in Civil No. 17-7183], Nov. 18, 2024, p. 20.) The Court also directed disbursement of $9,281.46 to the Estate of David Conroy for survival damages. (*Id.*) The revised distribution of the remaining proceeds shall be as follows:

**Final Calculation of Wrongful Death Proceeds ($528,049.72)**

| | |
|---|---|
| Kayla Conroy (1/3 of $528,049.72) | $176,016.58 |
| Less Amount Already Disbursed | -$151,597.17 |
| **Remaining Amount Due to Kayla Conroy** | **$24,419.41** |
| | |
| C.C. (1/3 of $528,049.72) | $176,016.57 |
| Less Amount Already Disbursed | -$151,597.16 |
| **Remaining Amount Due to C.C.** | **$24,419.41** |
| | |
| K.C. (1/3 of $528,049.72) | $176,016.57 |
| Less Amount Already Disbursed | -$151,597.16 |
| **Remaining Amount Due to K.C.** | **$24,419.41** |

**Final Calculation of Survival Proceeds ($9,579.13)**

| | |
|---|---|
| Estate of David Conroy | $9,579.13 |
| Less Amount Already Disbursed | -$9,281.46 |
| **Remaining Amount Due to Estate** | **$297.67** |

---

[41] This amount was paid directly on behalf of the Cumberland County Defendants. (See Special Master Report, Ex. 21, p. 135.)

[42] See Appendix B for a breakdown of costs allowed.

As set forth above, Mr. Benedetto already withdrew a total of $211,846.07 from the settlement proceeds, representing his claimed expenses in the amount of $58,089.09 and his portion of the attorneys' fee in the amount of $153,757.98 less $1, and did not withdraw the portion of the fee purportedly due to Mr. Kusturiss. The Court, however, has reduced the expenses in this matter from $58,089.09 to $31,451.00 and has reduced the total attorneys' fee from $230,636.97 to $180,806.15.[43] Therefore, Plaintiffs' counsel is entitled to recover $212,257.15 for expenses and total attorneys' fees, including Mr. Benedetto's and Mr. Kusturiss' portions of the attorneys' fees. Mr. Benedetto, having already withdrawn $211,846.07 for his claimed expenses and fees, has thus already disbursed almost all the money that is allocated to attorneys' fees and expenses, except for $411.08.

While the amount transferred to Mr. Kusturiss' trust account for *Conroy* was supposed to include Mr. Kusturiss' portion of the purported attorneys' fee, in light of the prior disbursement of settlement funds by Mr. Benedetto there are insufficient funds remaining in the account to pay the amount owed to the *Conroy* Plaintiffs and to pay Mr. Kusturiss the entirety of his portion of

---

[43] As noted above, the attorneys' fees are reduced because Plaintiffs' counsel charged a 33 1/3% fee on the entire net settlement amount instead of a 25% fee with respect to the wrongful death recovery, when all of the beneficiaries of the wrongful death proceeds were minors at the time the retainer agreement was signed.

the attorneys' fee. There are sufficient funds to make the *Conroy* Plaintiffs whole, and the Court will direct disbursement of $73,555.90 to Plaintiffs as follows: Plaintiffs' counsel shall disburse $73,258.23 from the remaining settlement proceeds, in equal thirds in the amount of $24,419.41 each to Kayla Conroy, the Surrogate of Cumberland County Intermingled Account in the name of C.C., minor, and the Surrogate of Cumberland County Intermingled Account in the name of K.C., minor, representing an additional payment of wrongful death proceeds, and Plaintiffs' counsel shall further disburse $297.67 from the remaining settlement proceeds to the Estate of David Conroy representing an additional payment of survival proceeds, which shall be distributed in the manner set forth in the November 18, 2024 Order in *Conroy*.[44]

The remaining $411.08 in the attorney trust account represents funds available for the remaining attorneys' fees and/or special master's fees. As set forth above, the special master recommended that the special master's fee be "deducted from

---

[44] As set forth in the November 18, 2024 Order, the Court "makes no finding as to whether the assets of the Estate can be distributed under New Jersey intestacy law directly to Kayla Conroy and the Surrogate of Cumberland County Intermingled Account in the names of C.C. and K.C. as the intestate heirs without passing through an estate account." (Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 241 in Civil No. 17-7183], Nov. 18, 2024, p. 19.) The additional survival proceeds of $297.67, when disbursed, shall be distributed $99.22 each on behalf of Kayla Conroy and C.C. and $99.23 on behalf of K.C., as the amount cannot be divided in equal thirds.

the attorneys' fees to the extent available[.]" (Special Master
Report at p. 55.) Although objecting to the amount of the special
master's fees, Plaintiffs' counsel did not object to the
recommendation that the special master's fees be deducted from
Plaintiffs' counsel's fee. Consequently, the remaining $411.08 in
*Conroy* shall be allocated to the special master's fee.

### 3. *Hennis,* 16-4216:

According to the distribution schedule filed by Mr.
Benedetto in *Hennis*, the total expenses and attorneys' fees are
$90,905.01, which consists of $66,357.52 for expenses and
$24,547.49 for attorneys' fees. (*See* Special Master Report, Ex.
20, p. 131.) Of the $24,547.49 in attorneys' fees, $13,031.66
represented Mr. Benedetto's portion of the attorneys' fee,
$6,515.83 represented Mr. Kusturiss' portion of the attorneys'
fee, and $5,000 represented an attorneys' fee to the Jarve, Kaplan,
Granato law firm.[45] (*Id.*) The special master concluded that these
fees and expenses were disbursed on December 2, 2021. (*See* Special
Master Report at pp. 4, 41.)

---

[45] As detailed in an Opinion dated March 19, 2018, Plaintiff
Patricia Hennis filed a separate civil action regarding the suicide
of David Hennis through attorney Adam M. Starr, Esquire of the
Jarve, Kaplan, Granato law firm. (Op. [D.I. 105 in Civil No. 16-
4216], Mar. 19, 2018, pp. 5-7.) That civil action was dismissed by
stipulation. (*Id.*) It is unclear whether the $5,000 payment was
ever made to the Jarve, Kaplan, Granato firm.

As set forth in Appendix C, the final approved expenses in *Hennis* total only $37,856.00. As a result of this reduction in expenses, the net settlement proceeds in *Hennis* increase from $73,642.48 to $102,144.00. Because the attorneys' fee in *Hennis* is one-third of the net settlement amount, the increased net settlement amount results in an increased attorneys' fee to Plaintiffs' counsel from $24,547.49 to $34,048.00. Therefore, the approved attorneys' fees and expenses in the *Hennis* matter total $71,904.00 ($37,856.00 in expenses and $34,048.00 in attorneys' fees). The total settlement proceeds due to the *Hennis* plaintiffs is $68,096.00. These calculations are detailed below:

| INITIAL DISTRIBUTION CLAIMED IN BENEDETTO'S DISTRIBUTION STATEMENT | | FINAL DISTRIBUTION APPROVED BY COURT | |
|---|---|---|---|
| Gross Settlement | $140,000.00 | Gross Settlement | $140,000.00 |
| Less Maximum Costs | -$66,357.52 | Less Approved Expenses[46] | -$37,856.00 |
| Subtotal | $73,642.48 | Subtotal | $102,144.00 |
| Less Attorneys' Fee (1/3 of $73,642.48) | -$24,547.49 | Less Attorneys' Fee (1/3 of $102,144.00) | -$34,048.00 |
| **Amount Due to Plaintiffs** | **$49,094.99** | **Amount Due to Plaintiffs** | **$68,096.00** |
| Amount Already Disbursed | | Amount Already Disbursed | |
| December 2, 2021 | $49,094.99 | December 2, 2021 | $49,094.99 |
| **Amount Remaining for Disbursement** | **$0.00** | **Remaining Amount Owed to Plaintiffs** | **$19,001.01** |

As set forth above, there was no allocation of settlement proceeds between wrongful death and survival proceeds in *Hennis*

---

[46] See Appendix C for a breakdown of costs allowed.

because all of the settlement proceeds were already disbursed and Plaintiffs' counsel represented that the administrator in *Hennis* had been in poor health and was unable to attend a hearing. (*See* Letter from John E. Kusturiss, Jr., Esq. [D.I. 246 in Civil No. 16-4216], Apr. 12, 2023, p. 2.) Because Plaintiffs' counsel previously disbursed $90,905.01 for attorneys' fees and expenses in *Hennis*, but the approved attorneys' fees and expenses are only $71,904.00, Plaintiffs' counsel has withdrawn $19,001.01 more of the settlement proceeds than that to which they are entitled as approved by the Court, resulting in a shortfall to the *Hennis* Plaintiffs in the amount of $19,001.01.[47] While there are no funds in an attorney trust account for the Court to direct be paid to the *Hennis* Plaintiffs at this time, Mr. Kusturiss is directed to send a copy of this Order to the mother and siblings of the decedent, identified in the Distribution Statement filed in *Hennis* [D.I. 221-1 in Civil No. 16-4216], to place them on notice that Plaintiffs are entitled to an additional disbursement of funds in the amount of $19,001.01 from Plaintiffs' counsel.

---

[47] As noted above, the special master concluded that Plaintiffs' counsel disbursed the settlement proceeds before the Court entered its text order on December 8, 2021 directing that there shall be no disbursement of settlement funds.

### 4. *Lewis*, 16-3503:

According to Mr. Benedetto's distribution memo, he already withdrew a total of $87,312.56 from the settlement proceeds in *Lewis*, which consisted of $67,257.58 for expenses and $20,054.98 for Mr. Benedetto's portion of the attorneys' fee. (*See* Special Master Report, Ex. 22, pp. 137-38.) This amount did not account for the portion of the attorneys' fee purportedly due to Mr. Kusturiss in the amount of $10,027.49, pursuant to the distribution statement initially filed by Mr. Benedetto.[48] (*Id.*) When Mr. Benedetto transferred the remaining settlement proceeds in *Lewis* to Mr. Kusturiss on November 17, 2023, the transferred funds purported to include Mr. Kusturiss' portion of the attorneys' fee. (*Id.*)

As set forth in Appendix D, the Court has only approved expenses in the amount of $40,873.45. As a result of this reduction in expenses, the net settlement proceeds in *Lewis* increased from $90,242.42 to $116,626.55. Because the attorneys' fee is one-third of the net settlement proceeds, the increased net settlement amount also results in an increased attorneys' fee to Plaintiffs' counsel from $30,082.47 to $38,875.52. Therefore, the attorneys' fee and

---

[48] According to the distribution statement filed in *Lewis*, the total attorneys' fee claimed by Plaintiffs' counsel was $30,082.47, which consists of $20,054.98 purportedly owed to Mr. Benedetto and $10,027.49 purportedly owed to Mr. Kusturiss. (*See* Special Master Report, Ex. 26, pp. 149-50.)

expenses approved by the Court in the *Lewis* matter total $79,748.97 ($40,873.45 in expenses and $38,875.52 in attorneys' fees). The final calculation of the amount owed to Plaintiffs in *Lewis* is $77,751.03. These calculations are detailed below:

| INITIAL DISTRIBUTION CLAIMED IN BENEDETTO'S DISTRIBUTION STATEMENT | |
| --- | --- |
| Gross Settlement | $157,500.00 |
| Less Maximum Costs | -$67,257.58 |
| Subtotal | $90,242.42 |
| Less Attorneys' Fee (1/3 of $90,242.42) | -$30,082.47 |
| **Amount Due to Plaintiffs** | **$60,159.95** |

| INTERIM DISTRIBUTION PER COURT ORDER DATED AUGUST 1, 2024 | |
| --- | --- |
| Gross Settlement | $157,500.00 |
| Less Potential Maximum Costs | -$65,365.48 |
| Subtotal | $92,134.52 |
| Less Potential Attorneys' Fee (33 1/3%) and Special Master Fee: | -$30,711.51 |
| **Net to Plaintiffs** | **$61,423.01** |
| Wrongful Death Damages (95% Allocation) | $58,351.86 |
| Survival Damages (5% Allocation) | $3,071.15 |
| Initial Amount in Kusturiss' Atty. Trust Account | $70,187.44 |
| **Amount Remaining in Kusturiss' Atty. Trust Account following Court-Ordered disbursement** | **$8,764.43** |

| FINAL DISTRIBUTION APPROVED BY COURT | |
| --- | --- |
| Gross Settlement | $157,500.00 |
| Less Approved Expenses[49] | -$40,873.45 |
| Subtotal | $116,626.55 |
| Less Attorneys' Fees (1/3 of $116,626.55) | -$38,875.52 |
| **Amount Due to Plaintiffs** | **$77,751.03** |
| Wrongful Death Damages (95% of $77,751.03) | $73,863.48 |
| Survival Damages (5% of $77,751.03) | $3,887.55 |
| Amount Already Disbursed Pursuant to 8/1/24 Order | **-$61,423.01** |
| Wrongful Death Damages | $58,351.86 |
| Survival Damages | $3,071.15 |
| **Remaining Amount Owed to Plaintiffs** | **$16,328.02** |
| Wrongful Death Damages ($73,863.48-$58,351.86) | $15,511.62 |
| Survival Damages ($3,887.55-$3,071.15) | $816.40 |

---

[49] See Appendix D for a breakdown of costs allowed.

Pursuant to the August 1, 2024 Order entered in *Lewis*, the Court directed disbursement of $61,423.01 of the remaining settlement proceeds, consisting of $58,351.86 in wrongful death proceeds payable to Tammy Willson and $3,071.15 in survival damages payable to the Estate of Robert Wayne Lewis or directly to Tammy Willson as approved by the Superior Court of New Jersey, Chancery Division, Probate Part and/or the Surrogate of Cumberland County and in accordance with the New Jersey laws of intestacy. (*See* Order [D.I. 229 in Civil No. 16-3503], Aug. 1, 2024, pp. 17-18.) However, as set forth above, the *Lewis* Plaintiffs are entitled to total settlement proceeds in the amount of $77,751.03, and the amount still owed to the *Lewis* Plaintiffs, following disbursement of $61,423.01 pursuant to the August 1, 2024 Order, is $16,328.02. The amount remaining in Mr. Kusturiss' trust account for *Lewis* following the court-ordered disbursement is only $8,764.43, thus leaving a shortfall to the *Lewis* Plaintiffs in the amount of $7,563.59.

A distribution memo annexed to the special master's report reflects that the amount of remaining settlement proceeds in *Lewis* transferred from Mr. Benedetto to Mr. Kusturiss was supposed to include Mr. Kusturiss' purported portion of the attorneys' fee in the amount of $10,027.49. (*See* Special Master Report, Ex. 22, p. 138.) Mr. Benedetto already withdrew a total of

$87,312.56 from the settlement proceeds as expenses and his portion of the attorneys' fee. (*See id.* at pp. 137-38.) However, the sum of the expenses approved by the Court and the total attorneys' fee, including the attorneys' fee for both Mr. Benedetto and Mr. Kusturiss, is only $79,748.97. In light of Mr. Benedetto's prior withdrawal of excessive settlement funds, there are insufficient funds in Mr. Kusturiss' attorney trust account to pay the remaining amount owed to the *Lewis* Plaintiffs.

The Court shall direct payment of the entirety of the remaining funds in Mr. Kusturiss' attorney trust account in *Lewis* to the *Lewis* Plaintiffs. Specifically, Plaintiffs' counsel shall disburse the remaining amount of $8,764.43 to Tammy Willson as wrongful death proceeds. Upon this disbursement, Ms. Willson will still be owed $6,747.19 in wrongful death proceeds, and the Estate of Robert Wayne Lewis is still entitled to an additional disbursement of $816.40 in survival damages,[50] for a total of $7,563.59 in outstanding settlement proceeds due to the *Lewis* plaintiffs. Mr. Kusturiss is further directed to send a copy of this Order to Ms. Willson, the Administrator of the Estate of Robert Wayne Lewis, to place her on notice of these additional amounts owed. To the extent Mr. Kusturiss seeks to recover any

---

[50] With respect to survival damages, the additional estate proceeds, when disbursed, shall be distributed as set forth in the August 1, 2024 Order.

funds owed to him as his portion of the attorneys' fee, he shall attempt to obtain such fee from Mr. Benedetto directly as Mr. Benedetto has already disbursed to himself settlement proceeds that exceed the entirety of expenses and total attorneys' fees, including Mr. Kusturiss' portion of the fee, due in this matter.

### 5. *Moore,* 17-2839 and 18-16345

According to Mr. Benedetto's distribution memo, he previously withdrew a total of $133,760.24 from the settlement proceeds in *Moore,* representing $29,120.16 for expenses and $104,640.08 for Mr. Benedetto's portion of the attorneys' fee. (*See* Special Master Report, Ex. 23, pp. 140-41.)[51] This amount did not account for the attorneys' fee purportedly due to Mr. Kusturiss in the amount of $52,319.53, pursuant to the distribution statement initially filed by Mr. Benedetto.[52] (*Id.*) When Mr. Benedetto transferred the remaining settlement proceeds in *Moore* to Mr. Kusturiss on November 17, 2023, the transferred funds purported to include Mr. Kusturiss' portion of the attorneys' fee. (*Id.*)

---

[51] Mr. Benedetto actually deducted $111,140.08 for his attorneys' fees from the settlement proceeds, which appears to include $104,640.08 for the suicide case, $5,000 in attorneys' fees to handle a divorce between Mr. and Mrs. Moore, and $1,500 in attorneys' fees for a post-nuptial agreement for Holli Moore. (*See* Special Master Report, Ex. 27, pp. 152-55.)

[52] According to the distribution statement filed in *Moore,* the total attorneys' fee claimed by Plaintiffs' counsel for the suicide case was $156,959.61, which consists of $104,640.08 purportedly owed to Mr. Benedetto and $52,319.53 purportedly owed to Mr. Kusturiss. (*See* Special Master Report, Ex. 27, pp. 152-53.)

As set forth in Appendix E, the Court approves expenses only in the amount of $23,263.84. As a result of this reduction in expenses, the net settlement proceeds in *Moore* increase from $470,879.84 to $476,376.16. Because the attorneys' fees are one-third of the net settlement amount, the increased net settlement amount results in an increased attorneys' fee to Plaintiffs' counsel from $156,959.61 to $158,912.05. Therefore, the final approved attorneys' fees and expenses in the *Moore* matters total $182,175.89 ($23,263.84 in expenses and $158,912.05 in attorneys' fees). The remaining amount of settlement proceeds owed to Plaintiffs in *Moore* is $317,824.11. These calculations are detailed below:

| INITIAL DISTRIBUTION CLAIMED IN BENEDETTO'S DISTRIBUTION STATEMENT | |
|---|---|
| Gross Settlement | $500,000.00 |
| Less Maximum Costs | -$29,120.16 |
| Subtotal | $470,879.84 |
| Less Attorneys' Fee (1/3 of $470,879.84) | -$156,959.61 |
| **Amount Due to Plaintiffs** | **$313,920.23** |

| INTERIM DISTRIBUTION PER COURT ORDER DATED JULY 11, 2024 | |
|---|---|
| Gross Settlement | $500,000.00 |
| Less Maximum Costs | -$31,397.77 |
| Subtotal | $468,602.23 |
| Less Potential Attorneys' Fee (33 1/3%) And Special Master Fee | -$156,200.74 |
| **Net to Plaintiffs** | **$312,401.49** |
| Wrongful Death Damages (1% Allocation) | $3,124.01 |
| Survival Damages (99% Allocation) | $309,277.48 |
| Amount Previously Disbursed to Plaintiffs by Counsel | $247,400.00 |
| Benjamin Moore | $130,400.00 |
| Holli Moore | $117,000.00 |
| Remaining Proceeds Due | $65,001.49 |
| Initial Amount in Kusturiss' Atty. Trust Account | $118,839.76 |
| **Amount Remaining in Kusturiss' Atty. Trust Account following Court-Ordered disbursement** | **$53,838.27** |

| FINAL DISTRIBUTION APPROVED BY COURT | |
|---|---|
| Gross Settlement | $500,000.00 |
| Less Approved Expenses[53] | -$23,263.84 |
| Subtotal | $476,736.16 |
| Less Attorneys' Fee (1/3 of $476,736.16) | -$158,912.05 |
| **Amount Due to Plaintiffs** | **$317,824.11** |
| Wrongful Death Damages (1% of $317,824.11) | $3,178.24 |
| Survival Damages (99% of $317,824.11) | $314,645.87 |
| Amount Already Disbursed Pursuant to 7/11/24 Order[54] | **-$312,401.49** |
| Wrongful Death Damages | $3,124.01 |
| Survival Damages | $309,277.48 |
| **Remaining Amount Owed to Plaintiffs** | **$5,422.62** |
| Wrongful Death Damages ($3,178.24-$3,124.01) | $54.23 |
| Survival Damages ($314,645.87-$309,277.48) | $5,368.39 |

---

[53] See Appendix E for a breakdown of costs allowed.

In the July 11, 2024 Order approving an interim distribution of settlement proceeds in *Moore*, the Court allocated $3,124.01 to wrongful death damages and $309,277.48 to survival damages, for a total of $312,401.49. (Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 199 in Civil No. 17-2839], July 11, 2024, pp. 29-30.) The Court found that Plaintiffs had already received $3,124.01 in wrongful death proceeds (with Benjmain Moore receiving $1,562.01 and Holli Moore receiving $1,562.00), and $244,275.99 in survival proceeds in light of prior disbursements to or on behalf of Benjamin and Holli Moore totaling $247,400. (*See id.*) The Court ordered disbursement of an additional $65,001.49 as survival damages due to the Estate of Megan Moore. (*Id.*) Moreover, because Benjamin Moore had received through prior disbursements $13,400.00 more of the Estate's assets than Holli Moore, the Court directed that the remaining survival proceeds, when disbursed, be divided $25,800.74 to Benjamin Moore and $39,200.75 to Holli Moore. (*Id.* at p. 30.) Given these

---

[54] As set forth in the July 11, 2024 Order Approving Allocation of Settlement and Distribution of Settlement Proceeds, Benjamin Moore previously received disbursements totaling $127,900, and Holli Moore received a disbursement in the amount of $113,000. (Order [D.I. 199 in Civil No. 17-2839], July 11, 2024, p. 25 n.25.) In addition, Mr. Benedetto made a distribution to himself of $2,500 allegedly owed by Benjamin Moore and $4,000 allegedly owed by Holli Moore in connection with a divorce and/or post-nuptial agreement. (*Id.*) The Court accounted for these prior disbursements when directing distribution of the settlement proceeds in the July 11, 2024 Order.

adjustments, the revised distribution of the remaining proceeds shall be as follows:

### Final Calculation of Wrongful Death Proceeds ($3,178.24)

| | |
|---|---:|
| Benjamin Moore (1/2 of $3,178.24) | $1,589.12 |
| Less Amount Already Disbursed | -$1,562.01 |
| **Remaining Amount Due to Benjamin Moore** | **$27.11** |
| | |
| Holli Moore (1/2 of $3,178.24) | $1,589.12 |
| Less Amount Already Disbursed | -$1,562.00 |
| **Remaining Amount Due to Holli Moore** | **$27.12** |

### Final Calculation of Survival Damages ($314,645.87)

| | |
|---|---:|
| Estate of Megan Moore | $314,645.87 |
| Less Amount Already Disbursed | -$309,277.48 |
| **Remaining Amount Due to Estate** | **$5,368.39** |

As set forth above, Mr. Benedetto previously withdrew a total of $133,760.24 from the settlement proceeds for the expenses identified on his distribution statement and his portion of the attorneys' fee, and did not withdraw $52,319.53 purportedly due to Mr. Kusturiss as Mr. Kusturiss' portion of the attorneys' fee. The Court has reduced the expenses in this matter from $29,120.16 to $23,263.84, and the total attorneys' fee has increased from $156,959.61 to $158,912.05. Therefore, Plaintiffs' counsel is entitled to recover a total of $182,175.89 for approved expenses and attorneys' fees in *Moore*. In light of Mr. Benedetto's previous withdrawal of $133,760.24, there remains $48,415.65 owed.

While the amount transferred to Mr. Kusturiss' trust account for *Moore* was supposed to include Mr. Kusturiss' purported portion of the attorneys' fee, there are insufficient funds in Mr.

70

Kusturiss' attorney trust account to pay the remaining amount owed to the *Moore* Plaintiffs – which totals $5,422.62 – and to pay Mr. Kusturiss an attorneys' fee in the amount of $52,319.53 as claimed on Mr. Benedetto's disbursement memo – in light of Mr. Benedetto's prior disbursement of an excessive amount of settlement funds for expenses. There are sufficient funds remaining in Mr. Kusturiss' attorney trust account to make the *Moore* Plaintiffs whole, and the Court will direct disbursement of $5,422.62 to the *Moore* Plaintiffs as follows: Mr. Kusturiss shall disburse an additional $27.11 to Benjamin Moore and $27.12 to Holli Moore as wrongful death proceeds, and $5,368.39 to the Estate of Megan Moore as survival proceeds to be distributed in the manner provided in the July 11, 2024 Order.[55]

The remaining $48,415.65 in the attorney trust account represents funds available for the remaining attorneys' fees. As set forth above, the special master recommended that the special master's fee be "deducted from the attorneys' fees to the extent available[.]" (Special Master Report at p. 55.) As noted above,

---

[55] As set forth in the July 11, 2024 Order, the Court "makes no finding as to whether the assets of the Estate can be distributed under New Jersey intestacy law directly to Decedent's parents as the intestate heirs without passing through an estate account." (Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 199 in Civil No. 17-2839], July 11, 2024, p. 29.) However, the additional survival proceeds, when disbursed, shall be distributed $2,684.20 to Benjamin Moore and $2,684.19 to Holli Moore.

although objecting to the amount of the special master's fee, Plaintiffs' counsel did not object to the recommendation that the special master's fee be deducted from Plaintiffs' counsel's fees. Consequently, the remaining $48,415.65 in *Moore* shall be allocated to the special master's fee.

### 6. *Watson*, 16-6578:

According to Mr. Benedetto's distribution memo, he previously withdrew a total of $102,639.15 from the settlement proceeds in *Watson*, which represented $74,821.77 for expenses and $27,817.38 for Mr. Benedetto's portion of the attorneys' fee. (*See* Special Master Report, Ex. 24, pp. 143-44.) This amount did not include the portion of the attorneys' fee purportedly due to Mr. Kusturiss in the amount of $13,908.69.[56] (*See id.*) When Mr. Benedetto transferred the remaining settlement proceeds in *Watson* to Mr. Kusturiss on November 17, 2023, the transferred funds purported to include Mr. Kusturiss' portion of the attorneys' fee.

As set forth in Appendix F, the Court only approves expenses in the amount of $35,794.04. As a result of this reduction in expenses, the net settlement proceeds in *Watson* increase from $125,178.23 to $161,494.37. Because the attorneys' fee in *Watson*

---

[56] The total attorneys' fees claimed in the distribution statement initially filed by Mr. Benedetto was $41,726.07. (*See* Special Master Report, Ex. 28, pp. 158-60.) This amount consisted of a fee to Mr. Benedetto in the amount of $27,817.38 and a fee to Mr. Kusturiss in the amount of $13,908.69. (*Id.*)

is one-third of the net settlement amount, the increased net settlement amount results in an increased attorneys' fee to Plaintiffs' counsel from $41,726.07 to $53,831.46. Therefore, the approved attorneys' fees and expenses in *Watson* total $89,625.50 ($35,794.04 in expenses and $53,831.46 in attorneys' fees). The total settlement proceeds due to the *Watson* plaintiffs, after deducting the attorneys' fees, expenses, and a lien in the amount of $2,711.59, is $107,662.91. These calculations are detailed below:

| INITIAL DISTRIBUTION CLAIMED IN BENEDETTO'S DISTRIBUTION STATEMENT | |
|---|---|
| Gross Settlement | $200,000.00 |
| Less Maximum Costs | -$74,821.77 |
| Subtotal | $125,178.23 |
| Less Attorneys' Fee (1/3 of $125,178.23) | -$41,726.07 |
| Net to Plaintiffs | $83,452.16 |
| Cum. Cty. CWA Lien | -$2,711.59 |
| **Amount Due to Client** | **$80,740.57** |

| INTERIM DISTRIBUTION PER COURT ORDER DATED NOVEMBER 26, 2024 | |
|---|---|
| Gross Settlement | $200,000.00 |
| Less Cum. Cty. CWA Lien | -$2,711.99 |
| Less Maximum Costs | -$69,709.43 |
| Subtotal | $127,578.58 |
| Less Potential Attorneys' Fee (33 1/3%) and Special Master Fee | -$42,526.19 |
| **Net to Plaintiffs** | **$85,052.39** |
| Wrongful Death Damages (97% Allocation) | $82,500.82 |
| Survival Damages (3% Allocation) | $2,551.57 |
| Initial Amount in Kusturiss' Atty. Trust Account | $94,649.26 |
| **Amount Remaining in Kusturiss' Atty. Trust Account following Court-Ordered disbursement** | **$9,596.87** |

| FINAL DISTRIBUTION APPROVED BY COURT | |
|---|---|
| Gross Settlement | $200,000.00 |
| Less Cum. Cty. CWA Lien[57] | -$2,711.59 |
| Less Approved Expenses[58] | -$35,794.04 |
| Subtotal | $161,494.37 |
| Less Attorneys' Fee (1/3 of $161,494.37) | -$53,831.46 |
| **Amount Due to Plaintiffs** | **$107,662.91** |
| Wrongful Death Damages (97% of $107,662.91) | $104,433.02 |
| Survival Damages (3% of $107,662.91) | $3,229.89 |
| Amount Already Disbursed Pursuant to 11/26/24 Order | **-$85,052.39** |
| Wrongful Death Damages | $82,500.82 |
| Survival Damages | $2,551.57 |
| **Remaining Amount Owed to Plaintiffs** | **$22,610.52** |
| Wrongful Death Damages ($104,433.02-$82,500.82) | $21,932.20 |
| Survival Damages ($3,229.89-$2,551.57) | $678.32 |

---

[57] This amount was paid directly on behalf of Defendant CFG. (*See* Special Master Report [D.I. 221-1], Ex. 24, p. 144.)

[58] See Appendix F for a breakdown of costs allowed.

In the November 26, 2024 Order approving the settlement allocation, as amended by a December 19, 2024 Order, the Court already directed disbursement of $82,500.82 for wrongful death damages, in the amounts of $27,500.28 to Jon Watson, Jr., $27,500.27 to Gage Lloyd, and $27,500.27 on behalf of A.L., minor. (Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 249 in Civil No. 16-6578], Nov. 26, 2024, p. 20; Order [D.I. 255], Dec. 19, 2024, p. 3.) The Court also directed disbursement of $2,551.57 to the Estate of Jon Leon Watson for survival damages. (Order [D.I. 249 in Civil No. 16-6578], Nov. 26, 2024, p. 20.) The revised distribution of the remaining proceeds shall be as follows:

**Final Calculation of Wrongful Death Proceeds ($104,433.02)**

| | |
|---|---|
| Jon Watson, Jr. (1/3 of $104,433.02) | $34,811.01 |
| Less Amount Already Disbursed | -$27,500.28 |
| **Remaining Amount Due to Jon Watson, Jr.** | **$7,310.73** |
| | |
| Gage Lloyd (1/3 of $104,433.02) | $34,811.01 |
| Less Amount Already Disbursed | -$27,500.27 |
| **Remaining Amount Due to Gage Lloyd** | **$7,310.74** |
| | |
| A.L. (1/3 of $104,433.02) | $34,811.00[59] |
| Less Amount Already Disbursed | -$27,500.27 |
| **Remaining Amount Due to A.L.** | **$7,310.73** |

**Final Calculation of Survival Damages ($3,229.89)**

| | |
|---|---|
| Estate of Jon Leon Watson | $3,229.89 |
| Less Amount Already Disbursed | -$2,551.57 |
| **Remaining Amount Due to Estate** | **$678.32** |

---

[59] The settlement proceeds cannot be divided in equal thirds.

75

As set forth above, the Court has reduced the expenses in *Watson* from $74,821.77 to $35,794.04, and the total attorneys' fee has increased from $41,726.07 to $53,831.46. Therefore, Plaintiffs' counsel is entitled to recover a total of $89,625.50 for approved expenses and attorneys' fees in this matter. As set forth above, Mr. Benedetto already withdrew a total of $102,639.15 from the settlement proceeds in *Watson*, $13,013.65 more than that to which he was entitled inclusive of all expenses and attorneys' fees, including Mr. Kusturiss' portion of the fee.

Therefore, while the amount transferred to Mr. Kusturiss' trust account for *Watson* was supposed to include Mr. Kusturiss' purported attorney's fee, Mr. Benedetto's prior disbursement to himself of an excessive amount of settlement funds results in insufficient funds available in Mr. Kusturiss' attorney trust account to pay the remaining amount owed to the *Watson* Plaintiffs. At this time, $22,610.52 is owed to the *Watson* plaintiffs but only $9,596.87 remains in the attorney trust account for the *Watson* matter following the prior disbursement of funds directed by the Court in November 2024, resulting in a shortfall of $13,013.65 to the *Watson* Plaintiffs. Plaintiffs' counsel shall disburse the remaining amount of $9,596.87 to Jon Leon Watson's three children, in the amounts of $3,198.95 to Jon Watson, Jr., $3,198.96 to Gage Lloyd, and $3,198.96 by check payable to the "Jefferson County, Tennessee Clerk for the benefit of A.L., minor,"

76

for deposit in an interest-bearing account insured by the Federal Deposit Insurance Corporation, representing a further disbursement of wrongful death proceeds. The *Watson* Plaintiffs are further entitled to an additional sum of $13,013.65, consisting of $12,335.33 in wrongful death proceeds, to be distributed $4,111.78 to Jon Watson, Jr., $4,111.78 to Gage Lloyd, and $4,111.77 on behalf of A.L., and an additional $678.32 to the Estate of Jon Leon Watson for survival proceeds.[60] Plaintiffs' counsel is directed to send a copy of this Order to Helen Ray Lloyd and Jon Watson, Jr. to place them on notice that additional funds in the sum of $13,013.65 are owed to the *Watson* Plaintiffs from Plaintiffs' counsel.

### G. Conclusion

In summary, the Court provided Plaintiffs' counsel the opportunity to submit documentary support for the expenses claimed in court filings in these cases and appointed a special master in an effort to determine whether the expenses charged to the clients were actual expenses of the litigation. The limited documentation that has been provided demonstrates that Plaintiffs' counsel failed to keep records of the expenses in accordance with the New

---

[60] These remaining survival proceeds shall be distributed in accordance with the November 26, 2024 and December 19, 2024 Orders. When disbursed, the survival proceeds shall be distributed $226.11 to Jon Watson, Jr., $226.10 to Gage Lloyd, and $226.11 on behalf of A.L. because the proceeds cannot be divided in equal thirds.

Jersey Court Rules, was unable to substantiate many of the expenses charged to the clients, overstated some expenses, and withdrew money from the settlement proceeds for some expenses that were not thereafter paid. Specifically, the total expenses deducted by Mr. Benedetto for all of the above-captioned cases is $356,982.03. The total of the expenses approved by this Order or waived by Mr. Kusturiss[61] is $207,820.78, for a difference of $149,161.25 that the Court has found should not have been charged to Plaintiffs. Moreover, the Court has reduced the attorneys' fees in *Conroy* from a 33 1/3% fee to a 25% fee on the wrongful death component of the settlement because the class of beneficiaries of the wrongful death damages consisted only of minors at the time the retainer agreement was signed. As a result of this reduction, the attorneys' fees in *Conroy* have decreased by $49,830.82.

---

[61] The total amount of the expenses waived by Mr. Kusturiss is $22,283.24. This amount consists of $5,574.89 in waived expenses in *Conroy*, $3,390.00 in waived expenses in *Lewis*, $6,234.35 in waived expenses in *Moore*, and $7,084.00 in waived expenses in *Watson*. (*See* Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 241 in Civil No. 17-7183], Nov. 18, 2024, p. 14 n.11; Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 229 in Civil No. 16-3503], Aug. 1, 2024, p. 13 n.9; Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 199 in Civil No. 17-2839], July 11, 2024, pp. 19-20; Order Approving Allocation of Settlement and Distribution of Settlement Proceeds [D.I. 249 in Civil No. 16-6578], Nov. 26, 2024, p. 14 n.10.)

As a result of the reduction in expenses in all six cases and the reduced attorneys' fee in *Conroy*, the total net amount due to the plaintiffs in all six of the above-referenced cases has increased, in accordance with the Court's calculations, by $159,056.19. Some funds remain in Mr. Kusturiss' attorney trust account to contribute toward this difference as set forth *supra*. However, in light of the adjustments to the amount of expenses and attorneys' fees set forth herein, the money already withdrawn by Mr. Benedetto exceeds the amount the Court has determined for approved expenses and all attorneys' fees in *Allen*, *Hennis*, *Watson* and *Lewis*. Notwithstanding the disbursements directed herein, there remains a shortfall due to plaintiffs in *Allen*, *Hennis*, *Lewis* and *Watson* in the net amount of $54,747.22.[62]

The Court notes that after the disbursements to Plaintiffs directed herein, $48,415.65 in funds remain available in *Moore*[63] and $411.08 in *Conroy*, which reflect unpaid attorneys' fees totaling $48,826.73. As set forth above, the special master

---

[62] As set forth above, Plaintiffs in *Allen* are owed $15,168.97; Plaintiffs in *Hennis* are owed $19,001.01; Plaintiffs in *Lewis* are owed $7,563.59; and Plaintiffs in *Watson* are owed $13,013.65.

[63] In *Moore*, Mr. Benedetto disbursed $133,760.24 from the settlement proceeds, when the total attorneys' fees and approved expenses to which he and Mr. Kusturiss are entitled is $182,175.89. Thus, unlike *Allen*, *Hennis*, *Lewis*, and *Watson*, where the amount Mr. Benedetto withdrew exceeded the sum of the attorneys' fees and expenses approved by the Court, there are substantial funds remaining in *Moore*.

recommended that his fee be deducted out of any remaining attorneys' fees, to the extent available. Consequently, the remaining $48,826.73 shall be paid to the special master.

In addition, as set forth above, Mr. Kusturiss has provided a screenshot of a bank account in which Mr. Benedetto is purportedly holding $105,009.22 to cover the costs in these cases. However, Mr. Kusturiss has stated that he has no control over these funds and does not know if these funds continue to exist. Mr. Kusturiss shall advise whether he has further information at this time as to whether Mr. Benedetto has used these funds to pay expenses, whether these funds are available to pay the remaining $54,747.22 to Plaintiffs in *Allen*, *Hennis*, *Lewis* and *Watson*, and any additional information as to the availability of the funds.

Finally, the Court finds after review of the objections to the special master's fee that the special master is owed $92,537.43 for his services in this matter, which fee, the Court has concluded, shall be borne by Plaintiffs' counsel.

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this **16th** day of **January 2026**,

**ORDERED** that in *Conroy*, 98% of the settlement proceeds shall be allocated to wrongful death damages, such that $528,049.72 shall be allocated to wrongful death damages, of which $454,791.49 has already been disbursed to David Conroy's three children, and

the remaining wrongful death proceeds in the amount of $73,258.23 shall be disbursed in the amounts of $24,419.41 to Kayla Conroy, $24,419.41 to the Surrogate of Cumberland County Intermingled Account in the name of C.C., minor, and $24,419.41 to the Surrogate of Cumberland County Intermingled Account in the name of K.C., minor; and it is further

**ORDERED** that in *Conroy*, 2% of the settlement proceeds shall be allocated to survival damages, such that $9,579.13 shall be allocated to survival damages, of which $9,281.46 has already been disbursed to the Estate of David Conroy or directly to David Conroy's three children as provided in the November 18, 2024 Order [D.I. 241 in Civil No. 17-7183], and the remaining survival proceeds in the amount of $297.67 shall be disbursed to the Estate of David Conroy, or directly to Kayla Conroy in the amount of $99.22, the Surrogate of Cumberland County Intermingled Account in the name of C.C., minor, in the amount of $99.22, and the Surrogate of Cumberland County Intermingled Account in the name of K.C., minor, in the amount of $99.23, as approved by the Superior Court of New Jersey, Chancery Division, Probate Part and/or the Surrogate of Cumberland County and in accordance with the New Jersey laws of intestacy; and it is further

**ORDERED** that the provisions set forth in the November 18, 2024 Order in *Conroy* concerning the funds deposited with the Surrogate of Cumberland County, New Jersey on behalf of C.C. and

K.C. are incorporated herein by reference and shall similarly apply to the funds disbursed pursuant to this Order; and it is further

**ORDERED** that in *Lewis*, 95% of the settlement proceeds shall be allocated to wrongful death damages, such that $73,863.48 shall be allocated to wrongful death damages, of which $58,351.86 has already been disbursed to Tammy Willson and the remaining $15,511.62 shall be due to Tammy Willson; and it is further

**ORDERED** that in *Lewis*, 5% of the settlement proceeds shall be allocated to survival damages, such that $3,887.55 shall be allocated to survival damages, of which $3,071.15 has already been disbursed and the remaining $816.40 shall be due to the Estate of Robert Wayne Lewis or directly to Tammy Willson as approved by the Superior Court of New Jersey, Chancery Division, Probate Part and/or the Surrogate of Cumberland County and in accordance with the New Jersey laws of intestacy; and it is further

**ORDERED** that Mr. Kusturiss shall disburse the remaining funds in his escrow account in *Lewis* in the amount of $8,764.43 to Ms. Willson as a portion of the remaining wrongful death damages owed to her, and shall send a copy of this Order to Ms. Willson as set forth above to advise her that a total of $7,563.59 in outstanding settlement proceeds are due to the *Lewis* plaintiffs; and it is further

**ORDERED** that in *Moore,* 1% of the settlement proceeds shall be allocated to wrongful death damages, such that $3,178.24

shall be allocated to wrongful death damages, of which $3,124.01 has already been disbursed to Benjamin Moore and Holli Moore, and the remaining wrongful death proceeds in the amount of $54.23 shall be disbursed in the amount of $27.11 to Benjamin Moore and $27.12 to Holli Moore; and it is further

ORDERED that in *Moore*, 99% of the settlement proceeds shall be allocated to survival damages, such that $314,645.87 shall be allocated to survival damages, of which $309,277.48 has already been disbursed to Benjamin Moore and Holli Moore, and the remaining survival proceeds shall be disbursed in the amount of $5,368.39 to the Estate of Megan Moore or directly to Benjamin Moore and Holli Moore as approved by the Superior Court of New Jersey, Chancery Division, Probate Part and/or the Surrogate of Cumberland County and in accordance with the New Jersey law of intestacy, such that these estate proceeds when disbursed shall include $2,684.20 to Benjamin Moore and $2,684.19 to Holli Moore; and it is further

ORDERED that in *Watson*, 97% of the settlement proceeds shall be allocated to wrongful death damages, such that $104,433.02 shall be allocated to wrongful death damages, of which $82,500.82 has already been disbursed to or on behalf of Jon Leon Watson's three children, and the remaining wrongful death proceeds in the amount of $21,932.20 shall be due in the amounts of $7,310.73 to Jon Watson, Jr., $7,310.74 to Gage Lloyd, and $7,310.73 to the "Jefferson County, Tennessee Clerk for the benefit of A.L., minor,"

for deposit in an interest-bearing account insured by the Federal Deposit Insurance Corporation; and it is further

ORDERED that in *Watson*, 3% of the settlement proceeds shall be allocated to survival damages, such that $3,229.89 shall be allocated to survival damages, of which $2,551.57 has already been disbursed and the remaining $678.32 shall be due to the Estate of Jon Leon Watson, or directly to Jon Watson, Jr. in the amount of $226.11, Gage Lloyd in the amount of $226.10, and on behalf of A.L. in the amount of $226.11 to the "Jefferson County, Tennessee Clerk for the benefit of A.L., minor," as approved by the Superior Court of New Jersey, Chancery Division, Probate Part and/or the Surrogate of Cumberland County and in accordance with the New Jersey laws of intestacy; and it is further

ORDERED that Mr. Kusturiss shall disburse the remaining funds in his escrow account in *Watson* in the amount of $9,596.87 to Jon Watson, Jr., Gage Lloyd, and A.L., in the amounts of $3,198.95 to Jon Watson, Jr., $3,198.96 to Gage Lloyd, and $3,198.96 by check payable to the "Jefferson County, Tennessee Clerk for the benefit of A.L., minor," for deposit in an interest-bearing account insured by the Federal Deposit Insurance Corporation, which represents a further disbursement of wrongful death proceeds, and shall send a copy of this Order to Jon Watson, Jr. and Helen Ray Lloyd as set forth above to place them on notice

that additional funds in the sum of $13,013.65 are due to the *Watson* Plaintiffs; and it is further

       **ORDERED** that the provisions set forth in the November 26, 2024 Order in *Watson* [D.I. 249 in Civil No. 16-6578], as amended by Order dated December 19, 2024 [D.I. 255 in Civil No. 16-6578], concerning the funds deposited with the "Jefferson County, Tennessee Clerk for the benefit of A.L., minor," are incorporated herein by reference and shall similarly apply to the funds disbursed pursuant to this Order; and it is further

       **ORDERED** that the special master's fees and expenses in the total amount of $92,537.43 are hereby approved, which fees and expenses shall be paid by Plaintiffs' counsel; and it is further

       **ORDERED** that the remaining $48,826.73 in *Conroy* and *Moore* shall be paid toward the special master's fees and expenses set forth in the foregoing paragraph; and it is further

       **ORDERED** that Mr. Kusturiss, **within twenty (20) days of the date of this Order**, shall provide any additional information he has concerning the $105,009.22 purportedly being held by Mr. Benedetto for the costs in these cases, as set forth above; and it is further

       **ORDERED** that Mr. Kusturiss, **within twenty (20) days of the date of this Order**, shall send a copy of this Order to all parties, including Tammy Willson, Jon Watson, Jr., Helen Ray Lloyd, Benjamin Moore, Holli Moore, Jenney Ferguson, and the Surrogate of

Cumberland County, New Jersey, as well as copies to the siblings of Alissa Marie Allen identified in the Distribution Statement filed in *Allen* [D.I. 231-1 in Civil No. 15-6273] and the mother and siblings of David Hennis identified in the Distribution Statement filed in *Hennis* [D.I. 221-1 in Civil No. 16-4216], and shall file proof of service on the docket; and it is further

**ORDERED** that all disbursements of the funds remaining in Mr. Kusturiss' attorney trust accounts in the above-captioned matters shall be made in accordance with this Order **within thirty (30) days** of the date of this Order;[64] and it is further

**ORDERED** that Mr. Kusturiss shall file with the Court a certification certifying disbursement in accordance with this Order.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

Cc: Hon. Edward S. Kiel

---

[64] The Court is in receipt of Mr. Kusturiss' letter stating that he will be away in January and February 2026. To the extent he requires additional time to comply with this Order, he shall advise the Court by letter.

**APPENDIX A — ESTATE OF ALLEN, 15-6273**

| COSTS AND EXPENSES CLAIMED | APPROVED COSTS AND EXPENSES |
|---|---|
| Settlement Amount:  $175,000.00<br>**Total Expenses:      -$61,335.91** | Settlement Amount:  $175,000.00<br>**Total Expenses:      -$38,582.45** |
| Experts:            $45,454.97<br>  Guzzardi $14,795.00<br>  Schwartz $18,006.25<br>  Smith $7,903.50<br>  Seibert $2,750.00<br>  Rudovsky $2,000.00 | Experts:            $30,357.31<br>  Guzzardi $11,250.00<br>  Schwartz $9,258.81<br>  Smith $7,198.50<br>  Seibert $2,650.00<br>  Rudovsky $0.00 |
| Depositions:        $8,761.32<br>  D&B $827.73<br>  CSR $600.00<br>  DiPiero $4,654.19<br>  Wyble $2,455.78<br>  Schulman $136.23 | Depositions:        $4,652.11<br>  D&B $827.73<br>  CSR $600.00<br>  DiPiero $2,377.29<br>  Wyble $710.86<br>  Schulman $136.23 |
| Investigation:      $1,819.69<br>  AllPoint $1,638.34<br>  Atlantic City Press $50.00<br>  Millville $1.50<br>  Russell D'Alonzo $99.70<br>  Cumberland County $30.15<br>  OPRA $0.00 | Investigation:      $1,640.77<br>  AllPoint $1,638.34<br>  Atlantic City Press $0.00<br>  Millville $1.50<br>  Russell D'Alonzo $0.00<br>  Cumberland County $0.00<br>  OPRA $0.93 |
| Estate Administration: $1,690.00<br>  Cum. Co. Surrogate $190.00<br>  Craig Sokolow $900.00<br>  Benedetto Law $600.00 | Estate Administration: $190.00<br>  Cum. Co. Surrogate $190.00<br>  Craig Sokolow $0.00<br>  Benedetto Law $0.00 |
| Medical Recs:       $126.99<br>  So. Reg. Med. Exam. $14.00<br>  CIOX $112.99 | Medical Records:    $14.00<br>  So. Reg. Med. Exam. $14.00<br>  CIOX $0.00 |
| Service of Process: $454.97 | Service of Process: $400.00 |
| Filing Fees:        $900.00<br>  District Court $400.00<br>  3rd Circuit $500.00 | Filing Fees:        $905.00<br>  District Court $400.00<br>  3rd Circuit $505.00 |
| Miscellaneous:      $1,818.29<br>  PNC $400.00<br>  Hoffman Law Group $300.00<br>  Federal Express $91.57<br>  Courier Fees $625.00<br>  Postage $97.41<br>  Travel $305.31 | Miscellaneous:      $16.66<br>  PNC $0.00<br>  Hoffman Law Group $0.00<br>  Federal Express $0.00<br>  Courier Fees $16.66<br>  Postage $0.00<br>  Travel $0.00 |
| Lien Search:        $13.00<br>  Charles Jones $13.00 | Lien Search:        $10.00<br>  Charles Jones $10.00 |
| Reimbursements:     $396.60<br>  Hanken, Sandman $396.60 | Reimbursements:     $396.60<br>  Hanken, Sandman: $396.60 |

**APPENDIX B – ESTATE OF CONROY, 17-7183**

| COSTS AND EXPENSES CLAIMED | APPROVED COSTS AND EXPENSES |
|---|---|
| Settlement Amount:  $750,000.00<br>**Total Expenses:       -$58,089.09** | Settlement Amount:  $750,000.00<br>**Total Expenses:       -$31,451.00** |
| Experts:            $38,921.25<br>  Guzzardi $8,525.00<br>  Schwartz $21,856.25<br>  Smith $8,540.00 | Experts:            $21,048.81<br>  Guzzardi $4,500.00<br>  Schwartz $9,258.81<br>  Smith $7,290.00 |
| Depositions:        $6,857.83<br>  CSR $2,097.92<br>  DiPiero $3,327.60<br>  Wyble $0.00<br>  Schulman $1,307.31<br>  Suzanne Johnson $125.00 | Depositions:        $5,341.88<br>  CSR $1,502.55<br>  DiPiero $2,377.29<br>  Wyble $710.86<br>  Schulman $626.18<br>  Suzanne Johnson $125.00 |
| Investigation:      $1,828.56<br>  AllPoint $1,602.58<br>  OPRA $5.53<br>  Cum. Co. Pros. Office $220.45 | Investigation:      $642.20<br>  AllPoint $420.82<br>  OPRA $0.93<br>  Cum. Co. Pros. Office $220.45 |
| Estate Administration: $4,719.00<br>  Cum. Co. Surrogate $219.00<br>  Benedetto Law $4,500.00* | Estate Administration:  $209.50<br>  Cum. Co. Surrogate $158.00<br>  Warrant $51.50 |
| Medical Recs:       $174.88<br>  So. Reg. Med. Exam. $32.00<br>  CIOX $142.88 | Medical Records:      $12.00<br>  So. Reg. Med. Exam. $12.00<br>  CIOX $0.00 |
| Service of Process:  $525.00 | Service of Process:  $120.00 |
| Filing Fees:        $851.50<br>  District Court $800.00<br>  Superior Court $51.50 | Filing Fees:        $800.00<br>  District Court $800.00<br>  Superior Court $0.00 |
| Mediation:          $2,862.94<br>  JAMS $2,862.94 | Mediation:          $3,200.00<br>  JAMS $3,200.00 |
| Miscellaneous:      $1,335.13<br>  Russell D'Alonzo $390.00*<br>  Travel/Parking $684.89*<br>  Federal Express $91.57<br>  Courier Fees $61.00<br>  Postage $49.34<br>  Road Runner $149.00 | Miscellaneous:      $66.61<br>  Russell D'Alonzo $0.00<br>  Travel/Parking $0.00<br>  Federal Express $0.00<br>  Courier Fees $66.61<br>  Postage $0.00<br>  Road Runner $0.00 |
| Lien Search:         $13.00<br>  Charles Jones $13.00 | Lien Search:         $10.00<br>  Charles Jones $10.00 |
| *Expenses waived during hearing | |

## APPENDIX C – ESTATE OF HENNIS, 16-4216

| COSTS AND EXPENSES CLAIMED | APPROVED COSTS AND EXPENSES |
|---|---|
| Settlement Amount:  $140,000.00<br>**Total Expenses:**        **-$66,357.52** | Settlement Amount:  $140,000.00<br>**Total Expenses:**        **-$37,856.00** |
| Experts:            $49,614.40<br>  Guzzardi $14,655.00<br>  Schwartz $23,606.40<br>  Smith $6,703.00<br>  Seibert $2,750.00<br>  Rudovsky $1,500.00<br>  Burns $400.00 | Experts:            $29,031.81<br>  Guzzardi $11,250.00<br>  Schwartz $9,258.81<br>  Smith $5,873.00<br>  Seibert $2,650.00<br>  Rudovsky $0.00<br>  Burns $0.00 |
| Depositions:         $8,051.60<br>  D&B $1,037.00<br>  CSR $493.55<br>  DiPiero $4,148.65<br>  Wyble $2,148.78<br>  Schulman $0.00 | Depositions:         $6,344.64<br>  D&B $0.00<br>  CSR $966.50<br>  DiPiero $2,377.29<br>  Wyble $2,864.62<br>  Schulman $136.23 |
| Investigation:       $2,024.49<br>  AllPoint $2,004.34<br>  Cumberland County $20.15<br>  OPRA $0.00 | Investigation:       $1,422.89<br>  AllPoint $1,421.96<br>  Cumberland County $0.00<br>  OPRA $0.93 |
| Estate Administration:  $2,080.00<br>  Cum. Co. Surrogate $180.00<br>  Craig Sokolow $900.00<br>  Benedetto Law $1,000.00 | Estate Administration:  $125.00<br>  Cum. Co. Surrogate $125.00<br>  Craig Sokolow $0.00<br>  Benedetto Law $0.00 |
| Medical Recs:          $34.88 | Medical Recs:           $0.00 |
| Service of Process:   $390.00 | Service of Process:    $0.00 |
| Filing Fees:          $900.00<br>  District Court $400.00<br>  3rd Circuit $500.00 | Filing Fees:          $905.00<br>  District Court $400.00<br>  3rd Circuit $505.00 |
| Miscellaneous:       $1,196.68<br>  Postage $54.04<br>  Travel $216.00<br>  Transport (P. Hennis) $460.00<br>  Courier Fees $135.00<br>  FedEx $49.20<br>  Heaven Sent $115.00<br>  Staples $261.04<br>  Pacer $21.40 | Miscellaneous:          $16.66<br>  Postage $0.00<br>  Travel $0.00<br>  Transport (P. Hennis) $0.00<br>  Courier Fees $16.66<br>  FedEx $0.00<br>  Heaven Sent $0.00<br>  Staples $0.00<br>  Pacer $0.00 |
| Lien Search:           $13.00<br>  Charles Jones $13.00 | Lien Search:           $10.00<br>  Charles Jones $10.00 |
| Reimbursements:       $2,052.47<br>  Jarve, Kaplan $2,052.47 | Reimbursements:         $0.00<br>  Jarve, Kaplan $0.00 |

## APPENDIX D — ESTATE OF LEWIS, 16-3503

| COSTS AND EXPENSES CLAIMED | APPROVED COSTS AND EXPENSES |
|---|---|
| Settlement Amount:   $157,500.00<br>**Total Expenses:**      **-$67,257.58** | Settlement Amount:   $157,500.00<br>**Total Expenses:**      **-$40,873.45** |
| Experts:            <u>$51,816.90</u><br>  Guzzardi $16,895.00<br>  Schwartz $25,793.90<br>  Smith $6,578.00<br>  Seibert $2,550.00 | Experts:            <u>$29,031.81</u><br>  Guzzardi $11,250.00<br>  Schwartz $9,258.81<br>  Smith $5,873.00<br>  Seibert $2,650.00 |
| Depositions:        <u>$5,006.09</u><br>  D&B $531.83<br>  CSR $200.80<br>  DiPiero $2,240.50<br>  Wyble $1,809.34<br>  Dep. Of Tracey Reed $223.62<br>  Schulman $0.00 | Depositions:        <u>$6,110.77</u><br>  D&B $531.83<br>  CSR $200.80<br>  DiPiero $2,377.29<br>  Wyble $2,864.62<br>  Dep. of Tracey Reed $0.00<br>  Schulman $136.23 |
| Investigation:      <u>$4,330.26</u><br>  AllPoint $4,293.38<br>  Cumberland County $36.88<br>  OPRA $0.00 | Investigation:      <u>$4,294.31</u><br>  AllPoint $4,293.38<br>  Cumberland County $0.00<br>  OPRA $0.93 |
| Estate Administration: <u>$3,380.00</u><br>  Cum. Co. Surrogate $180.00<br>  Craig Sokolow $700.00*<br>  Benedetto Law $2,500.00* | Estate Administration: <u>$125.00</u><br>  Cum. Co. Surrogate $125.00<br>  Craig Sokolow $0.00<br>  Benedetto Law $0.00 |
| Medical Recs:       <u>$147.91</u><br>  Internal Medicine $20.00<br>  So. Reg. Med. Exam. $14.00<br>  MRO $88.40<br>  CIOX $27.51 | Medical Recs:       <u>$32.00</u><br>  Internal Medicine $20.00<br>  So. Reg. Med. Exam. $12.00<br>  MRO $0.00<br>  CIOX $0.00 |
| Service of Process: <u>$340.00</u> | Service of Process: <u>$340.00</u> |
| Filing Fees:        <u>$1,519.00</u><br>  District Court $419.00<br>  3rd Circuit $500.00<br>  Superior Court $600.00 | Filing Fees:        <u>$905.00</u><br>  District Court $400.00<br>  Third Circuit $505.00<br>  Superior Court $0.00 |
| Miscellaneous:      <u>$704.42</u><br>  Heaven Sent $55.68<br>  PNC $418.27<br>  Postage $40.47<br>  Travel $190.00* | Miscellaneous       <u>$24.56</u><br>  Heaven Sent $24.56<br>  PNC $0.00<br>  Postage $0.00<br>  Travel $0.00 |
| Lien Search:        <u>$13.00</u><br>  Charles Jones $13.00 | Lien Search:        <u>$10.00</u><br>  Charles Jones $10.00 |
| *Expenses waived during hearing | |

APPENDIX E — ESTATE OF MOORE, 17-2839 AND 18-16345

| COSTS AND EXPENSES CLAIMED | APPROVED COSTS AND EXPENSES |
|---|---|
| Settlement Amount:  $500,000.00<br>**Total Expenses:**      **-$29,120.16** | Settlement Amount:  $500,000.00<br>**Total Expenses:**      **-$23,263.84** |
| Experts:          $14,275.00<br>  Guzzardi $9,900.00<br>  Schwartz $4,375.00 | Experts:          $13,758.81<br>  Guzzardi $4,500.00<br>  Schwartz $9,258.81 |
| Depositions:       $1,364.09<br>  CSR $1,213.20<br>  Wyble $150.00<br>  DiPiero $0.00<br>  Schulman $0.00 | Depositions:       $4,587.58<br>  CSR $1,213.20<br>  Wyble $860.86<br>  DiPiero $2,377.29<br>  Schulman $136.23 |
| Investigation:      $2,487.78<br>  AllPoint $2,487.78<br>  OPRA $0.00 | Investigation:       $782.45<br>  AllPoint $781.52<br>  OPRA $0.93 |
| Estate Administration:  $5,458.00<br>  Cum. Co. Surrogate $233.00<br>  Superior Court $225.00<br>  Benedetto Law $5,000.00* | Estate Administration:  $125.00<br>  Cum. Co. Surrogate $125.00<br>  Superior Court $0.00<br>  Benedetto Law $0.00 |
| Service of Process:   $625.00 | Service of Process:   $0.00 |
| Filing Fees:        $800.00<br>  District Court $800.00 | Filing Fees:        $800.00<br>  District Court $800.00 |
| Mediation:         $2,862.94<br>  JAMS $2,862.94 | Mediation:         $3,200.00<br>  JAMS $3,200.00 |
| Miscellaneous:      $1,234.35*<br>  Russell D'Alonzo $390.00<br>  Courier Fees $265.00<br>  Postage $58.35<br>  Travel $521.00 | Miscellaneous:       $0.00<br>  Russell D'Alonzo $0.00<br>  Courier Fees $0.00<br>  Postage $0.00<br>  Travel $0.00 |
| Lien Search:         $13.00<br>  Charles Jones $13.00 | Lien Search:         $10.00<br>  Charles Jones $10.00 |
| *Expenses waived during hearing. | |

**APPENDIX F – ESTATE OF WATSON, 16-6578**

| COSTS AND EXPENSES CLAIMED | APPROVED COSTS AND EXPENSES |
|---|---|
| Settlement Amount:    $200,000.00<br>**Total Expenses:    -$74,821.77** | Settlement Amount:    $200,000.00<br>**Total Expenses:    -$35,794.04** |
| Experts:        $56,206.90<br>  Guzzardi $15,985.00<br>  Schwartz $28,793.90<br>  Smith $6,578.00<br>  Seibert $2,550.00<br>  Burns $800.00<br>  Oergin $1,500.00 | Experts:        $27,803.81<br>  Guzzardi $11,250.00<br>  Schwartz $9,258.81<br>  Smith $4,645.00<br>  Seibert $2,650.00<br>  Burns $0.00<br>  Oergin $0.00 |
| Depositions:        $5,394.70<br>  D&B $410.98<br>  CSR $606.78<br>  DiPiero $2,690.20<br>  Wyble $1,462.99<br>  Dep. Of Tracey Reed $223.83<br>  Schulman $0.00 | Depositions:        $6,267.14<br>  D&B $0.00<br>  CSR $889.00<br>  DiPiero $2,377.29<br>  Wyble $2,864.62<br>  Dep. Of Tracey Reed $0.00<br>  Schulman $136.23 |
| Investigation:        $4,079.88<br>  AllPoint $2,265.26<br>  OPRA $19.27<br>  Capo Strategies $1,500.00<br>  Russell D'Alonzo $225.00*<br>  Cumberland County $70.35 | Investigation:        $621.59<br>  AllPoint $620.66<br>  OPRA $0.93<br>  Capo Strategies $0.00<br>  Russell D'Alonzo $0.00<br>    Cumberland County $0.00 |
| Estate Administration:        $3,890.00<br>  Cum. Co. Surrogate $190.00<br>  Craig Sokolow $700.00*<br>  Benedetto Law $3,000.00*<br>  Warrant $0.00 | Estate Administration:        $186.50<br>  Cum. Co. Surrogate $135.00<br>  Craig Sokolow $0.00<br>  Benedetto Law $0.00<br>  Warrant $51.50 |
| Medical Recs:        $26.00 | Medical Recs:        $0.00 |
| Service of Process:        $390.00 | Service of Process:        $0.00 |
| Filing Fees:        $951.50<br>  District Court $400.00<br>  3rd Circuit $500.00<br>  Superior Court $51.50 | Filing Fees:        $905.00<br>  District Court $400.00<br>  3rd Circuit $505.00<br>  Superior Court $0.00 |
| Kimmo Abbasi, Esq.:        $2,310.00<br>  Post-Judgment Briefing $2,310.00* | Kimmo Abbasi, Esq.:        $0.00<br>  Post-Judgment Briefing $0.00 |
| Miscellaneous:        $1,559.79<br>  Subpoena (service) $250.00<br>  Road Runner $249.90<br>  Federal Express $54.39<br>  Courier Fees $495.00*<br>  Postage $62.51<br>  Travel $354.00*<br>  Esquire Process $64.99<br>  Risk Management $29.00 | Miscellaneous        $0.00<br>  Subpoena (service) $0.00<br>  Road Runner $0.00<br>  Federal Express $0.00<br>  Courier Fees $0.00<br>  Postage $0.00<br>  Travel $0.00<br>  Esquire Process $0.00<br>  Risk Management $0.00 |
| Lien Search:        $13.00<br>*Expenses waived during hearing | Lien Search:        $10.00 |